## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| YELLOWHAMMER FUND, on behalf of itself and its clients, | ) ) ) | CASE NO. _____ |
| Plaintiff, | ) ) | CIVIL ACTION |
| v. | ) ) ) | |
| ATTORNEY GENERAL OF ALABAMA STEVE MARSHALL, in his official capacity, | ) ) ) ) | **Complaint for Declaratory and Injunctive Relief** |
| Defendant. | ) ) | |

Plaintiff Yellowhammer Fund, by and through its attorneys listed below, brings this action against the Defendant, his employees, agents, and successors in office, requesting declaratory and injunctive relief.

### INTRODUCTION

1.     This is a civil rights action about helpers and the active infringement of their constitutional rights in the State of Alabama. "Helpers" are the people who aid others in accessing their rights. The desire and willingness to aid those in need or facing persecution, even at cost to oneself, are not just American values; they are foundational to a civilized society and part of what makes us human.

2.     When helpers extend a hand, they do more than simply provide aid; they send a message. To those who are persecuted, they send a message of solidarity:

Plaintiff's Complaint

1

that the persecuted person's humanity is bound up in that of the helpers', that their dignity is connected, that their rights are one and the same, and that the helper is working toward achieving collective liberation. To the oppressors, helpers send a message of protest and defiance: that the persecutor's attempts to isolate and oppress certain communities will not stand. This is true whether the aid furthers a politically popular viewpoint or one that is held by the minority. And it is especially true when a state disagrees with the message, values, or goals of the aid provided.

3.      Helpers are often the unsung heroes of protecting civil liberties. Those who participated in the Freedom Rides in Alabama were helpers. The publishers of The Green Book were helpers. Today, abortion funds and practical support organizations are helpers for one of the great civil rights struggles of our time—the struggle for reproductive justice.

4.      Although abortion in Alabama is banned, it remains legal in many other states. The Attorney General of Alabama, Steve Marshall (the "Defendant"), disagrees with the message of solidarity, protest, and defiance being communicated by abortion funds and has set his aim on these helpers. By threatening to prosecute abortion funds and practical support organizations for lawful conduct, Defendant has chilled the First Amendment rights of helpers, including Plaintiff Yellowhammer Fund, and sought to apply Alabama's laws extraterritorially to prevent aid to pregnant Alabamians seeking to exercise their federal constitutional rights to travel

Plaintiff's Complaint

2

out of Alabama and access lawful abortion care in other states. Defendant has also interfered with Yellowhammer Fund's federal constitutional rights.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This Court can properly award the relief sought under 28 U.S.C. §§ 2201–2202; 1343; Federal Rules of Civil Procedure 57 and 65, and the general legal and equitable powers held within this Court.

6.     Venue is proper in the U.S. District Court for the Middle District of Alabama as Defendant is domiciled in Montgomery, Alabama, and a substantial portion of the events giving rise to the claims occurred in Alabama. *See* Ala. Code § 36-15-1.

## PARTIES

7.     Plaintiff Yellowhammer Fund is a nonprofit abortion advocacy and reproductive justice organization serving residents of Alabama, Mississippi, and the Florida Panhandle. A registered 501(c)(3), it was established in Tuscaloosa in 2017 as an abortion fund, but now provides community education, mutual aid, policy advocacy, and other support to the community, with the goal of ensuring that all people have access to the resources they need to make decisions about their bodies, families, and futures. The organization believes in an equitable society where each person can make choices free from coercion by the government, financial constraints, familial or partner intervention, or status as a citizen.

Plaintiff's Complaint

3

8.     The Defendant is Alabama Attorney General Steve Marshall, acting in his official capacity. He made public threats to prosecute abortion funds for lawful activity, despite no constitutional means to do so. These statements currently chill the speech and activities of Plaintiff. The Defendant has broad authority to direct the prosecution of criminal cases. *See* Ala. Code § 36-15-14; *see also Graddick v. Galanos*, 379 So. 2d 592, 594 (Ala. 1980) (holding the statute "allows the Attorney General to assume the role of chief prosecutor"); *Ex parte King*, 59 So. 3d 21, 26 (Ala. 2010) ("Section 36-15-14 thus clarifies that the attorney general may also attend to, direct, and control a criminal case at the trial and pretrial level, and sets out particular information regarding the attorney general's involvement in such a case."). The consequences of the threatened prosecutions are significant, even if a threatened prosecution would ultimately be unsuccessful.

## STATEMENT OF FACTS

**A.   Alabama prohibited abortions <u>only</u> in Alabama, effective June 24, 2022.**

9.     The U.S. Constitution protected a pregnant person's right to have an abortion in every state—including Alabama—for nearly 50 years. Despite this right—and nearly a half century of precedent—Alabama enacted legislation creating a near-total abortion ban in 2019. Ala. Code § 26-23H-4 ("Abortion Ban").

10.    The Abortion Ban—which was enjoined by this Court before it could take effect—made it unlawful for any person to intentionally perform or attempt to

Plaintiff's Complaint

perform an abortion except when an attending physician licensed in Alabama determines that an abortion is necessary to prevent a serious health risk to the pregnant person. The Abortion Ban imposes a prison sentence of no less than ten years, and as long as life imprisonment. It also allows courts to impose a fine of up to $60,000.[1]

11.     On June 24, 2022, the U.S. Supreme Court issued the *Dobbs* decision, holding abortion medical care was a matter best left to each individual state and not a right protected by the U.S. Constitution. In doing so, the U.S. Supreme Court reversed its prior holdings in *Roe v. Wade*, 410 U.S. 113 (1973), *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), and decades of their progeny. Later that day, this Court lifted the injunction against the Abortion Ban. *See Robinson v. Marshall*, Civ. No. 2:19-cv-365-MHT, 2022 WL 2314402, at *1 (M.D. Ala. June 24, 2022) (dissolving preliminary injunction that had delayed the effective date).

---

[1] Before *Roe v. Wade*, Alabama banned abortion through Alabama Code § 13A-13-7, which provided that any person "who willfully administers to any pregnant woman any drug or substance or uses or employs any instrument or other means to induce an abortion, miscarriage or premature delivery or aids, abets or prescribes for the same, unless the same is necessary to preserve her life or health and done for that purpose, shall on conviction be fined not less than $100.00 nor more than $1,000.00 and may also be imprisoned in the county jail or sentenced to hard labor for the county for not more than 12 months." After *Roe*, Alabama did not scrub Alabama Code § 13A-13-7 from its statutes. However, it was repealed by the subsequent enactment of the Abortion Ban and by implication.

Plaintiff's Complaint

12.    Thirteen other states have total or near-total bans on abortion: Arkansas, Idaho, Indiana,[2] Kentucky, Louisiana, Mississippi, Missouri, North Dakota, Oklahoma, South Dakota, Tennessee, Texas, and West Virginia. All other states have some form of lawful abortion available to pregnant patients, regardless of where those people reside.

13.    The Alabama Abortion Ban reaches only as far as Alabama's borders. Even the Defendant has acknowledged "[t]here is nothing about the [Abortion Ban] that restricts any individual from driving across state lines and seeking an abortion in another place."[3] Indeed, trying to restrict a pregnant person from attempting to leave the state for a lawful abortion would be unconstitutional. *See, e.g.*, *Attorney General of New York v. Soto-Lopez*, 476 U.S. 898, 901–03 (1986) ("[F]reedom to travel throughout the United States has long been recognized as a basic right under the Constitution.") (quoting *Dunn v. Blumstein*, 405 U.S. 330, 338 (1972). "A State does not acquire power or supervision over the internal affairs of another State

---

[2] On June 30, 2023, the Indiana Supreme Court vacated an injunction blocking the ban. *See Members of Med. Licensing Bd. of Ind. v. Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky., Inc.*, 211 N.E.3d 957 (Ind. 2023). As a result, Indiana's ban is set to go into effect on August 1, 2023.

[3] *Alabama AG: state may prosecute those who assist in out-of-state abortions*, Josh Moon, Alabama Political Reporter, September 15, 2022, https://www.alreporter.com/2022/09/15/alabama-ag-state-may-prosecute-those-who-assist-in-out-of-state-abortions/.

Plaintiff's Complaint

merely because the welfare and health of its own citizens may be affected when they travel to that State." *Bigelow v. Virginia*, 421 U.S. 809 (1975).

14.    The plain text of the Abortion Ban does not purport to apply beyond Alabama, and in fact limits its application to Alabama.[4] Moreover, "[a] basic principle of federalism is that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders, and each State alone can determine what measure of punishment, if any, to impose on a defendant who acts within its jurisdiction." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003).

15.    Courts have long upheld the rule that a state cannot prosecute a person "for doing within the territorial limits of [another state] an act which that [separate] state had specially authorized him to do." *Nielsen v. Oregon*, 212 U.S. 315, 321 (1909). Acts that are "done within the territorial limits of [one state], under authority

---

[4] The Abortion Ban's extremely limited exceptions explicitly mention that an abortion is only prohibited if performed by "an attending physician licensed in *Alabama*." Ala. Code § 26-23H-4(b). It also defines "physician" as "[a] person licensed to practice medicine and surgery or osteopathic medicine and surgery in *Alabama*." Ala. Code § 26-23H-3(5). The Abortion Ban likewise discusses the circumstances under which a mental health diagnosis might provide an exception, in which case "the termination may be performed and shall be only performed by a physician licensed in *Alabama* in a hospital as defined in the *Alabama Administrative Code* and to which he or she has admitting privileges." Ala. Code § 26-23H-3(6) (emphasis added); *see also* Ala. Code § 26-23H-7 ("This chapter shall not apply to a physician licensed in *Alabama* performing a termination of a pregnancy or assisting in performing a termination of a pregnancy due to a medical emergency as defined by this chapter.") (emphasis added). And even if the statute's language sought to establish that the Abortion Ban applies to abortion outside of the state, which it does not, such a provision would likewise be unconstitutional.

Plaintiff's Complaint

and license from that state . . . cannot be prosecuted and punished by [a different] state." *Id.*

16.     Free interstate migration and the ability to avail oneself of the laws of another state are vital to transforming the many States into a single Nation. Alabama can no more regulate out-of-state abortions than another state can deem its laws legalizing abortions to apply to Alabama.

## B.     Defendant has stated that he intends to prosecute abortion helpers, like Plaintiff, for engaging in constitutionally protected activities.

17.     On June 24, 2022, the Defendant celebrated the *Dobbs* decision, declaring that "the State of Alabama has unequivocally elected to be a protector of unborn life."[5]

18.     Facing obvious barriers to prosecuting pregnant Alabamians seeking lawful abortion, the Alabama attorney general has instead sought to criminalize helpers who seek to assist pregnant people traveling from Alabama to states where abortion is lawful.

19.     Defendant has threatened to criminalize in a way calculated to chill the speech, expressive conduct, and association of helpers, and to isolate pregnant

---

[5] Alabama Attorney General Steve Marshall Statement on Overturn of Roe v. Wade, Office of the Attorney General (June 24, 2022), https://www.alabamaag.gov/alabama-attorney-general-steve-marshall-statement-on-overturn-of-roe-v-wade/.

Plaintiff's Complaint

people—a known tactic of abusers—to make it more difficult for them to travel and access needed medical care.[6]

20.     On August 11, 2022, Defendant took to the airwaves to threaten criminal prosecution against helpers in Alabama, fostering an increased sense of fear and uncertainty for Plaintiff and pregnant people alike. Defendant appeared on the Jeff Poor Show, a local talk radio program, to discuss the legal landscape in Alabama in the wake of *Dobbs* and lay out his plans to punish abortion helpers.

21.     During the program, the radio host asked Defendant whether a person in Alabama could be liable as an accomplice for assisting others in obtaining a lawful abortion out of state. In response, Defendant explicitly stated his intent to criminally prosecute abortion funds for engaging in lawful, constitutionally protected activities, constituting the statements at issue in this lawsuit:

> There is no doubt that [the Abortion Ban] is a criminal law, and the general principles that apply to a criminal law would apply to this . . . a classic felony, the most significant offense that we have as far as punishment goes under our criminal statute absent a death penalty case, and so provisions relating to accessory liability—uh provisions relating to conspiracy—uh would have applicability involving [the Abortion Ban]. So, for example, if someone was promoting themselves out as a funder of abortion out of state, uh, then that is potentially criminally actionable for us. And so, one thing we will do in working with local law enforcement and prosecutors is

---

[6] Follingstad, Diane R., et al., *A Representative Measure of Psychological Aggression and Its Severity*, Violence and Victims, 20(1), 25–38 (2005), DOI: 10.1891/vivi.2005.20.1.25. https://psycnet.apa.org/doi/10.1891/vivi.2005.20.1.25.

making sure that we fully implement this law. You know there is nothing about that law that restricts any individual from driving across state lines and, uh, seeking an abortion, uh, in another place, however, I would say that if any individual held themselves out, uh, as a, as an entity or a group that is using funds, that they are able to raise, uh, to be able to facilitate those [sic] those visits then that, uh, is something we are going to look at closely. . . . To the extent that there is groups, and we've seen groups out of Tuscaloosa for example, that have one point in time have talked about it, some of them are doing it now, but if they are promoting this as one of the services, we clearly will be taking a look at that.[7]

22. On information and belief, Yellowhammer Fund is the group in Tuscaloosa referenced in the attorney general's statements.

23. Various news outlets reported Defendant's radio comments.[8] Earlier this year, it was again reported that the Defendant suggested "that prosecution is also possible to those who aid and abet abortion."[9]

---

[7] Alabama Attorney General Steve Marshall, Jeff Poor Show FM Talk 1065, August 11, 2022 at 4:29:09 p.m., 8:00 min – 10:01, available at https://fmtalk1065.com/podcast/alabama-attorney-general-steve-marshall-jeff-poor-show-thursday-8-11-22 (last visited July 3, 2023).

[8] *See, e.g.,* Josh Moon, *Alabama AG: state may prosecute those who assist in out-of-state abortions*, Alabama Political Reporter (Sept. 15, 2022), https://www.alreporter.com/2022/09/15/alabama-ag-state-may-prosecute-those-who-assist-in-out-of-state-abortions/; Caitlin Cruz, *Alabama Looks to Prosecute Anyone Who Helps Residents Get Abortions Out of State*, Jezebel (Sept. 15, 2022), https://jezebel.com/alabama-looks-to-prosecute-anyone-who-helps-residents-g-1849540098.

[9] Ashley Bowerman, *Alabama AG clarifies prosecution rules under abortion law*, WSFA 12 News (Jan. 11, 2023), https://www.wsfa.com/2023/01/12/alabama-ag-clarifies-prosecution-rules-under-abortion-law/.

Plaintiff's Complaint

24.     In making this threat, Defendant specifically referenced the accessory liability and conspiracy provisions of Alabama law as the basis for prosecuting abortion funds, codified at Alabama Code §§ 13A-2-23, 13A-4-3, and 13A-4-4. By invoking these provisions to punish lawful activities, he seeks to forbid the act of helping pregnant people obtain safe and lawful abortion care and chill constitutionally protected activities.

25.     As further evidence of Defendant's plans to weaponize the criminal conspiracy statute to chill support for lawful abortions, the president of the Alabama Center for Law and Liberty, Matt Clark, wrote an op-ed that describes additional statements made by Defendant.[10]

26.     Clark attended a Federalist Society meeting at which Defendant was speaking. In the op-ed, Clark explains how Defendant noted in his Federalist Society remarks that "Alabama law has a criminal conspiracy statute that could apply to attempts to procure an abortion out of state."[11] The op-ed also emphasizes Defendant's eagerness to use his significant prosecutorial authority to punish abortion seekers and helpers without relying on local prosecutors, indicating that these statements do not constitute an empty threat to Plaintiff.

---

[10] Matt Clark, *The good news is, AG Marshall will enforce abortion ban*, 1819 News (July 15, 2022), https://1819news.com/news/item/matt-clark-the-good-news-is-ag-marshall-will-enforce-abortion-ban.

[11] *Id.*

Plaintiff's Complaint

27.    Defendant's threats evince his intent to prosecute abortion funds like Plaintiff in the near future, buttressed by the fact that he has not since rescinded these statements.

28.    Plaintiff is not operating an abortion fund today because it fears Alabama's anti-abortion attorney general will target the organization.

### C.    Like the Abortion Ban, Alabama's criminal code—including its conspiracy and accessory liability statutes—does not reach beyond the state's borders.

29.    In his radio remarks, Defendant invoked Alabama's criminal conspiracy and accessory liability statutes as the basis for his threats of prosecution. In doing so, he failed to acknowledge that the same legal principles that stop him from prosecuting pregnant people who cross state lines for lawful abortions prevent him from using conspiracy or accessory liability statutes to criminalize helpers aiding that travel when those abortions occur in other states.

30.    Alabama's general criminal conspiracy statute is codified at Alabama Code § 13A-4-3. The general conspiracy statute provides that, "[A] person is guilty of criminal conspiracy if, with the intent that conduct constituting an offense be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one or more of such persons does an overt act to effect an objective of the agreement." Ala. Code § 13A-4-3(a).

Plaintiff's Complaint

31.    The criminal conspiracy statute "does not require that the criminal offense agreed to be actually completed." *Greer v. State*, 563 So. 2d 39, 40 (Ala. Crim. App. 1990). Conspiracy is a "distinct, substantive offense and is complete when the unlawful combination is entered into." *Connelly v. State*, 1 So. 2d 606, 607 (Ala. Ct. App. 1941).

32.    On information and belief, Defendant wrongly thinks he may prosecute helpers based on Alabama Code § 13A-4-4. The extraterritorial conspiracy statute pertains to a conspiracy formed in Alabama to commit a crime in another state. It provides that, "[a] conspiracy formed in this state to do an act beyond the state, which, if done in this state, would be a criminal offense, is indictable and punishable in this state in all respects as if such conspiracy had been to do such act in this state." Ala. Code § 13A-4-4. While the statute on its face fails to account for whether the act done beyond the state of Alabama is legal where it occurs, if constructed in accordance with *Thompson v. State*, 17 So. 512, 516 (Ala. 1895)—the Alabama Supreme Court case setting forth the common law principles the statute was intended to codify—the statute would apply only to "known, common-law felon[ies], malum in se." In other words, it would not apply to agreements formed in Alabama to engage in conduct that is legal in the state where it occurs. However, if it is not construed in line with *Thompson*, the statute seemingly supplants other states' criminal codes with Alabama's definition of crimes.

Plaintiff's Complaint

33.     The other statute Defendant invoked in his threats to prosecute abortion funds, the accessory liability statute, is codified at Alabama Code § 13A-2-23. It provides that, "A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense . . . He aids or abets such other person in committing the offense." Ala. Code § 13A-2-23(2).

34.     Again, Defendant threatens the use of the accessory statute without any regard for whether an abortion is legal where it occurs, impermissibly applying Alabama's laws beyond the reach of its police power. *See Alabama State Fed'n of Lab. v. McAdory*, 18 So.2d 810, 818 (Ala. 1944) ("Each state has the power to regulate the relative rights and duties of all persons, individuals, and corporations *within its jurisdiction* for the public convenience and the public good, the only limitation being that such regulations shall not prove repugnant to the provisions of the state or national Constitution." (emphasis added)).[12]

---

[12] The penalty for violating the accessory liability statute is the same as the penalty for committing the target offense. *Hammond v. State*, 497 So. 2d 558, 566 (Ala. Crim. App. 1986) ("It is well established that a person present, aiding and abetting another in the commission of [a crime], is guilty as a principal and punishable equally with the perpetrator of the crime."(quoting *Biggs v. State*, 331 So. 2d 763, 764 (Ala. Crim. App. 1976))). Thus, someone found guilty of aiding and abetting an unlawful abortion under Alabama law would be guilty of a Class A felony, which carries a mandatory minimum sentence of ten years in prison and a maximum of life in prison. Ala. Code § 13A-5-6(1). Someone found guilty of attempting to aid and abet an unlawful abortion as defined by Alabama would be guilty of a Class C felony, Ala. Code § 26-23H-6, or not more than ten years or less than one year and one day in prison, Ala. Code § 13A-5-6(3).

Plaintiff's Complaint

**D. Plaintiff has a genuine desire to engage in constitutionally protected activities.**

35.   Yellowhammer Fund is a reproductive justice organization. Reproductive justice organizations are typically Black-led organizations that believe all people have the right to have a child, the right not to have a child, and the right to parent the children they have in safe and healthy environments.

36.   Since its founding, Yellowhammer Fund has been committed to helping eliminate barriers for its community members. Speaking about abortion and providing funding to help people access abortion care are core parts of Yellowhammer Fund's mission.

37.   Through its work, the organization strives to destigmatize access to reproductive healthcare by empowering individuals to express their needs, reducing barriers to healthcare and family support services, and filling gaps for the community, including connecting community members with transportation, technology, and language assistance. The organization strives to be responsive to the needs of the community.

38.   Among other things, Yellowhammer Fund provides free emergency contraception by mail, safer-sex kits, accurate and comprehensive sex education materials, pregnancy tests, and referrals for a wide range of sexual and reproductive healthcare. It also supports families in Alabama through its Family Justice Program, which makes basic necessities such as diapers, food supplies, school supplies, period

products, Plan B, cleaning supplies, hygiene products, and other items available to families regardless of their location or income level. Yellowhammer Fund's core mission is to meet the reproductive needs of people in Alabama and remove barriers to abortion care. To this end, it engages in abortion advocacy and provides information to Alabamians about policy proposals and legislation that could impact their access to reproductive healthcare.

39.    The aid Yellowhammer Fund has always shared with people seeking support while making decisions about whether to have a child, when to have a child, and how best to parent their children, is more than just aid. It is a message of solidarity to those capable of reproduction: it is speech, expressive conduct, and vital association.

40.    Before *Dobbs*, Yellowhammer Fund operated an abortion fund, which provided funding and practical support to Alabamians seeking abortion care both in and outside of Alabama. The abortion fund was a core part of its mission and had been in operation since its founding. Yellowhammer Fund worked directly with abortion clinics and other abortion care providers, who referred clients to the fund for financial and practical support. If a patient did not have the resources to pay for an abortion, Yellowhammer Fund made pledges to clinics to meet the funding gap. Additionally, Yellowhammer Fund supported patients with other needs to help them access abortion care, including transportation, childcare arrangements, and lodging.

Plaintiff's Complaint

The abortion fund's clients included residents of Alabama who required funding and other support to access care both within and outside of the state, as well as out-of-state residents who needed financial, transportation, and other assistance to access abortion care within Alabama. The fund operated a helpline for patients to contact and ask for financial and logistical assistance. Most referrals came from abortion care providers in Alabama, who notified their patients about Yellowhammer Fund's services if they did not have the funds to pay for their abortion or had other unmet needs, including transportation, lodging, food, and childcare.

41.    After learning about a patient's needs, the fund connected with other abortion advocacy organizations and abortion funds to provide support to callers. In addition to making pledges to abortion clinics to cover all or a portion of the costs of an abortion, Yellowhammer Fund helped clients book travel, including bus tickets and plane tickets, arranged for hotel rooms, and provided assistance for food, childcare, and other needs. If Yellowhammer Fund was not able to meet the needs of any individual caller, it made referrals to other organizations. Specifically, if a caller from another state left a message seeking support, the organization made referrals to out-of-state abortion funds. As needed, Yellowhammer Fund's staff and volunteers directly transported callers to abortion appointments.

42.    In the months leading up to *Dobbs*, Yellowhammer Fund began to plan for a potential future where abortion was no longer legal in Alabama. Yellowhammer

Fund began developing systems to ensure that it could support patients who needed to travel out of Alabama to access abortion care. Additionally, the organization established relationships with other abortion funds, learned about out-of-state clinics, and created case management systems to support a growing percentage of patients who had to travel out of state for abortions. Before *Dobbs*, between 15 and 20 percent of Yellowhammer Fund's clients traveled out of state for abortion care, but the organization anticipated that 100 percent of the Alabama residents it served would need support traveling to other states after *Dobbs*.

43.     The U.S. Supreme Court decided *Dobbs* on June 24, 2022, and as the Abortion Ban took effect, Alabama State Representative Chris England tweeted about the extraterritorial conspiracy statute, asserting that, "anyone can be prosecuted for conspiracy [under that provision] if they help someone either get or even plan to get an abortion in another state."[13] Soon after, a spokesperson in the Office of the Attorney General said the office was reviewing the extraterritorial conspiracy statute.

44.     Yellowhammer Fund temporarily stopped sharing information about lawful out-of-state abortion and stopped providing funds and logistical support to abortion seekers on June 24, 2022. It has not resumed doing so because of

---

[13] Chris England, Alabama House District 70 Representative from Tuscaloosa, @RepEngland70, (June 24, 2022), https://twitter.com/RepEngland70/status/1540482376014462977.

Plaintiff's Complaint

Defendant's threats, and it does not plan to do so until it can be assured that it will not face criminal prosecution for helping pregnant Alabamians travel out of state for abortions.

45.     Defendant's threats have caused Yellowhammer Fund to cease all operations of its abortion fund. It has also caused Yellowhammer Fund to eliminate the Health Care Access Director position. Before *Dobbs*, that position was devoted to helping Alabamians access abortion care by eliminating funding hurdles and other gaps.

46.     If not for Defendant's threats, Yellowhammer Fund would be operating the abortion fund and providing funding and practical support to pregnant Alabamians traveling to other states for abortion care where it remains legal. The organization would be sharing information and advertising the fund to make sure that Alabamians and clinics are aware of its services. Additionally, it would increase the capacity of its staff to provide transportation, including by directly transporting callers to their appointments in other states.

47.     The organization receives approximately five to ten calls a week from people who need abortion funding. A significant portion of callers are later in their pregnancies, indicating their inability to find assistance elsewhere. Because Yellowhammer Fund is no longer operating the abortion fund, it informs people in need of assistance that it cannot provide them with financial support for an abortion

Plaintiff's Complaint

19

nor can it refer them to other funders or out-of-state clinics. If Yellowhammer Fund could safely fund abortion absent Defendant's threats, it would be holding itself out in Alabama as a funder of lawful abortion and providing support to these callers to the full extent its resources would allow.

48.     In accordance with its commitment to assisting pregnant people in any way they need, Yellowhammer Fund would like to continue speaking about and funding lawful abortion care. It believes that the need for these services has only grown since *Dobbs* was decided. Funding abortions in other states and helping Alabamians access care remain central to Yellowhammer Fund's mission and core beliefs, and it would be acting on these beliefs if not for Defendant's threats.

### E.   Defendant is chilling Yellowhammer Fund's constitutionally protected speech and activities in a time of crisis.

49.     Plaintiff firmly believes that donating in support of and funding abortion are acts of mutual aid and send a message of love and solidarity to the community. It also believes that providing financial support to marginalized communities is an act of justice and dignity.[14]

50.     Yellowhammer Fund's speech and conduct sends the message that barriers to accessing abortion are unnecessary and unjust. It "envisions a society in which reproductive decisions are made free from coercion, shame, or state

---

[14] *Mission, Vision, and Values*, Yellowhammer Fund, https://www.yellowhammerfund.org/mission-vision-and-values/ (last visited July 3, 2023).

Plaintiff's Complaint

interference, a society in which individuals and communities have autonomy in making healthy choices regarding their bodies and their futures."[15] Through its work, Yellowhammer Fund also seeks to communicate to funding recipients, employees, volunteers, supporters, and the general public the belief that all people deserve access to the resources necessary to make the decisions that are right for them, without shame or stigma.

51. Before *Dobbs*, Yellowhammer Fund maintained collaborative relationships with other abortion advocacy organizations and funds. Defendant's threats have chilled Yellowhammer Fund's association with these organizations out of fear of criminal prosecution. Now those who share its viewpoints are hesitant to speak together, engage in expressive conduct together, and otherwise associate in furtherance of their shared beliefs.

52. In 2021, across the state, at least 1,800 Alabamians traveled out of state to obtain needed abortion care.[16] At that time, only five abortion clinics operated in Alabama, and by June 2022, that number dwindled to three.[17]

---

[15] *Our Beliefs*, Yellowhammer Fund, https://www.yellowhammerfund.org/our-beliefs/ (last visited July 3, 2023).

[16] *Induced Termination of Pregnancy Statistics*, Alabama Center for Health Statistics, Alabama Department of Public Health, at 1 (2021).

[17] Maddison Booth & Todd Stacy, *Post-Dobbs, Alabama providers examine abortion law,* Alabama Daily News (July 7, 2022), https://aldailynews.com/post-dobbs-alabama-providers-examine-abortion-law/.

Plaintiff's Complaint

53.     Defendant has made clear that abortion funds who "hold themselves out" as providing out of state assistance for pregnant Alabama residents seeking abortion care would face prosecution.

54.     Although Yellowhammer Fund has stopped providing funding and support for Alabama residents seeking abortion care, the need for these services has not abated. In fact, since *Dobbs*, Alabama residents face increased hurdles to accessing abortion care. The distances they must travel and the costs of care have both increased exponentially.

55.     A report documenting abortions in the year following the *Dobbs* decision indicates that "many thousands of pregnant people were unable to obtain abortion care from a clinician."[18] And Black, Indigenous, and other people of color experienced the greatest increases in travel time to abortion facilities.[19]

56.     In certain areas that Plaintiff serves, people must travel hundreds of miles to obtain the lawful care they desire and need.

57.     Plaintiff's assistance, and the messages of solidarity it contains, are particularly important because Alabama is the sixth poorest state in the country. It

---

[18] #WeCount Report April 2022 – March 2023, Society of Family Planning, at 6 (June 15, 2023), https://societyfp.org/wp-content/uploads/2023/06/WeCountReport_6.12.23.pdf.

[19] *Id.* at 8.

Plaintiff's Complaint

has more than 714,000 people, including 222,000 children, living below the poverty line.[20]

58.     Abortion bans, like the one in Alabama, as well as the difficulties of traveling out of state to obtain a lawful abortion, will exacerbate the maternal health crisis.[21] Alabama has the third highest maternal mortality rate in the country. And, according to a 2020 report, 36.3 percent of the pregnancy-associated and pregnancy-related maternal morbidity cases involved Black patients.[22]

59.     Notably, abortion care is exceedingly safe. In 2018, a Committee of the National Academies of Sciences, Engineering, and Medicine ("Committee") issued a Consensus Study Report on the Safety and Quality of Abortion Care in the United States after reviewing all available evidence. It concluded that abortion in the United States is safe; serious complications of abortion are rare; and abortion does not

---

[20] *See* Americans for Progress, Poverty in the United States, available at https://www.americanprogress.org/data-view/poverty -data/poverty-data-map-tool (2021 poverty rate) (last visited July 7, 2023). *See also Alabama Possible*, 2022 Barriers to Prosperity Data Sheet: Alabama is the nation's sixth poorest state, available at https://alabamapossible.org/2022/06/09/2022-barriers-to-prosperity-data-sheet-alabama-is-the-nations-sixth-poorest-state.

[21] *See The State of Reproductive Health in the United States: The End of Roe and the Perilous Road Ahead for Women in the Dobbs Era*, Gender Equity Policy Institute, 3 (Jan. 19, 2023), https://thegepi.org/wp-content/uploads/2023/06/GEPI-State-of-Repro-Health-Report-US.pdf.

[22] *2020 Maternal Mortality Review*, Alabama Department of Public Health, Bureau of Family Health Services, at 6, 17, https://www.alabamapublichealth.gov/perinatal/assets/2020_final_annual_mmr.pdf. In 2020, maternal death rates were 62 percent higher in states that currently ban or heavily restrict abortion. *See* The Commonwealth Fund, "The U.S. Maternal Health Divide", December 2022, available at https://www.commonwealthfund.org/publications/issue-briefs/2022/dec/us-maternal-health-divide-limited-services-worse-outcomes.

Plaintiff's Complaint

increase the risk of long-term physical or mental health disorders.[23] Abortion entails significantly less medical risk than carrying a pregnancy to term and giving birth, which has an associated risk of death fourteen times higher than that for abortion care.[24] In fact, the United States has a higher rate of maternal mortality than other developed nations, and it has increased in recent years.[25] And pregnancy-related deaths disparately impact communities of color. Black women die from pregnancy-related causes at a much higher rate than white women.[26]

60. Alabamians seeking abortion care largely track nationwide trends. In 2021, Alabama residents had at least 8,294 abortions.[27] Black pregnant people disproportionately accessed this medical care: Black Alabamians comprised 67 percent of patients while only comprising around 28 percent of the Alabama

---

[23] Nat'l Acads. of Scis., Eng'g, and Med., *The Safety and Quality of Abortion Care in the United States* 1-16 (2018), https://doi.org/10.17226/24950.

[24] Elizabeth G. Raymond & David A. Grimes, *The Comparative Safety of Legal Induced Abortion and Childbirth in the United States*, 119 Obstetrics & Gynecology 215, 216-17 (2012), https://thegepi.org/wp-content/uploads/2023/06/GEPI-State-of-Repro-Health-Report-US.pdf.

[25] *See generally* Katy B. Kozhimannil, *Reversing the Rise in Maternal Mortality*, 37 Health Affairs 1901, 1901-04 (2018), https://www.healthaffairs.org/doi/pdf/10.1377/ hlthaff.2018.1013.

[26] *Id*. at 1903 ("In the US no group bears this burden more heavily than black mothers, who are more than three times as likely as white women to die giving birth and—if they survive—more than twice as likely as white women to bury their babies before their first birthday."). *See* Billy Chappell, *Tori Bowie, an elite Olympic athlete, died of complications from childbirth*, National Public Radio, June 13, 2023, https://www.npr.org/2023/06/13/1181971448/tori-bowie-an-elite-olympic-athlete-died-of-complications-from-childbirth.

[27] *Induced Termination of Pregnancy Statistics*, Alabama Center for Health Statistics, Alabama Department of Public Health, at 1 (2021), https://www.alabamapublichealth.gov/healthstats/assets/2021_itop_annual_report.pdf.

Plaintiff's Complaint

population.[28] And most abortions for Alabama residents involved people who have previously given birth.[29] The percentage of people who have sought abortion care in Alabama in the past who are Black, the heightened risk of criminalization for Black people and communities of color, and the poor health outcomes, including maternal health, for Black people in Alabama demonstrate the need for helpers like Plaintiff to be able to do their work and fulfill their mission without fear of prosecution.

61.    Moreover, studies have shown that those who seek, but are unable to obtain, an abortion tend to suffer diminished educational and job prospects, greater economic insecurity, and poorer health outcomes than those who successfully obtain an abortion.[30]

62.    Defendant is interfering with Plaintiff's mission to help all pregnant Alabamians access the resources they need to make decisions about their bodies,

---

[28] *Id*.

[29] *Id*.

[30] Sarah Miller, Laura Wherry, & Diana Greene Foster, *The Economic Consequences of Being Denied an Abortion* http://www.nber.org/papers/w26662.pdf; Diane Greene Foster et al., *Socioeconomic Outcomes of Women Who Receive and Women Who Are Denied Wanted Abortions in the United States*, 108 AM. J. PUB. HEALTH 407 (2018) https://doi.org/10.2105/AJPH.2017.304247; Caitlin Gerdts et al., *Side Effects, Physical Health Consequences, and Mortality Associated with Abortion and Birth after an Unwanted Pregnancy*, 26 WOMEN'S HEALTH ISSUES 55 (2016), https://doi.org/10.1016/j.whi.2015.10.001; Lauren J. Ralph, et al., *Self-reported Physical Health of Women Who Did and Did Not Terminate Pregnancy After Seeking Abortion Services: A Cohort Study*, 171 ANNALS INTERN MED. 238 (2019), ;171(4): https://doi.org/10.7326/M18-1666.

Plaintiff's Complaint

25

families, and futures. This includes providing financial and practical support to help pregnant Alabamians access abortion care in states where it is legal.

63.     Plaintiff has waited for Defendant to disavow his statements about his ability to prosecute abortion funds for merely helping pregnant people in Alabama exercise their right to travel. However, Plaintiff has not seen evidence that Defendant understands that the activities he has threatened to criminalize are lawful, constitutionally protected activities. Thus, Plaintiff cannot resume and expand its desired activities in Alabama without an order from this Court.

64.     This lawsuit is *only* about Plaintiff's efforts to (1) speak about lawful abortion in other states; (2) engage in expressive conduct about the rights everyone possesses to travel to other states and take advantage of the laws offered there; (3) associate with like-minded individuals and organizations; and (4) travel with, and assist in the travel of, others to these states.

**F.   Plaintiff has standing to bring the causes of action herein.**

65.     Plaintiff Yellowhammer Fund has standing to challenge Alabama's interpretation of the Abortion Ban and the conspiracy and accessory liability statutes as the Alabama attorney general has threatened to use these statutes to prosecute it.

66.     As a result of Defendant's threats, Plaintiff has suffered harm to its organizational mission by being chilled from providing funding and practical support to Alabamians who need assistance accessing abortion care in states where

Plaintiff's Complaint

abortion remains legal. Due to the fear of criminal prosecution, Yellowhammer Fund no longer provides funding, helps pregnant people seeking an abortion with travel and other logistical needs, or makes referrals to out-of-state abortion providers or funds. Plaintiff also fears simply speaking and sharing information about how to obtain lawful out-of-state abortions could subject it to prosecution. Because Yellowhammer Fund has shut down its abortion fund, it also had to eliminate a staff position that previously supported patients with funding and practical needs related to abortion care, and it has diverted resources from a core component of its mission.

67.    Plaintiff further has standing to sue on its clients' behalf on the right to travel claim because it has suffered an injury-in-fact, there is a sufficiently close relationship between Plaintiff and its clients, and there is a hindrance to its clients' ability to protect their own rights. Yellowhammer Fund is permitted to assert third party rights here because the enforcement of the challenged restriction against the litigant would result indirectly in the violation of third parties' rights.

68.    Yellowhammer Fund has a close relationship with pregnant Alabamians currently seeking to travel out of state for lawful abortion care. Plaintiff plays a crucial role in enabling its clients to travel. There are people presently in need of Yellowhammer Fund's services, and it regularly receives requests from pregnant people who may not be able to travel at all without Yellowhammer Fund's financial and logistical assistance. Additionally, Yellowhammer Fund's and pregnant people's

Plaintiff's Complaint

interests are aligned. In fact, their interests are one and the same: Yellowhammer Fund's mission is to provide abortion funding and travel support to those who wish to obtain a lawful abortion, which gives Yellowhammer Fund a direct interest in protecting pregnant people's right to travel. Plus, Defendant is effectively targeting pregnant people by threatening criminal prosecution against their helpers such that it would be difficult (if not impossible) for Yellowhammer Fund to vindicate its own rights without implicating the right to travel of pregnant people currently in need of support.

69.     Pregnant people in Alabama also face significant hindrances to asserting their own right to travel. Pregnant people seeking lawful abortion are likely to face hostility from the community if they draw attention to their desire to obtain an abortion and are reluctant to raise such claims for fear of provoking additional policing measures or other legal risks. Yellowhammer Fund has also observed its clients' fear of being wrongfully criminalized for obtaining an abortion out of state and their desire for privacy. A pregnant person may be chilled from asserting their own right to travel by the publicity of a lawsuit, and someone seeking to travel also faces the imminent mootness of their claim. In contrast, Yellowhammer Fund is uniquely positioned to assert claims on behalf of its clients. It is subject to enforcement of the threatened laws and has suffered significant injury to its organizational mission such that it has strong incentives to pursue the right to travel

claim on its clients' behalf. As a result, Yellowhammer Fund is the obvious claimant because it is the party upon whom the challenged statutes impose legal duties and disabilities.

## CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF
## UNDER 42 U.S.C. § 1983 AND 28 U.S.C. § 2201

### <u>COUNT I</u>
### Yellowhammer Fund's Constitutional Rights to Expression

70.   The First Amendment to the U.S. Constitution, applicable to the states through the Fourteenth Amendment and enforceable pursuant to 42 U.S.C. § 1983, provides that a state "shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I.

71.   The First Amendment prohibits content-based restrictions on speech and expressive conduct unless a state can prove that the law at issue is the least restrictive means of serving a compelling state interest. Likewise, the First Amendment forbids the government from regulating speech and expressive conduct in ways that favor some viewpoints or ideas at the expense of others. Content- and viewpoint-based restrictions are presumptively unconstitutional.

72.   Alabama cannot assert an interest in regulating what Alabamians may say, hear, or read about lawful out-of-state abortion. Alabama law cannot impose criminal liability for lawful acts occurring out of state.

Plaintiff's Complaint

73.     Alabama's criminal conspiracy statute, Alabama Code § 13A-4-4, which expands the reach of Alabama Code § 13A-4-3 — if construed contrary to *Thompson* — is overbroad and imposes a content- and viewpoint-based restriction on speech because it criminalizes lawful speech and expressive activities that the state of Alabama finds disagreeable. The crime of conspiracy inherently targets speech, but the justifications for the constitutional exceptions allowing states to prosecute conspiracy evaporate when the speech does not further conduct that is criminal.

74.     Defendant's threats to use Alabama Code § 13A-4-4 to prosecute abortion funds deprive Yellowhammer Fund of its constitutional right to speech and expressive conduct as described herein.

75.     To the extent Defendant's threats rely upon Alabama Code § 13A-4-3, Defendant's threats to use that law to prosecute abortion funds deprive Yellowhammer Fund of its constitutional right to speech and expressive conduct as described herein.

76.     To the extent Defendant's threats rely upon Alabama Code § 13A-2-23, Defendant's threats to use that law to prosecute abortion funds deprive Yellowhammer Fund of its constitutional right to speech and expressive conduct as described herein.

Plaintiff's Complaint

77.    Defendant acted under color of state law when he threatened to prosecute abortion funds if they held themselves out as providing aid for interstate travel for pregnant Alabama residents seeking abortion care.

78.    Plaintiff has suffered injury that the relief requested below would remedy.

## COUNT II
### Yellowhammer Fund's Constitutional Rights to Association

79.    The First Amendment to the U.S. Constitution, applicable to the states through the Fourteenth Amendment and enforceable pursuant to 42 U.S.C. § 1983, also provides Yellowhammer Fund a right to associate.

80.    Alabama's criminal conspiracy statute, Alabama Code § 13A-4-4, which expands the reach of Alabama Code § 13A-4-3 — if construed contrary to *Thompson* — is overbroad and imposes a content- and viewpoint-based restriction on association because it criminalizes lawful speech and activities that the state of Alabama finds disagreeable. The crime of conspiracy inherently targets First Amendment rights, but the justifications for the constitutional exceptions allowing states to prosecute conspiracy evaporate when the First Amendment activity does not further conduct that is criminal.

81.    Defendant's threats to use Alabama Code § 13A-4-4 to prosecute abortion funds deprive Yellowhammer Fund of its constitutional right to association as described herein.

Plaintiff's Complaint

82.    To the extent Defendant's threats rely upon Alabama Code § 13A-4-3, Defendant's threats to use that law to prosecute abortion funds deprive Yellowhammer Fund of its constitutional right to association as described herein.

83.    To the extent Defendant's threats rely upon Alabama Code § 13A-2-23, Defendant's threats to use that law to prosecute abortion funds deprive Yellowhammer Fund of its constitutional right to association as described herein.

84.    Defendant acted under color of state law when he threatened to prosecute abortion funds if they held themselves out as providing aid for interstate travel for pregnant Alabama residents seeking abortion care.

85.    Defendant's threats have chilled Plaintiff from associating with funding recipients, employees, volunteers, supporters, other abortion advocacy groups, abortion funds, and the general public.

86.    Plaintiff has suffered injury that the relief requested below would remedy.

## COUNT III
### Constitutional Right to Travel

87.    The right to travel is protected by the Constitution and such right is enforceable pursuant to 42 U.S.C. § 1983. It protects the right of a citizen of one state to enter and to leave another state and includes the right to go from one place to another, including the right to cross state borders while en route.

88.     Free interstate migration is vital and fundamental to transform many states into a single nation. As such, a state may not unreasonably burden a person's right to enter and leave that state.

89.     Yellowhammer Fund previously provided, and desires to once again provide, transportation assistance to people leaving Alabama to obtain lawful abortion care in another state. Specifically, Yellowhammer Fund previously traveled, and desires to once again travel, between states with passengers in its vehicles who need transportation to other states to obtain lawful abortion care. Yellowhammer Fund previously provided financial and practical support for those seeking to travel out of state for lawful abortions. It seeks to do so again in the future. Yellowhammer Fund cannot do the activities it desires to do out of fear of prosecution.

90.     Because of the imminent threats of prosecution, Plaintiff has stopped helping pregnant people in Alabama travel out of state.

91.     Yellowhammer Fund is asserting the right to travel on behalf of the pregnant people in Alabama it serves because it has a close relationship with them. Pregnant people in Alabama face serious hindrances to their ability to protect their own interests in this context. Thus, Yellowhammer Fund is the proper plaintiff to assert the interests of the pregnant people in Alabama it serves.

Plaintiff's Complaint

92.    Defendant's threats to use Ala. Code § 13A-4-4 to prosecute abortion funds deprive Yellowhammer Fund and the people it serves of their constitutional right to travel.

93.    To the extent Defendant's threats rely upon Ala. Code § 13A-4-3, Defendant's threats to use that law to prosecute abortion funds deprive Yellowhammer Fund and the people it serves of their constitutional right to travel.

94.    To the extent Defendant's threats rely upon Ala. Code § 13A-2-23, Defendant's threats to use that law to prosecute abortion funds deprive Yellowhammer Fund and the people it serves of their constitutional right to travel.

95.    The promise of the United States—a nation built of many states with the right to travel among them—is eroded by the burdens imposed by Defendant's threats. Therefore, the infringement is significant.

96.    Defendant acted under color of state law when he threatened to prosecute abortion funds if they held themselves out as providing aid for interstate travel for pregnant Alabama residents seeking abortion care.

97.    Plaintiff has suffered injury that the relief requested below would remedy.

## COUNT IV
### Yellowhammer Fund's Right to Be Free From
### Extraterritorial Application of State Law

Plaintiff's Complaint

34

98.    The Fourteenth Amendment of the United States Constitution prohibits a state from applying its laws extraterritorially to criminalize out-of-state activity which is lawful where it occurs, and that right is enforceable pursuant to 42 U.S.C. § 1983.

99.    The courts have long consulted original and historical understandings of the Constitution's structure and the principles of "sovereignty and comity" it embraces. *Nat'l Pork Producers Council v. Ross*, 143 S. Ct. 1142, 1156–57 (2023).

100.   Any attempt by Defendant to criminalize Yellowhammer Fund for helping pregnant people in Alabama travel to another state to obtain lawful medical care violates Plaintiff's due process rights. It also violates all original and historical understandings of the Constitution's structure and principles of sovereignty and comity.

101.   As the Supreme Court has made clear, to punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort.

102.   Defendant's threats to use Ala. Code § 13A-4-4 to prosecute abortion funds deprive Yellowhammer Fund of its constitutional right to due process and offend the original and historical understandings of the Constitution's structure and the principles of sovereignty and comity it embraces.

103.   To the extent Defendant's threats rely upon Ala. Code § 13A-4-3, Defendant's threats to use that law to prosecute abortion funds deprive Yellowhammer Fund of its constitutional right to due process and offend the original and historical understandings of the Constitution's structure and the principles of sovereignty and comity it embraces.

104.   To the extent Defendant's threats rely upon Ala. Code § 13A-2-23, Defendant's threats to use that law to prosecute abortion funds deprive Yellowhammer Fund of its constitutional right to due process and offend the original and historical understandings of the Constitution's structure and the principles of sovereignty and comity it embraces.

105.   Defendant acted under color of state law when he threatened to prosecute abortion funds if they held themselves out as providing aid for interstate travel for pregnant Alabama residents seeking abortion care.

106.   Plaintiff has suffered injury that the relief requested below would remedy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

    a.   Declare that all of the relevant statutes are unconstitutional as applied to lawful out-of-state abortion care;

Plaintiff's Complaint

b.  Declare that the statutes are unconstitutional as applied to the Plaintiff and its associates;

c.  Declare that Defendant's threats described herein violate rights under the United States Constitution;

d.  Declare that prosecution of abortion funds for assisting Alabama residents to leave the state to obtain lawful abortions is a violation of Yellowhammer Fund's right to travel;

e.  Declare that prosecution of abortion funds for assisting Alabama residents to leave the state to obtain lawful abortions is a violation of the right to travel for the pregnant people Yellowhammer Fund serves;

f.  Declare that prosecution of abortion funds for assisting Alabama residents to leave the state to obtain lawful abortions is a due process violation and a violation of principles of sovereignty and comity;

g.  Permanently enjoin enforcement of Ala. Code. §§ 13A-2-23, 13A-4-3, and 13A-4-4 against individuals and organizations, including Plaintiff, for actions to assist Alabama residents leaving the state to obtain lawful abortion care;

h.  Award Plaintiff attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

i.  And grant such other and further relief as the Court may deem just, proper, and equitable.

Plaintiff's Complaint

Dated: July 31, 2023

Respectfully submitted,

/s/ Ashley Light

Jamila Johnson*
Allison Zimmer*
THE LAWYERING PROJECT
3157 Gentilly Blvd. #2231
New Orleans, LA 70122
(347) 706-4981 (JJ)
(347) 515-6074 (AZ)
jjohnson@lawyeringproject.org
azimmer@lawyeringproject.org

Paige Suelzle*
THE LAWYERING PROJECT
2501 SW Trenton Street #1097
Seattle, WA 98106
(347) 515-6073
psuelzle@lawyeringproject.org

Ashley Light, ASB 1059-F69L
SOUTHERN POVERTY LAW CENTER
400 Washington Ave
Montgomery, AL 36104
(334) 746-1530
ashley.light@splcenter.org

Krista Dolan*
SOUTHERN POVERTY LAW CENTER
P.O. Box 10788
Tallahassee, FL 32302-2788
(850) 521-3000
Krista.dolan@splcenter.org

*Attorneys for Plaintiff*

*Motion for admission *pro hac vice*
   simultaneously filed.

Plaintiff's Complaint

38