**IN THE DISTRICT COURT OF THE UNITED STATES FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION**

| | | |
|---|---|---|
| YELLOWHAMMER FUND, on behalf of itself and its clients, | ) ) ) | |
| Plaintiff, | ) ) | CASE NO. 2:23-cv-00450-MHT |
| v. | ) ) | |
| ATTORNEY GENERAL OF ALABAMA STEVE MARSHALL, in his official capacity, | ) ) ) ) | |
| Defendant. | ) ) ) | |

| | |
|---|---|
| WEST ALABAMA WOMEN'S CENTER, on behalf of themselves and their staff; et al., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| STEVE MARSHALL, in his official capacity as Alabama Attorney General, | ) ) ) ) |
| Defendant. | ) ) ) |

**<u>YELLOWHAMMER FUND'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................... iv

INTRODUCTION ......................................................................................... 1

FACTS ......................................................................................................... 1

LEGAL STANDARDS ................................................................................. 3

ARGUMENT ............................................................................................... 5

   I.   Plaintiff Yellowhammer Fund Has Standing. ................................. 6

      A.  Plaintiff Established Article III Standing by Alleging It Suffered Injury to Its Mission and Diverted Resources. ....................... 7

      B.  Plaintiff Also Established Third-Party Standing for Its Right to Travel Claim. ...................................................................... 9

         1. Plaintiff Has a Sufficiently Close Relationship with the People It Serves. ................................................................ 11

         2. Plaintiff's Clients Face Significant Hindrances to Their Ability to Bring Suit Themselves. ................................... 14

   II.  This Lawsuit Does Not Offend the Eleventh Amendment. ......... 17

   III.  Plaintiff's Desired Activities Are Not Criminal. ........................ 19

      A.  Alabama's Abortion Ban Only Applies to Abortions in Alabama. ...... 20

      B.  The Due Process Clause Prevents Alabama from Imposing Its Abortion Ban on States Where Abortion Is Legal. ................ 24

      C.  Moreover, Longstanding Principles of Sovereignty and Comity Prevent Defendant's Threatened Prosecutions. ................... 31

   IV.  Yellowhammer Fund Has Viable First Amendment Claims. ...... 33

      A.  Defendant's Criminality Arguments Fail. ........................... 33

      B.  Plaintiff Is Engaged in Protected Speech, Expressive Conduct, and Association. ................................................................. 35

      C.  Defendant's Threats Cannot Survive Strict Scrutiny. ........... 41

   V.  If Defendant's Threatened Application of Alabama Conspiracy Laws Does Not Violate Due Process, Alabama Code 13A-4-4 is Unconstitutional Under the First Amendment. ....................... 42

ii

VI.  Plaintiff Has a Viable Right to Travel Claim on Behalf of Itself and Those It Serves. ...........................................................................44

    A.  Defendant's Argument that Plaintiff, as an Organization, Does Not Enjoy the Right to Travel Is Inapposite. ................................................ 46

    B.  Defendant's Argument That His Threats Are a Permissible Regulation or a Minor Burden on Travel Is Unsupported by Case Law. .................................................................................................. 47

    C.  Defendant Misstates the Standard the Court Should Apply Here. ........53

CONCLUSION ...........................................................................................55

# TABLE OF AUTHORITIES

## Cases

*303 Creative LLC v. Elenis,*
 143 S. Ct. 2298 (2023) ....................................................................................35

*Adickes v. SH Kress & Co.,*
 398 U.S. 144 (1970) .......................................................................................52

*Anderson v. Wilco Life Ins. Co.,*
 17 F.4th 1339 (11th Cir. 2021) .........................................................................3

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) .......................................................................................43

*Attorney General of New York v. Soto-Lopez,*
 476 U.S. 898 (1986) ................................................................................. 44, 45

*Barrows v. Jackson,*
 346 U.S. 249 (1953) .......................................................................................11

*Bd. of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc.,*
 482 U.S. 569 (1987) .......................................................................................43

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007) .......................................................................................43

*Bigelow v. Virginia,*
 421 U.S. 809 (1975) ........................................................................... 26, 34, 41

*BMW of N.A., Inc. v. Gore,*
 517 U.S. 559 (1996) .......................................................................................32

*Bouie v. City of Columbia,*
 378 U.S. 347 (1964) .......................................................................................31

*Brown v. Hartlage,*
 456 U.S. 45 (1982) .........................................................................................39

*Brownback v. King,*
 141 S. Ct 740 (2021) ........................................................................................4

*Carey v. Population Servs., Int'l,*
 431 U.S. 678 (1977) .......................................................................................11

*Carollo v. Boria,*
 833 F.3d 1322 (11th Cir. 2016) ......................................................................43

*Citizens United v. FEC*,
  558 U.S. 310 (2010)...................................................................................37

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
  6 F.4th 1247 (11th Cir. 2021) .................................................................37

*Craig v. Boren*,
  429 U.S. 190 (1976)...................................................................................11

*Cramer v. Skinner*,
  931 F.2d 1020 (5th Cir. 1991) .................................................................51

*Crandall v. State of Nevada*,
  73 U.S. 35 (1867).......................................................................... 44, 47, 50

*Cruthers v. State*,
  67 N.E. 930 (Ind. 1903) ...........................................................................27

*Day v. Taylor*,
  400 F.3d 1272 (11th Cir. 2005) .................................................................3

*Dekalb County School District v. Schrenko*,
  109 F.3d 680 (11th Cir. 1997) ........................................................... 17, 18

*Dennis v. United States*,
  341 U.S. 494 (1951)...................................................................................33

*Dennis v. United States*,
  384 U.S. 855 (1966)...................................................................................29

*Dobbs v. Jackson Women's Health Org.*,
  141 S. Ct. 2619 (2021)...............................................................................10

*Dobbs v. Jackson Women's Health Org.*,
  142 S. Ct. 2228 (2022)..................................................................... 10, 20, 30

*Doe v. Moore*,
  410 F.3d 1337 (11th Cir. 2005) .................................................................51

*Edelman v. Jordan*,
  415 U.S. 651 (1974)...................................................................................44

*Edwards v. California*,
  314 U.S. 160 (1941)............................................................................. *passim*

*Elrod v. Burns*,
  427 U.S. 347 (1976)...................................................................................40

*Ex parte Old Republic Sur. Co.*,
  733 So. 2d 881 (Ala. 1999)........................................................................20

*First National Bank of Boston v. Bellotti*,
    435 U.S. 765 (1978) ................................................................. 46, 47

*Fla. State Conf. of N.A.A.C.P. v. Browning*,
    522 F.3d 1153 (11th Cir. 2008) ......................................................8, 9

*Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*,
    901 F.3d 1235 (11th Cir. 2018) ................................................. 36, 37

*Giboney v. Empire Storage & Ice Co.*,
    336 U.S. 490 (1949) ..........................................................................34

*Gilmore v. Gonzales*,
    435 F.3d 1125 (9th Cir. 2006) ..........................................................52

*Haig v. Agee*,
    453 U.S. 280 (1981) ..........................................................................54

*Harris v. Evans*,
    20 F.3d 1118 (11th Cir. 1994) ..........................................................14

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ........................................................................8, 9

*Heath v. Alabama*,
    474 U.S. 82 (1985) ............................................................................25

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010) ..............................................................................41

*Jones v. Helms*,
    452 U.S. 412 (1981) ................................................................... 53, 54

*June Med. Servs. L.L.C. v. Russo*,
    140 S. Ct. 2103 (2020) ........................................................................9

*Kennedy v. Floridian Hotel, Inc.*,
    998 F.3d 1221 (11th Cir. 2021) ..........................................................5

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004) ................................................................... 10, 12

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................6, 7

*Matsuo v. U.S.*,
    586 F.3d 1180 (9th Cir 2009) ...........................................................50

*McCutcheon v. FEC*,
    572 U.S. 185 (2014) ..........................................................................37

*Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*,
    304 F.3d 1076 (11th Cir. 2002) ..................................................7, 10

*Mitchell v. State*,
    27 So. 2d 36 (Ala. 1946) ..................................................... 20, 22, 28

*Morrison v. Amway Corp.*,
    323 F.3d 920 (11th Cir. 2003) ...............................................4, 5

*Myers v. United States*,
    377 F.2d 412 (5th Cir. 1967)..................................................48

*Nat'l Inst. of Life Advocates v. Becerra*,
    138 S. Ct. 2361 (2018)...........................................................40

*Nat'l Pork Producers Council v. Ross*,
    598 U.S. 356 (2023)....................................................... 31, 32

*New York Life Ins. Co. v. Head*,
    234 U.S. 149 (1914)...............................................................32

*New York State Club Ass'n, Inc. v. City of New York*,
    487 U.S. 1 (1988)...................................................................43

*Nielsen v. Oregon*,
    212 U.S. 315 (1909)......................................................... 25, 41

*Otto v. City of Boca Raton*,
    981 F.3d 854 (11th Cir. 2020) ...............................................38

*Passenger Cases*,
    7 How. 283 (1849) .................................................................44

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984).................................................................17

*Planned Parenthood Greater N.W. v. Labrador*,
    No. 23-cv-001420-BLW, 2023 WL 4864962 (D. Idaho July 31, 2023) ............39

*Powers v. Ohio*,
    499 U.S. 400 (1991) ...................................................... 11, 16, 17

*Rape v. Poarch Band of Creek Indians*,
    250 So. 3d 547 (Ala. 2017)....................................................21

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015)...............................................................38

*Roberts v. U.S. Jaycees*,
    468 U.S. 609 (1984) ....................................................... 39, 41

*Roe v. Wade,*
    410 U.S. 113 (1973) ........................................................................10

*Rogers v. Tennessee,*
    532 U.S. 451 (2001) ........................................................................31

*Saenz v. Roe,*
    526 U.S. 489 (1999) ........................................................................44

*Shapiro v. Thompson,*
    394 U.S. 618 (1969) ........................................................................44

*Sharpe v. State,*
    710 So. 2d 1373 (Ala. Crim. App. 1997) ............................... 19, 23, 26

*Singleton v. Wulff,*
    428 U.S. 106 (1976) ........................................................................16

*Smith v. Goldsmith,*
    134 So. 651 (Ala. 1931) ..................................................................21

*Smith v. Meese,*
    821 F.2d 1484 (11th Cir. 1987) .......................................................19

*Speech First, Inc. v. Cartwright,*
    32 F.4th 1110 (11th Cir. 2022) ........................................................38

*Spence v. State of Wash.,*
    418 U.S. 405 (1974) ........................................................................36

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) .......................................................................6, 7

*State Farm Mutual Auto Insurance Co. v. Campbell,*
    538 U.S. 408 (2003) ........................................................................25

*State v. Karsten,*
    231 N.W.2d 335 (Neb. 1975) ..........................................................31

*Thompson v. State,*
    17 So. 512 (Ala. 1895) .................................................... 22, 23, 28

*Turner v. Williams,*
    65 F.4th 564 (11th Cir. 2023) ...........................................................3

*Tyler v. Hennepin Cty.,*
    598 U.S. 631 (2023) ..........................................................................3

*United States v. Elliott,*
    266 F. Supp. 318 (S.D.N.Y. 1967) ..................................................29

*United States v. Fleury,*
    20 F.4th 1353 (11th Cir. 2021) .................................................. 34, 38

*United States v. Guest,*
    383 U.S. 745 (1966) ...................................................... 44, 48, 52

*United States v. O'Brien,*
    391 U.S. 367 (1968) ..............................................................40

*United States v. Simington,*
    No. EP-10-CR-2275-KC, 2011 WL 145326 (W.D. Tex. Jan. 14, 2011) ..........51

*United States v. Spock,*
    416 F.2d 165 (1st Cir. 1969) ..................................................39

*United States v. Terranova,*
    7 F. Supp. 989 (N.D. Cal. 1934) ........................................... 29, 30

*United States v. Vazquez,*
    319 F.2d 381 (3d. Cir. 1963) ...................................................29

*United States v. Williams,*
    553 U.S. 285 (2008) ..............................................................34

*Virginia v. Black,*
    538 U.S. 343 (2003) ..............................................................38

*Waldman v. Conway,*
    871 F.3d 1283 (11th Cir. 2017) .............................................. 17, 18

*Warth v. Seldin,*
    422 U.S. 490 (1975) ..............................................................13

*Whitson v. Staff Acquisition, Inc.,*
    41 F. Supp. 2d 1294 (M.D. Ala. 1999) .............................................5

*Young Apartments, Inc. v. Town of Jupiter,*
    529 F.3d 1027 (11th Cir. 2008) ...................................... 12, 14, 15, 16

*Zobel v. Williams,*
    457 U.S. 55 (1982) ..............................................................44

**Statutes**

Ala. Code § 13A-2-23 ...........................................................2, 22

Ala. Code § 13A-4-1 ...............................................................2

Ala. Code § 13A-4-3 ....................................................... 2, 19, 22

Ala. Code § 13A-4-4 ...................................................... *passim*

Ala. Code § 26-23H-3 ................................................................21

Ala. Code § 26-23H-4 ......................................................... 19, 20, 21

Ala. Code § 26-23H-5 ................................................................24

**Other Authorities**

Petition for Writ of Certiorari, *Dobbs v. Jackson Women's Health Org.*,
141 S. Ct. 2619 (No. 18-60868) ...........................................10

*State Sovereignty*, Black's Law Dictionary (10th ed. 2014) ...................21

**Rules**

Ala. R. App. P. 18(a) ................................................................24

Fed. R. Civ. P. 12(b)(1) ..............................................................4

Fed. R. Civ. P. 12(b)(6) ...........................................................3, 5

**Constitutional Provisions**

U.S. Const. amend. I ......................................................... *passim*

U.S. Const. amend. XIV ..................................................... *passim*

U.S. Const. art III, § 2 ..............................................................6

## INTRODUCTION

As a constitutional matter, Alabama's Abortion Ban cannot apply to abortions that occur outside of Alabama. It is well settled that the State lacks constitutional authority to prevent pregnant Alabama residents from traveling outside its borders to obtain lawful abortion care in other jurisdictions.[1] Nevertheless, Defendant Steve Marshall claims that Alabama may impose criminal liability on its residents for "conspiring" to help people leave the state to engage in conduct that the State cannot validly prohibit. This is plainly incorrect. Plaintiff Yellowhammer Fund is entitled to relief from Defendant's threats to prosecute its agents and other abortion helpers for engaging in constitutionally protected speech and association and for agreeing to help members of their communities engage in constitutionally protected travel.

As set forth in detail below, Defendant has failed to meet his burden of demonstrating that any of Yellowhammer Fund's claims should be dismissed. As a result, Plaintiff asks this Court to deny Defendant's motion to dismiss.

## FACTS

Yellowhammer Fund ("Plaintiff") is a helper. Helpers are the people who aid others in accessing their rights. Doc. 1 at ¶ 1. When helpers extend a hand, they do

---

[1] In fact, Defendant Steve Marshall concedes that Alabama's law does not "forbid a [pregnant person] from leaving the state to obtain an abortion." Doc. 28 at 30.

more than simply provide aid; they send a message. Doc. 1 at ¶ 2. To those who are persecuted, they send a message of solidarity. *Id.* To the oppressors, helpers send a message of protest and defiance. *Id.* This is true whether the aid furthers a politically popular viewpoint or one that is held by the minority. *Id.* And it is especially true when a state disagrees with the message, values, or goals of the aid provided. *Id.*

On July 31, 2023, Plaintiff filed this lawsuit against Attorney General Steve Marshall ("Defendant"), seeking to restore its ability to fund lawful, out-of-state abortions without threat of prosecution. Doc. 1.[2] Providing financial and logistical support to pregnant Alabamians is a core component of Plaintiff's mission. Doc. 1 at ¶¶ 36, 40, 66. Plaintiff alleges that Defendant has violated its rights to free speech, expressive conduct, association, and due process, as well as its and pregnant Alabamians' right to travel, by threatening to prosecute abortion funds under Alabama's conspiracy and complicity liability statutes for helping people cross state lines to obtain lawful abortion care. Doc. 1 at ¶¶ 4, 21 64.

---

[2] Based on the language of Defendant's threats, Plaintiff's complaint addressed the constitutionality of Defendant's threats of prosecution under Alabama's conspiracy statutes (Alabama Code §§ 13A-4-3 and 13A-4-4) and complicity statute (Alabama Code § 13A-2-23). The complicity statute is essentially aiding and abetting liability and is fully absent from discussion in Defendant's motion to dismiss. Plaintiff does not address Alabama's solicitation statute (Alabama Code § 13A-4-1) in its complaint, but consolidated plaintiffs West Alabama Women's Center, Alabama Women's Center, and Dr. Robinson do so in their complaint. Although Plaintiff does not believe, based on the language of his threats, that Defendant intends to prosecute under Alabama's solicitation statute, Plaintiff may request leave to amend its complaint if Defendant asserts in this litigation that it is his intention to use Alabama's solicitation statute.

On August 21, 2023, the Court administratively consolidated Plaintiff's case with civil action number 2:23-cv-451-MHT. Doc. 22. On August 28, 2023, Plaintiff filed a motion for summary judgment. Doc. 27. Approximately one hour later, Defendant filed this motion to dismiss. Doc. 28. On September 5, 2023, this Court held a status conference and set a briefing schedule. Doc. 31. Plaintiff now opposes Defendant's motion to dismiss.

## LEGAL STANDARDS

"The district court may only grant a Rule 12(b)(6) motion to dismiss where it is demonstrated 'beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief.'" *Day v. Taylor*, 400 F.3d 1272, 1275 (11th Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). Indeed, "the threshold is exceedingly low for a complaint to survive a motion to dismiss for failure to state a claim." *Id.* (internal quotation marks and citation omitted). Courts "accept the factual allegations in the [c]omplaint as true and construe them in the light most favorable to" the plaintiff. *Turner v. Williams*, 65 F.4th 564, 577 (11th Cir. 2023) (emphasis and citation omitted); *see also Tyler v. Hennepin Cty.*, 598 U.S. 631, 636 (2023). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter that, accepted as true, 'state[s] a claim to relief that is plausible on its face.'" *Anderson v. Wilco Life Ins. Co.*, 17 F.4th 1339, 1345 (11th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim for relief is facially plausible when it contains 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"Dismissal for lack of subject-matter jurisdiction [under Rule 12(b)(1)] . . . is proper only when the claim is so . . . completely devoid of merit as not to involve a federal controversy." *Brownback v. King*, 141 S. Ct 740, 749 (2021) (internal quotation marks omitted) (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 89 (1998)). And courts "should only rely on Rule 12(b)(1) '[i]f the facts necessary to sustain jurisdiction *do not implicate the merits of plaintiff's cause of action*.'" *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (emphasis in original) (quoting *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997)). The facts necessary to sustain jurisdiction implicate the merits of plaintiff's cause of action when "the attack on subject matter jurisdiction . . . [is] 'intertwined' with an element of the underlying cause of action." *Morrison*, 323 F.3d at 929 (finding such intertwining where defendant sought dismissal of a Family Medical Leave Act action on grounds that the plaintiff was not an "eligible employee" under the Act). Where, as here, "a jurisdictional challenge does implicate the merits of the underlying claim . . . [t]he proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection

as a direct attack on the merits of the plaintiff's case." *Id.* at 925 (internal citation omitted).

In the alternative, a plaintiff opposing a Rule 12(b)(1) motion "enjoys similar safeguards to those provided when opposing a [Rule 12(b)(6) motion]." *Whitson v. Staff Acquisition, Inc.*, 41 F. Supp. 2d 1294, 1296 (M.D. Ala. 1999). If the jurisdictional attack "challenges whether a plaintiff has sufficiently alleged a basis of subject matter jurisdiction," the Rule 12(b)(1) motion is a facial attack on subject matter jurisdiction "and the allegations in [the] complaint are taken as true for the purposes of the motion." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021) (internal quotation marks and citation omitted). And, as with a Rule 12(b)(6) motion, the allegations are construed most favorably to the plaintiff. *Whitson*, 41 F. Supp. 2d at 1296.

## ARGUMENT

All of Defendant's arguments fail because of one simple truth: Defendant can punish conspiracy—a crime that *necessarily* involves speech and association—only when the object of the agreement is unlawful. As hard as Defendant might try to distort the purpose of conspiracy liability, there is simply no precedent that permits him to punish as a conspiracy an agreement to engage in lawful, out-of-state conduct. The legality of abortion in other states is precisely the point of this litigation, despite Defendant's assertion to the contrary. Defendant knows that abortion care is legal in

most states, and he knows that Alabama residents will seek to travel to those states because they cannot get the care they want or need at home. He also knows that he cannot punish pregnant people for traveling to other states for lawful abortion care under Alabama's Abortion Ban.

Despite these inescapable facts, Defendant attempts an unconstitutional work-around by taking aim at abortion helpers who facilitate this lawful conduct. But just as he cannot punish people for traveling to other states to access lawful abortion care, he cannot criminalize those who help them exercise that right. Defendant's threats to prosecute helpers who facilitate legal conduct infringe on their constitutionally protected speech, expressive conduct, and association, and interfere with the right to interstate travel in a manner that threatens the foundational structure of our Constitution. Thus, despite Defendant's statements to the contrary, the legality of abortion in other states is the central feature of this litigation and the very reason why Defendant's threats are unconstitutional.

## I.   Plaintiff Yellowhammer Fund Has Standing.

The doctrine of standing is rooted in Article III's case-or-controversy requirement. *See* U.S. Const. Art III, § 2; *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992). The "irreducible constitutional minimum" of standing consists of three elements. *Spokeo, Inc.*, 578 U.S. at 338 (quoting *Lujan*, 504 U.S. at 560). "The plaintiff must have (1)

suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable decision." *Id.* An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations, footnotes, and internal quotation marks omitted).

The required showing of standing "depends to some extent on the stage of litigation at which the standing issue is being decided" and, "at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1080 (11th Cir. 2002) (quoting *Lujan*, 504 U.S. at 561). In its complaint, Plaintiff has alleged facts necessary to establish standing for itself and on behalf of third parties. *See* Doc. 1 at ¶¶ 65–69.

## A. Plaintiff Established Article III Standing by Alleging It Suffered Injury to Its Mission and Diverted Resources.

Defendant does not dispute with particularity any element of Plaintiff's Article III standing.[3] To the extent his generalized assertions merit a response,

---

[3] Defendant threatened "groups" in his radio address. Defendant suggests that Plaintiff cannot claim injury because the statutes at issue do not provide for corporate liability. But neither do those

Plaintiff has alleged sufficient facts to establish standing. *See, e.g.*, Doc. 1 at ¶¶ 65–69. "[A]n organization has standing to sue on its own behalf if the defendant's illegal acts impair its ability to engage in its projects by forcing the organization to divert resources to counteract those illegal acts." *Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1165 (11th Cir. 2008). Allegations that Plaintiff has suffered injury to its mission or diverted resources to combat the challenged conduct are sufficient to show organizational injury for purposes of Article III standing. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (holding that a fair housing organization had standing because it diverted funding to counteract Fair Housing Act violations and the defendant's conduct frustrated the organization's mission).

As demonstrated throughout the complaint, Defendant's threats caused Plaintiff to cease operating its abortion fund and eliminate a staff position, and they have chilled Plaintiff from engaging in protected speech and expressive conduct. *See, e.g.*, Doc. 1 at ¶¶ 65–69. Plaintiff has had to divert resources to prevent its agents from being erroneously charged with a crime for conduct undertaken in furtherance

---

statutes grant him constitutional authority to prosecute helpers supporting *lawful*, out-of-state abortion care. Defendant cannot both threaten lawless prosecution and credibly insinuate that he would not prosecute Plaintiff because the law prevents him from doing so. Moreover, as explained *infra* at 9–10, Plaintiff sufficiently alleges injury in fact through frustration of mission and diversion of resources resulting from Defendant's threats.

of their job and to counteract its inability to fulfill a core component of its mission: abortion funding. Doc. 1 at ¶¶ 45–48, 62, 66. These resources would otherwise fund abortion care, travel, and hiring new staff to assist with those activities. *See id*.; *see also Fla. State Conf. of N.A.A.C.P.*, 522 F.3d at 1165–66 (discussing how voting rights groups would be conducting registration drives and election-day education and monitoring if they did not have to divert personnel and time to educating volunteers and voters on compliance with the challenged voter registration law); *Havens Realty Corp.*, 455 U.S. at 379 (where conduct "perceptibly impaired [plaintiff's] ability to provide counseling and referral services for low- and moderate-income homeseekers, there can be no question that the organization has suffered injury in fact"). Plaintiff's injury is caused by Defendant's threats and would be redressed by a court order enjoining Defendant from threatening Plaintiff with prosecution for engaging in lawful conduct. Plaintiff has alleged facts sufficient to establish organizational standing.

## B. Plaintiff Also Established Third-Party Standing for Its Right to Travel Claim.

Plaintiff also has third-party standing to assert the right to travel on behalf of the people it serves. Third-party standing is a prudential doctrine, not a constitutional requirement, and the rule disfavoring it "is hardly absolute." *June Med. Servs. L.L.C. v. Russo*, 140 S. Ct. 2103, 2117–18 (2020) (plurality opinion); *accord id.* at 2139 n.4

(Roberts, C.J., concurring). To establish third-party standing, a plaintiff must show that (1) it has suffered an injury-in-fact itself; (2) it has a sufficiently close relationship with the third party; and (3) the third party faces a hindrance to asserting its own rights. *Kowalski v. Tesmer*, 543 U.S. 125, 129–30 (2004). As explained above, Plaintiff has established an injury-in-fact. *See supra* at 7–9.

Plaintiff meets the well-established third-party standing test that applies to all third-party standing cases, regardless of the subject matter underlying the dispute, and does not advance a relaxed standard for cases involving abortion, as Defendant falsely suggests. *See* Doc. 28 at 9–10. Nor do *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), or the various dissents Defendant cites prevent Plaintiff, as an abortion fund and reproductive justice organization, from establishing third-party standing to raise the interstate travel rights of the people it serves.[4] Plaintiff has alleged facts that support third-party standing, and the Court must accept these facts as true at the motion to dismiss phase. *See Miccosukee Tribe of Indians of Fla.*, 304 F.3d at 1080 (citing *Lujan*, 504 U.S. at 561).

---

[4] In overturning *Roe v. Wade*, 410 U.S. 113 (1973), and its progeny, *Dobbs* did not also rule that third-party standing cannot exist in the abortion context. Quite the opposite: the U.S. Supreme Court expressly denied certiorari on the question of third-party standing. *See* Petition for Writ of Certiorari, *Dobbs v. Jackson Women's Health Org.*, 141 S. Ct. 2619 (No. 18-60868); *Dobbs v. Jackson Women's Health Org.*, 141 S. Ct. 2619, 2620 (2021) (granting certiorari only on first question presented).

### 1. Plaintiff Has a Sufficiently Close Relationship with the People It Serves.

Plaintiff has a close relationship with the people it serves.[5] It is difficult to imagine a situation in which the interests between the litigant and the third party could be more aligned. Plaintiff seeks to advance its mission using speech and by providing resources to the potential and current clients who seek its services. Federal courts have not limited the close relationship required for third-party standing to relationships like "parents and children, guardians and wards," contrary to Defendant's assertions. *See* Doc. 28 at 13. Instead, courts have found the requirement satisfied by a wide variety of relationships where the plaintiff would serve as an effective advocate for the third party's rights. *See, e.g.*, *Powers v. Ohio*, 499 U.S. 400, 415–16 (1991) (holding that criminal defendant had third-party standing to assert the rights of potential jurors excluded from jury service); *Carey v. Population Servs., Int'l*, 431 U.S. 678, 683 (1977) (holding that company selling non-medical contraceptives had third-party standing to assert the rights of potential customers, including minors); *Craig v. Boren*, 429 U.S. 190, 194 (1976) (holding that beer vendor had third-party standing to assert the rights of potential customers); *Barrows v. Jackson*, 346 U.S. 249, 258 (1953) (holding that white property owners had third-party standing to assert the rights of potential Black purchasers); *Young*

---

[5] Yellowhammer Fund is not asserting third-party standing on behalf of its staff.

*Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027, 1043–44 (11th Cir. 2008) (holding that landlords had third-party standing to assert the rights of their Hispanic tenants in challenging racially discriminatory ordinance that sought to "drive the tenants out of town" by targeting their landlords). The interests of Plaintiff and its clients are as closely aligned as the interests of the respective plaintiffs and third parties in the foregoing cases. Also, Plaintiff's interest is virtually the same as its clients—to enable them to obtain the abortion care they want in a jurisdiction where abortion is lawful. *See, e.g.,* Doc. 1 at ¶¶ 40–41, 47. Defendant has failed to articulate any plausible conflict of interest between Plaintiff and its clients.[6]

Defendant's reliance on *Kowalski*, 543 U.S. at 131, is misplaced. Doc. 28 at 12. The Court in *Kowalski* held that attorneys failed the close relationship prong for third-party standing to challenge a statute prohibiting appointment of appellate counsel for indigent people who had pled guilty because they "rely on a future attorney-client relationship with as yet unascertained Michigan criminal defendants," and they had no relationship at all with these theoretical clients. *Id.* at 130, 131. Put another way, there were no current clients asking for these criminal attorneys' assistance in appellate proceedings. But Plaintiff's relationships are not hypothetical. *See* Doc. 1 at ¶ 47. Unlike in *Kowalski*, 543 U.S. at 131, numerous

---

[6] Based on the text of Defendant's motion, this argument is likely not directed at Plaintiff Yellowhammer Fund. *See* Doc. 28 at 11–12.

Alabama residents have sought Plaintiff's assistance, and Plaintiff would immediately begin serving people in need of lawful, out-of-state abortions if the threat of prosecution were eliminated. Doc. 1 at ¶¶ 46–47, 68 (describing the number of inquiries each week and Plaintiff's desire to assist).

Defendant also relies on *Warth v. Seldin*, 422 U.S. 490, 510 (1975), for its assertion that there must be "a continuous and standing relationship between the plaintiffs and third parties—not a one-off 'incidental congruity of interest.'" Doc. 28 at 13 (quoting *Warth*, 422 U.S. at 510). But *Warth* does not stand for this broad proposition. There, plaintiffs claimed, in part, that taxes in their town had increased because of the discriminatory, exclusionary zoning practices of another town. *Warth*, 422 U.S. at 493. The Court held the taxpayers lacked standing because they were "not themselves subject to the [other town's] zoning practices" and did not allege a relationship with those who had been precluded from living in the town. *Id.* at 510. Unlike in *Warth*, where no relationship existed or was alleged, the "congruity of interest," *id.*, between Plaintiff and its clients is far from incidental. Plaintiff has an ongoing relationship with Alabama communities and residents and their reproductive care. Doc. 1 at ¶ 47. It has a longstanding—not incidental—interest in

funding abortion care and travel, and therefore has a close relationship with the people it serves.[7]

## 2. Plaintiff's Clients Face Significant Hindrances to Their Ability to Bring Suit Themselves.

Plaintiff's clients also face significant hindrances to their ability to bring suit themselves. The Eleventh Circuit's holding in *Young Apartments, Inc.* mandates this conclusion. *Young Apartments, Inc.*, 529 F.3d at 1042. There, when discussing the hindrance prong, the court held that Young Apartments was uniquely positioned to assert claims on behalf of its immigrant tenants. The plaintiff in *Young Apartments, Inc.* alleged that the Town of Jupiter attempted "to drive away the Town's growing population of Hispanic immigrant residents by targeting the landlords (including Young Apartments) who provide[d] these residents with affordable housing." *Id.* at 1032. Young Apartments had strong incentives to pursue the lawsuit because the overcrowding ordinance at issue was selectively enforced against it and caused it to suffer injury. *Id.* at 1044. "By contrast . . . Hispanic tenants face[d] hostility from

---

[7] Defendant also cites *Harris v. Evans*, 20 F.3d 1118 (11th Cir. 1994). In that case, a prisoner challenged a prison policy that prohibited guards from communicating directly with the parole board. The prisoner wanted a prison guard to write a letter recommending his release. The prisoner alleged he had third-party standing to invoke the First Amendment rights of prison guards. As should be obvious, "[t]he relationship between a prison inmate and the prison employees responsible for enforcing his incarceration is not the type of relationship that typically gives rise to third-party standing." *Id.* at 1123. The "adversarial nature of the relationship" at issue there provides a stark contrast to the relationship at issue here: abortion helpers serving members of their community who seek out Plaintiff's assistance.

the residents of Jupiter and may [have been] reluctant to raise such claims for fear of provoking additional policing measures." *Id.* Additionally, the court held that it was reasonable to presume that "some of the immigrants living in Jupiter may fear drawing attention to the immigration status of themselves or their neighbors, and that Young Apartments' immigrant tenants could fear that a lawsuit against Jupiter would invite other legal risks." *Id.* These hindrances were significant.

Like the landlord in *Young Apartments*, Plaintiff is the subject of Defendant's threats and has suffered injury. As an organization that wishes to continue funding abortion, it is uniquely positioned to assert a claim on behalf of the people it helps. Thus, "it has strong incentives to pursue this lawsuit." *Id.* And like the immigrant tenants, Plaintiff's clients fear hostility from the community and additional policing measures or other legal risks for seeking to end their pregnancies. Because of the anti-abortion sentiment in Alabama, these fears are well-founded. Doc. 1 at ¶ 69. This is not so different from the anti-immigrant sentiment in Jupiter, where immigrant tenants may have feared drawing attention to their immigration status. *Young Apartments, Inc.*, 429 F.3d at 1044. Likewise, people seeking abortion,

especially while living in a place where it is banned, may not want to draw attention to their desire to obtain a lawful abortion elsewhere.[8]

Pregnant Alabamians face additional hindrances to filing suit because they may be chilled from asserting their own right to travel by the publicity of a court suit, and someone seeking to travel also faces the imminent mootness of their claim. *See Singleton v. Wulff*, 428 U.S. 106, 117 (1976) ("Only a few months, at the most, after the maturing of the decision . . . her right thereto will have been irrevocably lost"). It is true that pregnancy could count as a capable-of-repetition-yet-evading-review exception to the mootness doctrine. *See* Doc. 28 at 14. But that is not the only consideration. Someone who cannot find the resources to travel to obtain a lawful abortion is unlikely to be able to find the resources, time, and capacity to challenge these threats in court. *See Powers v. Ohio*, 499 U.S. at 415 ("[T]here exist considerable practical barriers to suit . . . because of the small financial stake involved and the economic burdens of litigation."). "The reality is" a pregnant person who needs to travel but cannot do so without assistance will be left with "little

---

[8] Defendant suggests that the people Plaintiff serves could proceed under pseudonyms. But the court in *Young Apartments, Inc.* did not require the immigrant residents to proceed under pseudonyms and determined that the asserted hindrances were enough to establish third-party standing. *Young Apartments, Inc.*, 529 F.3d at 1042. The same is true here, and the people Plaintiff serves should not be required to proceed under pseudonyms.

incentive to set in motion the arduous process needed to vindicate [their] own rights."[9] *Id.*

Based on the foregoing, Plaintiff has sufficiently pled the facts necessary to establish third-party standing for purposes of this motion to dismiss.

## II.     This Lawsuit Does Not Offend the Eleventh Amendment.

Contrary to Defendant's assertions, Plaintiff is not asking the Court to "order[] [Defendant] to conform [his] conduct to state law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 97 (1984). Instead, it is asking for declaratory and injunctive relief to stop Defendant from violating the United States Constitution. *See* Doc. 1 at ¶¶ 70–106. And nothing about Plaintiff's complaint would result in this Court "instruct[ing Defendant] on how to conform [his] conduct to state law." *Pennhurst*, 465 U.S. at 106. Unlike the claims in *Pennhurst*, Plaintiff's claims are all under federal law. *Pennhurst* is therefore irrelevant.

Plaintiff brings only federal claims and the crux of the claims does not rest on state law. Despite Defendant's reliance on *Dekalb County School District v. Schrenko*, 109 F.3d 680 (11th Cir. 1997), and *Waldman v. Conway*, 871 F.3d 1283 (11th Cir. 2017), these cases are distinguishable. In *Schrenko*, the Eleventh Circuit

---

[9] Defendant's recommendation that pregnant Alabamians file a class action would not eliminate the issues described above, as a class representative still must come forth and subject herself to the consequences of publicity in Alabama's anti-abortion climate.

rightly concluded that "the gravamen of [the] complaint" rested on state law when 1) the district court's order relied on state law; 2) damages were measured pursuant to state law; and 3) the plaintiff's briefing was "almost entirely devoted to state law." *Schrenko*, 109 F.3d at 688. By contrast, the only discussion of state law in Plaintiff's complaint pertains to how Alabama's laws, if applied in accordance with Defendant's threats, would violate the United States Constitution.[10] *See, e.g.,* Doc. 1 at ¶¶ 9–10, 13–16, 18–19, 24, 29–34; Doc. 28 at 3, 10–20, 33–36.

Nor are Plaintiff's federal claims reliant on allegations of state law violations, as in *Waldman*. In *Waldman*, a pro se litigant claimed that "state officials violated state law in carrying out their official responsibilities." *Waldman*, 871 F.3d at 1290. By failing to conform to the notice requirements in the Alabama Department of Corrections classification manual, the plaintiff argued, state officials deprived him of his procedural due process rights. *Id.* The Eleventh Circuit correctly found the Eleventh Amendment barred consideration of these state law claims. *Id.* This differs from the current action as Plaintiff is not alleging that Defendant has violated any

---

[10] Moreover, to the extent Defendant argues that Plaintiff is inappropriately asking the Court to determine the meaning of Alabama Code § 13A-4-4, that is a mischaracterization of Plaintiff's claims, which seek an order that Defendant's threats violate *federal* law. Plaintiff's citations to Alabama state law serve only to confirm the well-established limitations on criminal liability, which reflect important Due Process principles. *See infra* at 19–24. Additionally, as explained below, *infra note* 14, there is no basis for Defendant's argument that Plaintiff's claims should be certified to the Alabama Supreme Court because, to the extent state law is relevant to their resolution, they rely on settled principles of Alabama law that cannot be disputed.

state law. Defendant's generalized insinuation that Plaintiff's claims actually seek adjudication of state law issues is unfounded.

Under Defendant's theory, no plaintiff could ever challenge the constitutionality of an attorney general's enforcement decisions, and that is contrary to settled law. *See e.g., Smith v. Meese*, 821 F.2d 1484, 1492 n.4 (11th Cir. 1987) ("[T]he exercise of prosecutorial discretion, like the exercise of Executive discretion generally, is subject to statutory and constitutional limits enforceable through judicial review.").

## III.   Plaintiff's Desired Activities Are Not Criminal.

Plaintiff's desired activities are not criminal, contrary to Defendant's assertions in his motion to dismiss. There, Defendant argues he can prosecute abortion funds for conspiracy to violate Alabama Code § 26-23H-4 ("Alabama's Abortion Ban") under Alabama Code § 13A-4-3 and Alabama Code § 13A-4-4 (collectively "Alabama's Conspiracy Laws"). However, because Alabama's Conspiracy Laws require that the defendant has an intent to violate an underlying criminal statute, *see, e.g., Sharpe v. State,* 710 So. 2d 1373, 1374 (Ala. Crim. App. 1997) (holding that defendant could not be held liable for conspiracy to traffic in a controlled substance where substance at issue did not meet the definition of "controlled substance" under the trafficking statute, and therefore the defendant had no intent to engage in conduct that constituted an underlying crime); *Mitchell v.*

*State*, 27 So. 2d 36, 38 (Ala. 1946), a defendant charged with conspiracy under either law must have the ability to challenge whether that underlying act is in fact criminal. Since Alabama's Abortion Ban cannot be applied to make abortion illegal in states where it is permitted, Defendant's assertion that abortion funds violate Alabama's Conspiracy Laws when they agree to help pregnant people leave the state and obtain lawful abortions is plainly incorrect.

**A. Alabama's Abortion Ban Only Applies to Abortions in Alabama.**

The Supreme Court of Alabama "follow[s] the general rule of statutory construction that, in order to have extraterritorial effect, a statute must explicitly provide for that effect." *Ex parte Old Republic Sur. Co.*, 733 So. 2d 881, 884 (Ala. 1999). Extraterritorial effect is "not to be given statutes by implication." *Id.* (quoting 73 A. Jur. 2d, *Statutes* § 359 (1974)). Alabama's Abortion Ban neither implicitly nor explicitly permits extraterritorial application to abortions performed in other states. To the contrary, by its plain terms, Alabama's Abortion Ban reaches only as far as Alabama's borders. Any interpretation otherwise is contrary to the principles of federalism and states' rights that informed the U.S. Supreme Court's decision in *Dobbs*. *See* 142 S. Ct. at 2242.

Alabama's Abortion Ban makes it unlawful to "intentionally perform or attempt to perform an abortion" in Alabama except under extremely limited circumstances. Ala. Code § 26-23H-4(a). Both common sense and the law's explicit

text make clear that this ban only prohibits abortions that take place within Alabama. The statute provides that it is the responsibility of "an attending physician licensed *in Alabama*" to determine whether an exception applies. Ala. Code § 26-23H-4(b) (emphasis added). It defines the term "physician" as "[a] person licensed to practice medicine and surgery or osteopathic medicine and surgery *in Alabama*." *Id.* § 26-23H-3(5) (emphasis added). And if there is a serious health risk to the pregnant person, "the termination may be performed and shall be only performed by a physician licensed *in Alabama* in a hospital as defined in the *Alabama Administrative Code* and to which he or she has admitting privileges." *Id.* § 26-23H-3(6) (emphasis added). The statute's repeated references to "Alabama" demonstrate that it only covers conduct that occurs within the state.[11]

Defendant does not even attempt to argue that Alabama's Abortion Ban prohibits abortions that take place in other states—nor could he. Instead, Defendant argues he can punish abortion helpers for supporting lawful abortions in other states by relying upon Alabama's Conspiracy Laws. Yet his argument completely ignores the central feature of conspiracy liability: a conspiracy charge requires the intent to

---

[11] This reading of the statute is also consistent with the Alabama Supreme Court's recognition that Alabama's sovereign power is limited to the territory within its borders. *See Rape v. Poarch Band of Creek Indians*, 250 So. 3d 547, 553 (Ala. 2017) ("As to a matter over which a government has no regulatory authority, it is not sovereign. Black's Law Dictionary 1631 (10th ed. 2014) defines 'state sovereignty' as '[t]he right . . . to self-government; the supreme authority exercised *by each state*." (emphasis added)); *Smith v. Goldsmith*, 134 So. 651, 657 (Ala. 1931) ("[E]ach state is a sovereign and a government within itself."); *see also* Doc. 1 at ¶¶ 13–14.

violate an underlying criminal statute.[12] *See* Ala. Code § 13A-4-3(a) ("A person is guilty of criminal conspiracy if, *with the intent that conduct constituting an offense be performed*, he or she agrees with one or more persons to engage in or cause the performance of the conduct, and any one or more of the persons does an overt act to effect an objective of the agreement." (emphasis added)). To be held liable under Alabama Code § 13A-4-4, a defendant must still meet the elements of Alabama Code § 13A-4-3—specifically, they must have intent to engage in conduct that violates an underlying criminal statute. *See* Ala. Code § 13A-4-4 (permitting conduct to be punishable only if there is a conspiracy, which, pursuant to Ala. Code § 13A-4-3, requires an agreement to engage in *unlawful* conduct). Alabama courts have held that a conspiracy charge is only valid if the defendant makes an agreement to engage in criminal wrongdoing. *See, e.g.*, *Mitchell*, 27 So. 2d at 37 (affirming dismissal of conspiracy indictment for "failure to allege corrupt motive or criminal intent").

Moreover, the Supreme Court of Alabama's decision in *Thompson v. State*, 17 So. 512 (Ala. 1895), directly contradicts Defendant's argument that Alabama Code § 13A-4-4 permits him to prosecute agreements to support lawful, out-of-state

---

[12] Although Defendant focuses his arguments on Ala. Code § 13A-4-4, the same is true of complicity liability. *See* Ala. Code § 13A-2-23(2) ("A person is legally accountable for the behavior of another *constituting a criminal offense if, with the intent to promote or assist the commission of the offense* . . . He aids or abets such other person in committing the offense.") (emphasis added).

abortions. In *Thompson*,[13] the Court held that Alabama could prosecute as a conspiracy an agreement formed in Alabama to engage in a "known common-law felony, malum in se, in a sister state." 17 So. at 516. *Thompson* thus reinforced the general principles of conspiracy liability described above, confirming that a person can only be held liable for conspiracy if they have an intent to engage in *unlawful* conduct. Alabama Code § 13A-4-4 merely codified the common-law principle relied upon in *Thompson*. Thus, while Alabama Code § 13A-4-4 permits Alabama to prosecute an agreement formed within the state to commit murder—a "known common-law felony"—in a neighboring state, it does not permit the state to apply its Abortion Ban to lawful, out-of-state abortions. *See, e.g.*, Doc. 1 at ¶ 12.

Plaintiff does not intend to do anything that violates an underlying criminal statute—in Alabama or any other state—so Plaintiff cannot be held liable for conspiracy under Alabama's Conspiracy Laws. *See Sharpe,* 710 So. 2d at 1374. This lawsuit is about Plaintiff's desire to help pregnant Alabamians access *lawful*, out-of-state abortion care, and to speak, engage in expressive conduct, associate, and travel in support of that purpose. *See, e.g.*, Doc. 1 at ¶¶ 46, 48, 64. Because legal abortions outside of Alabama are not a crime and cannot constitutionally be criminalized, *see infra* at 24–31, and because a pregnant person cannot face prosecution for obtaining

---

[13] Plaintiff incorporates by reference arguments pertaining to *Thompson v. State* presented in the response brief filed by West Alabama Women's Center *et al.*

a lawful, out-of-state abortion, *see* Doc. 28 at 30; Ala. Code § 26-23H-5, it naturally follows that Plaintiff cannot be held liable under Alabama's Conspiracy Laws for *helping* a pregnant person do either of those things.[14]

## B. The Due Process Clause Prevents Alabama from Imposing Its Abortion Ban on States Where Abortion Is Legal.

Similarly, the Due Process Clause prevents Alabama from applying its Abortion Ban to abortions that occur in states where abortion is lawful. Defendant can only use Alabama's Conspiracy Laws to prosecute helpers supporting lawful, out-of-state abortions if he unconstitutionally applies Alabama's Abortion Ban to lawful extraterritorial conduct. But such a prosecution would be unlawful, and the Due Process Clause will not tolerate such an egregious overreach of sovereign power.

An unbroken line of Supreme Court precedent prohibits Defendant from applying Alabama's Abortion Ban extraterritorially to out-of-state, lawful conduct.

---

[14] Defendant argues that Plaintiff's state law questions should be certified to the Alabama Supreme Court. *See* Doc. 28 at 23 n.11. There is no certifiable question here because certification is appropriate only where "there are no clear controlling precedents in the decisions of the Supreme Court of [Alabama]." Ala. R. App. P. 18(a). As set forth above, however, the Alabama Supreme Court has opined on the meaning of both Alabama Code § 13A-4-4 and general principles of conspiracy liability and has repeatedly held that a defendant must intend to engage in conduct that violates an underlying criminal statute in order to be held criminally liable for conspiracy. More fundamentally, however, Plaintiff seeks an order from this Court holding that Defendant's interpretation of state law violates the *federal* Due Process Clause, as described supra at 17–19. *See* Doc. 1 at ¶¶ 98–106. That question is not appropriate for certification to the Alabama Supreme Court.

In *Nielsen v. Oregon*, for example, the U.S. Supreme Court held that Oregon could not prosecute a person for operating a purse net in the Columbia River while he was in Washington—an act that was explicitly permitted under Washington law. 212 U.S. 315, 321 (1909).[15] Because Washington specifically authorized the defendant's conduct, the Court held that Oregon could not "punish a man for doing within the territorial limits of Washington an act which that state had specially authorized him to do." *Id.* Likewise, in *State Farm Mutual Auto Insurance Co. v. Campbell*, the U.S. Supreme Court held that a punitive damages award against State Farm was unlawful because it impermissibly sought to punish State Farm for its out-of-state conduct that was lawful where it occurred. 538 U.S. 408, 422 (2003). "A basic principle of federalism is that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders." *Id.*

Defendant's misguided attempt to distinguish these cases is unavailing. He argues that Alabama can criminalize an agreement if the *agreement* is made within the state of Alabama. But that circular argument underscores the problem with Defendant's theory of liability: a helper who makes an agreement within Alabama

---

[15] Defendant erroneously argues that *Nielsen*'s holding was called into question by the U.S. Supreme Court's decision in *Heath v. Alabama*, 474 U.S. 82, 91 (1985). To the contrary, the Court in *Health* limited the *dicta* in *Nielsen* pertaining to concurrent jurisdiction but did not question the *holding* in *Nielsen* about the prohibition on extraterritorial application of state law. *Id*. ("[*Nielsen*] has no bearing on the issue of the applicability of the dual sovereignty doctrine presented in this case.").

to support a *lawful* abortion in another state is not guilty of any crime unless Alabama unconstitutionally purports to apply its Abortion Ban outside its borders. Merely agreeing to support an activity that is legal violates no law. *See, e.g.*, *Sharpe*, 710 So. 2d at 1374.

Further, Defendant's hasty dismissal of *Bigelow v. Virginia*, 421 U.S. 809 (1975), as an "abortion-related" decision that rests on "abortion's then-constitutionally protected status" misreads that case and overlooks its importance.[16] Doc. 28 at 38. In *Bigelow*, the editor of a Virginia weekly newspaper was convicted of violating a Virginia statute that prohibited the sale or circulation of any publication encouraging the procuring of an abortion after the newspaper published a pre-*Roe* advertisement about the availability of lawful abortion services in New York. 421 U.S. at 811–13. The Court reversed the conviction, holding that Virginia "possessed no authority to regulate the services provided in New York," and that it therefore had no authority to restrict information that is shared with its residents about lawful abortion care provided in New York. *Id.* at 824. Thus, *Bigelow* is precisely on-point: just as Virginia could not restrict sharing information about lawful abortion care in another state, Alabama cannot criminalize a helper when

---

[16] The Court in *Bigelow* explicitly proclaimed that it was a "First Amendment case" and "not an abortion case." 421 U.S. at 815 n.5.

doing so would require the unconstitutional application of state law (Alabama's Abortion Ban) to entirely lawful, out-of-state conduct.

Although there are few cases addressing circumstances like this, *Cruthers v. State*, 67 N.E. 930 (Ind. 1903), an Indiana Supreme Court case involving a similar situation, persuasively illustrates the established prohibition on extraterritorial application of state law. In *Cruthers*, the Indiana Supreme Court held that Indiana could not convict a person for engaging in "bunko steering" in Illinois. 67 N.E. at 931–32. At the time, bunko steering—the act of enticing others to participate in fraudulent gambling—was a crime in Indiana but not in Illinois. *Id*. at 933. Nevertheless, Indiana argued that the defendant could be held liable in Indiana because he made representations in Indiana to entice another person to Illinois. *Id.* The court disagreed, holding that the prohibition on bunko steering "has no extraterritorial force or operation, and the offense thereby defined cannot be committed partly within the state of Indiana and partly without." *Id.* at 932.[17] Likewise, Alabama's Abortion Ban does not render legal abortions in other states unlawful merely because an Alabama resident receives assistance to access lawful abortion care in those states.

---

[17] The Court's decision in *Cruthers* was based on its application of established extraterritoriality principles. Similarly, here, Plaintiff seeks a ruling based on the federal Due Process Clause and its established prohibition on applying state law extraterritoriality. *See also supra* at 17–19.

As explained above, *supra* at 22–23, *Thompson* does not support Defendant's position and is not the panacea Defendant believes it to be. As set forth in Plaintiff's complaint, *see, e.g.*, Doc. 1 at ¶ 32, the Court's decision in *Thompson* was based on robbery's status as "a known common-law felony, malum in se." 17 So. 512 at 516. Although the Court explained that "[t]he place at which it is intended to commit the *felony* is not material," *id.* (emphasis added), its decision rested on the fact that the crime of robbery was a felony in both states—Alabama and Georgia—where the crime was intended to be committed. *Id.* Since *Thompson*, Alabama courts have continued to reaffirm the distinction between the state's authority to criminalize agreements to engage in acts that are clearly illegal and the state's inability to criminalize agreements to engage in *lawful* conduct. *See, e.g., Mitchell,* 27 So. 2d at 38–39 (holding that a conspiracy indictment charging defendant with an act that is not "inherently unlawful" must include specific reference to an underlying criminal offense in order to be valid).

Defendant ignores this precedent when he analogizes in vain to entirely distinct factual situations, like heroin sales, *see* Doc. 28 at 17, kidnapping, *see* Doc. 28 at 34, and fraud, *see* Doc. 28 at 18 n.6. Unlike abortion, each of these acts is criminal nationwide. Defendant does not—and cannot—cite a single case in which the state or federal government was found to have constitutionally convicted a person for conspiring to engage in *lawful*, out-of-state conduct.

Instead, Defendant relies on a variety of outdated, out-of-circuit cases dealing with federal criminal conspiracy statutes to support his position that the state can punish a conspiracy regardless of its objective. In each of those cases, however, the federal government was criminalizing conspiracies to engage in fraud or some other *unlawful* conduct that "is not, and never has been, permitted by community mores." *United States v. Elliott*, 266 F. Supp. 318, 326 (S.D.N.Y. 1967) (holding that the government had the authority to prosecute a conspirator for making an agreement within the United States to destroy a railroad bridge in Zambia)[18]; *see also Dennis v. United States*, 384 U.S. 855, 863–64 (1966) (holding that officers of a union who filed false non-Communist affidavits in order to obtain the services of the National Labor Relations Board were properly indicted with conspiracy to defraud the United States); *United States v. Vazquez*, 319 F.2d 381, 385 (3d. Cir. 1963) (holding that the indictment properly alleged a crime for conspiracy to defraud the federal government because the defendants procured legal residence for a temporary resident by arranging a marriage with a citizen in form only). Moreover, even in *United States v. Terranova*, 7 F. Supp. 989 (N.D. Cal. 1934), a case Defendant cites

---

[18] The Due Process discussion in *United States v. Elliott* was also based in part on the federal government's power to regulate relations with foreign countries. *Elliott*, 266 F. Supp. at 323 ("The Federal Government's power over foreign affairs 'comprises not only authority to regulate relations which foreign countries, but also (power) to prohibit any disturbance or interference with external affairs.'"). That stands in contrast to the power a state has, as here, to regulate affairs only within its own borders.

where the defendant's actions did not violate a specific criminal statute, the object of the conspiracy was fraud, not an act otherwise permitted by the federal government. *See id.* at 990 (upholding charge for conspiracy to defraud the United States because the conspiracy statute was "broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government").

Thus, far from supporting Defendant's argument, these cases reinforce the well-established principle that an unlawful objective *must* underlie a criminal conspiracy. Unlike fraud in *Dennis*, *Vazquez*, and *Terranova*, and the destruction of international property in *Elliott*, abortion is not unlawful in every state. In fact, it is expressly permitted in the states to which Plaintiff wishes to assist its clients to travel. And states across the country have come to a variety of determinations about its legality and morality. *Cf. Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. at 2257, 2284 (holding that abortion "presents a profound moral question" and that "the people of the various States may evaluate [the issue] differently").

Here, the Due Process Clause prevents the State from applying Alabama's Abortion Ban to lawful, out-of-state abortions. As a result, the statutory elements of Alabama's Conspiracy Laws are not met when a helper supports a lawful abortion in another state, and Defendant cannot prosecute Plaintiff or any other helper who

engages in that lawful conduct. For these reasons, Plaintiff states a claim for a Due Process violation based on Defendant's impermissible threats to apply Alabama's Abortion Ban outside its borders to lawful, out-of-state conduct.[19]

## C. Moreover, Longstanding Principles of Sovereignty and Comity Prevent Defendant's Threatened Prosecutions.

Plaintiff does not allege a Dormant Commerce Clause violation, but it does argue Defendant's threatened prosecutions offend the longstanding principles of "sovereignty and comity" embedded within the Constitution. *National Pork Producers Council v. Ross*, 598 U.S. 356, 376–77 (2023). *See* Doc. 1 at ¶¶ 99–106. The U.S. Supreme Court recently reinforced principles of "sovereignty and comity"

---

[19] Defendant argues that Plaintiff fails to properly allege a Due Process violation based on Defendant's failure to provide Alabamians with fair notice that supporting a lawful abortion can be criminalized. *See* Doc. 28 at 18–24. Yellowhammer Fund does not make this argument, so this portion of Defendant's brief is not responsive to Yellowhammer Fund's claims. However, to the extent that this argument is relevant to disposition of Yellowhammer Fund's Due Process claim, Defendant's argument is backwards. The Due Process clause prohibits retroactive application of an "unexpected and indefensible" interpretation of a criminal statute. *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964). A statutory interpretation is unexpected if it is out of sync with the "vast majority" of jurisdictions. *See, e.g., Rogers v. Tennessee*, 532 U.S. 451, 463–64 (2001) (holding that judicial invalidation of a common law rule did not violate the Due Process clause in part because the rule "has been legislatively or judicially abolished in the vast majority of jurisdictions recently to have addressed the issue"). Here, Defendant's threats of prosecution rely on an entirely unexpected and unprecedented interpretation of state authority to criminalize out-of-state conduct. As explained, *see supra* at 20–21, 28, Defendant's threats are also based on a completely atextual reading of Alabama law and conflict with well-established precedent, including the Supreme Court of Alabama's decision in *Thompson*. This is especially problematic where, as here, the "vast majority" of states, *see Rogers*, 532 U.S. at 463, agree with Plaintiff's understanding of conspiracy liability and the limitations of a state's extraterritorial authority. *See, e.g., State v. Karsten*, 231 N.W.2d 335, 336 (Neb. 1975) ("A conspiracy in this state to do something in another state which is lawful in that state is not a crime in this state. A conspiracy in Nebraska to gamble in Nevada is a convenient illustration of that principle.").

within the Constitution, even as it held that California can require out-of-state pork producers who sell pork in the state to comply with certain production requirements. *Nat'l Pork Producers*, 598 U.S. at 364–76. The Court acknowledged that "original and historical understandings of the Constitution's structure and the principles of 'sovereignty and comity' it embraces" are often consulted by courts to "resolve disputes about the reach of one State's power." *Id.* at 376. Furthermore, "it would be impossible to permit the statutes of [a State] to operate beyond the jurisdiction of that State . . . without throwing down the constitutional barriers by which all the States are restricted . . . and upon the preservation of which the Government under the Constitution depends." *New York Life Ins. Co. v. Head*, 234 U.S. 149, 161 (1914). It is essential to American federalism that each state retains the authority to make its own policy judgments as to areas that are left open to the states. *See, e.g.*, *BMW of N.A., Inc. v. Gore*, 517 U.S. 559, 571 (1996) ("No State can legislate except with reference to its own jurisdiction. . . . Each State is independent of all the others in this particular.") (citation omitted).

Therefore, in addition to the well-established Due Process principles discussed above, broader principles of our constitutional structure further support Plaintiff's claim that Defendant's threatened prosecutions would be unconstitutional.

IV.    **Yellowhammer Fund Has Viable First Amendment Claims.**

  A. **Defendant's Criminality Arguments Fail.**

Defendant argues that he may criminalize speech about lawful, out-of-state abortions because "the First Amendment does not protect criminal activity." Doc. 28 at 24. As explained above, that argument is meritless because it rests upon a faulty premise. Defendant cannot constitutionally prosecute people who help pregnant Alabamians travel to obtain *lawful*, out-of-state abortions—an entirely legal act— because the only way Defendant could do so would be to apply Alabama's Abortion Ban outside its borders. Such an application of state law to out-of-state conduct would amount to a blatant Due Process violation. *See supra* at 24–31. Accordingly, Defendant cannot restrict speech related to lawful, out-of-state abortion care.

The crime of conspiracy inherently involves speech, and a state can constitutionally proscribe such speech when it furthers criminal conduct. However, the justification for permitting a state to restrict speech evaporates when the speech does not further criminal conduct. *See Dennis v. United States*, 341 U.S. 494, 575 (1951) (Jackson, J., concurring) (explaining that a state may not "punish conspiracy to advocate something, the doing of which it may not punish"); *see also* Doc. 1 at, ¶¶ 73, 80. None of the cases Defendant cites disrupt this conclusion because they all involve speech about acts that were clearly illegal in the place where they were committed. In *United States v. Williams*, for example, the Court held that it did not

offend the First Amendment to prosecute someone who offers to provide or requests to obtain child pornography. 553 U.S. 285, 297–98 (2008). The Court explained that such speech was unprotected because it was "intended to induce or commence illegal activities." *Id.* at 298. In *Williams*, the defendant's speech indisputably violated a federal statute that categorically prohibited certain speech related to child pornography. *Id.* at 297. Unlike abortion, child pornography is prohibited across the country, and there is no dispute about its legality or morality.

Similarly, in *United States v. Fleury*, the Eleventh Circuit upheld the conviction of a defendant who sent messages threatening to kidnap and kill the recipients and their loved ones. 20 F.4th 1353, 1364–65 (11th Cir. 2021). Just as in *Williams*, there was no dispute that the defendant was guilty of violating a valid federal criminal statute, and the federal government clearly had jurisdiction over the defendant's activities. *Id.*; *see also Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949) (upholding criminalization of speech that "was in violation of Missouri's valid law" related to restraining the freedom of trade).

Unlike the defendants in *Williams* and *Fleury*, Plaintiff's speech pertains to *lawful*, out-of-state conduct that is the subject of significant dispute among the states—just like the speech in *Bigelow*. *See Bigelow*, 421 U.S. at 821–22 (holding that Virginia "possessed no authority to regulate" abortion services that were legal

in New York, to restrict an advertiser's activity in New York, or to prevent its residents from traveling to New York to obtain an abortion). Alabama cannot prohibit its residents from traveling out of state for an abortion, *see* Doc. 28 at 30, so it also cannot constitutionally prohibit the speech of helpers who support its residents in exercising that right.

## B. Plaintiff Is Engaged in Protected Speech, Expressive Conduct, and Association.

Defendant makes several additional First Amendment arguments in support of his motion—each of which can be easily dismissed.

First, Defendant does not—and cannot—dispute that Plaintiff is engaged in pure speech when it provides information to pregnant Alabamians about lawful, out-of-state abortion care, including referrals, guidance, and moral support. *See 303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2312 (2023) (explaining that all types of "oral utterance and the printed word" constitute speech under the First Amendment). However, Defendant argues that Plaintiff's financial and practical support for people seeking abortions is unprotected by the First Amendment. That argument is meritless.

As a helper that provides support to people seeking out-of-state health care, Plaintiff is necessarily engaged in expressive conduct. The U.S. Supreme Court uses a two-part test to determine whether conduct is expressive and thus protected by the

First Amendment: (1) whether the speaker has "[a]n intent to convey a particularized message," and (2) whether "in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it." *Spence v. State of Wash.*, 418 U.S. 405, 410–11 (1974). Plaintiff's support of lawful, out-of-state abortion care is expressive conduct because it is intended to—and does—convey a message of solidarity with pregnant people and support for abortion access. *See, e.g.*, Doc. 1 at ¶¶ 2, 39, 49, 57.

In *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, the Eleventh Circuit held that an organization that hosted food-sharing events was engaged in expressive conduct because its activities communicated a message "that all persons are equal, regardless of socio-economic status, and that everyone should have access to food as a human right." 901 F.3d 1235, 1240–41 (11th Cir. 2018) (hereinafter *FLFNB*). Similarly, because Plaintiff funds and supports out-of-state abortions at a time when abortion is increasingly inaccessible in Alabama and many other parts of the country, there is a significant likelihood that an observer would understand Plaintiff's views on abortion access and interstate travel for health care. *See, e.g.*, *id.* at 1242 (explaining that the context surrounding the organization's food-sharing events, including the fact that "treatment of the City's homeless population is an issue of concern in the community," would make it clear to a reasonable observer that the conduct was expressive).

Defendant's contention that Plaintiff's financial support for abortions is not expressive, unlike the political donations in *Citizens United v. FEC*, 558 U.S. 310 (2010), misrepresents the holding of that case. In *Citizens United*, the U.S. Supreme Court held that donations are speech when they are used to further political or social aims. *See id.* at 339–354. When Plaintiff funds abortions in other states, it necessarily communicates its belief that income level and economic constraints should not stand as barriers to abortion access. Contributing financially to support a social issue is necessarily expressive. *See McCutcheon v. FEC*, 572 U.S. 185, 191–92 (2014); *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1254 (11th Cir. 2021).[20]

Second, although Defendant rightly does not dispute that his threats are content-based, he argues they are justified because they merely restrict speech that "causes a crime." Doc. 28 at 26. As explained above, *supra* at 33–35, Plaintiff's speech does not "cause[] a crime"; instead, it provides support for pregnant Alabamians to access abortion care that is lawful in other states, and Defendant

---

[20] Further, Defendant's attempt to conflate funding for lawful abortion with funding for out-of-state *unlawful* drug sales only reinforces the expressive nature of Plaintiff's support. *See supra* at 28. Unlike drugs that are illegal in all states, the legality and morality of abortion is deeply contested across this country. *Cf. FLFNB*, 901 F.3d at 1243. Thus, Plaintiff's support for an entirely lawful activity—obtaining an abortion in a state where it is legal—is not a crime, and instead communicates a message of support for the important rights at stake in reproductive health care. *See id*.

expressly concedes that he cannot prosecute pregnant people for traveling to access that care, *see id.* at 30. Thus, unlike the speech in *Fleury*, 20 F.4th at 1364–65, and *Virginia v. Black*, 538 U.S. 343 (2003), another case relied upon by Defendant involving cross-burning, Plaintiff's speech supports an activity that is lawful where it occurs.

Content-based laws "target speech based on its communicative content," while viewpoint-based laws prohibit speech based on the "particular views taken by speakers on a subject." *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1125–26 (11th Cir. 2022). Defendant's threats specifically target abortion helpers that "promot[e] themselves" as funders of out-of-state abortions and use funds to "facilitate" out-of-state abortions. *See* Doc. 1 at ¶ 21. To determine whether a speaker violated these restrictions, Defendant would have to examine the content of Plaintiff's message to decide whether it was promoting and facilitating out-of-state abortions. *See Reed v. Town of Gilbert*, 576 U.S. 155, 164 (2015) (recognizing a "category of laws that, though facially content neutral, will be considered content-based regulations of speech" because they "cannot be justified without reference to the content of the regulated speech"); *Otto v. City of Boca Raton*, 981 F.3d 854, 859 (11th Cir. 2020) ("One reliable way to tell if a law restricting speech is content-based is to ask whether enforcement authorities must examine the content of the message that is conveyed to know whether the law has been violated.") (citing *McCullen v.*

*Coakley*, 573 U.S. 464, 479 (2014)). Further, Defendant's threats are viewpoint-based because they silence speakers *only* when they speak in support of lawful, out-of-state abortion. *See Planned Parenthood Greater N.W. v. Labrador*, No. 23-cv-001420-BLW, 2023 WL 4864962, at *22 (D. Idaho July 31, 2023) (holding that threats to prosecute healthcare providers for referring people for out-of-state abortion care were content- and viewpoint-based restrictions because they silence healthcare providers "on a single topic—abortion").

In his motion to dismiss, Defendant does not seriously engage with Plaintiff's claim that its right to association is violated. Plaintiff alleges that Defendant's threats of prosecution chill its association with abortion advocacy organizations, funds, and pregnant people. *See, e.g.*, Doc. 1 at ¶¶ 51, 79–86. The "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends" is "implicit" in other First Amendment rights. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). Just as a state can only proscribe speech if it has illegal aims, *see supra* at 33–34, it also can only limit association if the association has illegal aims. *See Brown v. Hartlage*, 456 U.S. 45, 55 (1982) ("Although agreements to engage in illegal conduct undoubtedly possess some element of association, the State may ban such illegal agreements without trenching on any right of association protected by the First Amendment."); *see also United States v. Spock*, 416 F.2d 165, 170 (1st Cir. 1969) ("[T]he First Amendment rights of free speech and free

association . . . are of such importance that they must prevail if the government's interest in deterring substantive crimes before they take place is insubstantial, or there is a 'less restrictive alternative' by which the substantive evil may be prevented."). By threatening to prosecute Plaintiff for associating with pregnant Alabamians for the purpose of helping them travel for lawful abortion care, Defendant clearly violates Plaintiff's right to associate. *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 357–59 (1976) (holding that a political patronage system that denied or granted public employment on the basis of affiliation with a political party inhibited the right to associate).[21]

---

[21] Defendant's vague assertion that Plaintiff's speech is unprotected because it is "professional speech" distorts the professional speech doctrine. This argument appears to only be directed at the other consolidated plaintiffs. To the extent this argument is directed at Yellowhammer Fund, the U.S. Supreme Court has *rejected* the suggestion that the speech of physicians and other professionals is entitled to less First Amendment protection than other forms of speech. *See Nat'l Inst. of Life Advocates v. Becerra*, 138 S. Ct. 2361, 2374 (2018) ("[W]hen the government polices the content of professional speech, it can fail to preserve an uninhibited marketplace of ideas in which truth will ultimately prevail." (internal quotations omitted)). Although the Court explained that "regulations of professional *conduct* that incidentally burden speech" receive diminished First Amendment protection, *id.* at 2373 (emphasis added), it has only discussed this exception in the context of speech that is integral to the informed consent process. Plaintiff's speech has nothing to do with informed consent in the context of a doctor-patient relationship. Moreover, even if the Court agrees that Defendant's threats incidentally burden Plaintiff's speech, Defendant's restriction on such speech still would be subject to the test articulated in *United States v. O'Brien*, 391 U.S. 367, 377 (1968) (holding that regulations that incidentally burden speech must further an important or substantial governmental interest and not burden speech to a greater degree than is essential to further that interest).

## C. Defendant's Threats Cannot Survive Strict Scrutiny.

Content and viewpoint-based restrictions on speech and association can be justified only by "compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of" First Amendment activities. *Roberts*, 468 U.S. at 623; *see also Holder v. Humanitarian Law Project*, 561 U.S. 1, 27–28 (2010). Defendant's threats cannot survive this test. First, as a matter of law, the State has no interest—much less a compelling one—in punishing a person for supporting or associating to advance *lawful*, out-of-state conduct. *See, e.g.*, *Nielsen*, 212 U.S. at 321 (holding that a state cannot prosecute someone "for doing within the territorial limits of [another state] an act which that [separate] state had specifically authorized him to do"); *see also supra* at 24–27. Defendant also has no interest in regulating what its residents "may hear or read about" lawful abortion. *Bigelow*, 421 U.S. at 827. Defendant's asserted interest in "prohibiting and regulating abortions," as set forth in his motion to dismiss, has nothing to do with regulating *speech* about *lawful*, out-of-state abortions. *See* Doc. 28 at 5, 11–12. This is particularly true given that Defendant himself concedes he has no interest in prohibiting pregnant Alabamians from traveling out-of-state to obtain lawful abortion care. *See id.* at 30.

For these reasons, Plaintiff has alleged that Defendant's threats violate its rights to free expression and free association, and Defendant's motion to dismiss should be denied.

**V.    If Defendant's Threatened Application of Alabama Conspiracy Laws Does Not Violate Due Process, Alabama Code 13A-4-4 is Unconstitutional Under the First Amendment.**

Finally, there is simply no merit to Defendant's brief and passing argument—confined to a footnote—that Plaintiff fails to state an overbreadth claim. In Counts I and II, Plaintiff alleges that, if construed contrary to *Thompson*, Alabama Code § 13A-4-4 is overbroad because it would "criminalize[] lawful speech and expressive activities that the state of Alabama finds disagreeable." Doc. 1 at ¶¶ 73, 80. Plaintiff further alleges that if Alabama Code § 13A-4-4 is applied in accordance with Defendant's threats and contrary to *Thompson*, Alabama would prohibit agreements to engage in *lawful*, out-of-state conduct—necessarily criminalizing speech about permissible activities. *See* Doc. 1 at ¶ 32. And the complaint alleges that such an interpretation of Alabama law would "seemingly supplant[] other states' criminal codes with Alabama's definition of crimes." *Id.* Finally, the complaint's extended explanation of the chilling impact of Defendant's threats on Plaintiff's speech demonstrates the significant and ongoing harms that Defendant's threats are imposing on lawful speech about out-of-state abortions. *See, e.g.*, Doc. 1 at ¶¶ 44–48, 51–58.

These allegations are non-conclusory, specific, and grounded in facts—more than sufficient to defeat a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Carollo v. Boria*, 833 F.3d 1322, 1328 (11th Cir. 2016). Additionally, they are more than sufficient to state a claim for overbreadth under the standard articulated by the U.S. Supreme Court, which requires a showing "from the text . . . and from actual fact that a substantial number of instances exist in which the [statute] cannot be applied constitutionally." *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14 (1988); *see also Bd. of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987) (striking down a law that banned all "First Amendment activities" because it left "no room for a narrowing construction"). If construed contrary to *Thompson* and in accordance with Defendant's threats, Alabama Code § 13A-4-4 would criminalize a significant amount of protected expressive activity because it brings within its sweep expression about *lawful* activity, including legal out-of-state abortions. This impact is substantial, as demonstrated by Plaintiff's allegations that Defendant's threats continue to chill its expression about lawful abortion care every day. *See, e.g.*, Doc. 1 at ¶ 47.

As a result, Plaintiff states a claim that Defendant's threats are unconstitutionally overbroad under the First Amendment.

**VI.   Plaintiff Has a Viable Right to Travel Claim on Behalf of Itself and Those It Serves.**

Defendant's threats to prosecute abortion funds for assisting pregnant people in interstate travel impermissibly violate Plaintiff's and pregnant Alabamians' constitutional right to travel. Defendant does not dispute, nor can he, that the U.S. Supreme Court has firmly established and repeatedly recognized a right to travel. *Zobel v. Williams*, 457 U.S. 55, 67 (1982) (Brennan, J., concurring); *Shapiro v. Thompson*, 394 U.S. 618, 629 (1969), overruled on other grounds by *Edelman v. Jordan*, 415 U.S. 651 (1974). It is a right that ensures people can enter and leave any state, *Saenz v. Roe*, 526 U.S. 489, 500 (1999), and requires all citizens to be free to travel the length and breadth of our land, *Shapiro*, 394 U.S. at 629–30.

The right to travel is "so elementary" that it inherently accompanies the Union that the Constitution established. *United States v. Guest*, 383 U.S. 745, 757–58 (1966). That is precisely how a loose confederation of states transformed into one nation. *See Zobel*, 457 U.S. at 67 (Brennan, J., concurring); *Attorney General of New York v. Soto-Lopez*, 476 U.S. 898, 902 (1986) (noting "the important role [the right to travel] has played in transforming many States into a single Nation"); *Crandall v. State of Nevada*, 73 U.S. 35, 43 (1867) ("[T]he people of these United States constitute one nation."); *Passenger Cases*, 7 How. 283, 492 (1849) (Taney, C.J., dissenting) ("We are all citizens of the United States; and, as members of the same

community, must have the right to pass and repass through every part of it without interruption…"). States infringe the right to travel when impeding travel is the primary objective of a state action, the state action "actually deters" such travel, *or* there is a classification that penalizes the exercise of that right. *Attorney General of New York,* 476 U.S. at 903. The right to travel has always encompassed a sense that people can seek "new horizons in other States," and that withholding mobility for that purpose "would be a substantial dilution of the rights of national citizenship, a serious impairment to the principles of equality." *Edwards v. California*, 314 U.S. 160, 181 (1941) (Douglas, J., concurring).

Plaintiff has stated a viable claim under 42 U.S.C. § 1983 that Defendant's threats violate its own right to travel and the right to travel of those it serves. Defendant's arguments to the contrary are either not on point, ignore relevant case law, or erroneously presume that a criminal conviction is possible for conspiring to engage in lawful conduct. The simple truth is that applying Alabama's Abortion Ban to other states, as would be required to prosecute a "conspiracy" to violate the ban by helping people leave the state to access an abortion in a state where it is legal, violates the right to travel.

### A. Defendant's Argument that Plaintiff, as an Organization, Does Not Enjoy the Right to Travel Is Inapposite.

The U.S. Supreme Court has rejected the reasoning Defendant employs in his citation to *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 778 n.14 (1978) (plurality opinion), for the proposition that the right to travel is a "purely personal constitutional guarantee" that does not extend to Plaintiff. Doc. 28 at 32. Addressing the lower court's First Amendment analysis, the Court held that "[t]he proper question is not whether corporations 'have' First Amendment rights and, if so, whether they are coextensive with those of natural persons. Instead, the question must be whether [the challenged statute] abridges expression that the First Amendment was meant to protect." *Bellotti*, 435 U.S. at 776. In holding the statute unconstitutional, the Court reasoned that "[t]he Constitution often protects interests broader than those of the party seeking vindication," and that "[t]he speech proposed by [plaintiffs] is at the heart of the First Amendment's protection." *Id.* "If the speakers here were not corporations, no one would suggest that the State could silence their proposed speech." *Id.* at 777.

Such is the case here. The question before this Court is whether Defendant's threats of prosecution abridge the travel that our Constitution was meant to protect. Plaintiff seeks to travel—a constitutionally guaranteed right. And, as with First Amendment rights, members of Plaintiff's board, staff, and volunteers do not lose

their right to travel merely because they would exercise that right as part of a corporation. *See Bellotti*, 435 U.S. at 777.

But, even taking Defendant's argument at face value, it does not hold water. The Court in *Bellotti* explained that, where corporations have been denied First Amendment protections, "there is no suggestion that the reason was because a corporation rather than an individual or association was involved." *Id.* at 778 n.14. Only "the privilege against compulsory self-incrimination" is held to be unavailable to corporations, *id.*, and Defendant cites no authority for the proposition that the right to travel is another such right. To be sure, Defendant's cherry-picked quotes explaining that "flesh and blood, physical citizen[s]" enjoy the right to travel, Doc. 28 at 32, do not support the argument that Plaintiff does not enjoy it as well. Indeed, "[i]t has been settled for almost a century that corporations are persons within the meaning of the Fourteenth Amendment." *Bellotti*, 435 U.S. at 780 n.15 (citing *Santa Clara County v. Southern Pacific R. Co.*, 118 U.S. 394 (1886).

## B. Defendant's Argument That His Threats Are a Permissible Regulation or a Minor Burden on Travel Is Unsupported by Case Law.

When California made it illegal for helpers to bring indigent people into the state, the U.S. Supreme Court invalidated the law. *Edwards,* 314 U.S. at 166. When a Nevada law taxed people leaving the state, the U.S. Supreme Court overturned it. *Crandall*, 73 U.S. at 49. And when the Ku Klux Klan inflicted violence in Georgia

meant to stop Black people from using highways to travel between states, the U.S. Supreme Court declared this violence a violation of the right to travel. *Guest*, 383 U.S. at 759; *Myers v. United States*, 377 F.2d 412, 416 (5th Cir. 1967) (describing facts of the murder that were the basis of *Guest*). As in each of these cases, Defendant's threats violate the right to travel and are neither a permissible regulation nor a minor inconvenience incidental to travel.

Consider *Edwards*—another case where the state argued it was "merely regulat[ing] certain travel assistance," but the U.S. Supreme Court disagreed. *See* Doc. 28 at 30. There, Fred Edwards took a trip from Texas to California to help his brother-in-law start a new life. *Edwards*, 314 U.S. at 171. His brother-in-law had $20 to his name and, because of his indigency, he believed California could offer him and his family new opportunities. *Id.* Seeking to prevent the migration of the indigent who were coming to the state at the tail end of the Great Depression, California made it unlawful to transport indigent people into the state. *Id.* at 174. Indigent people were coming to take advantage of California's laws, which granted state farm assistance funds to its residents. *Id.* at 171. Instead of preventing new migrants from participating in the state farm assistance program or criminalizing poor people for traveling to California, the state instead tried to do what Defendant argues he can do here: it "merely regulated" travel by restricting "certain travel assistance." *See id.* at 174; Doc. 28 at 30. In other words, California made it a crime

to provide travel assistance to the indigent by criminalizing helpers. The *Edwards* trial court sentenced Mr. Edwards to six months in the county jail for coming to the aid of his brother-in-law. 314 U.S. at 171. The U.S. Supreme Court ultimately found that no single state could "isolate itself" by prohibiting indigent people from entering and held that fundamental constitutional rights were at play—rights we now call "the right to travel." *Id.* at 173.

Defendant does not deny that he wants to stop Plaintiff and other abortion funds from offering travel assistance to pregnant people. He asserts that his scheme to target helpers is permissible because he is not directly forbidding pregnant people themselves from leaving the state, only stopping those who may assist them in exercising their right to leave Alabama and seek lawful abortion care elsewhere. Doc. 28 at 30. But the law cannot operate to create a loophole, whereby government actors may prevent people from exercising their right to travel by criminalizing those who might provide the traveler help. The Court inherently recognized this in *Edwards* when it allowed Mr. Edwards' appeal and ruled in his favor. 314 U.S. at 173.

Also, consider *Crandall*. In that case, the Court prohibited Nevada from levying a tax of one dollar upon any person leaving the state by railroad, stagecoach,

or other vehicle for hire. *Crandall*, 73 U.S. at 35–39.[22] Nevada argued this tax was "not a tax upon the passenger, but upon the business of the carrier who transports him"—an argument rejected by the U.S. Supreme Court. *Id.* at 39. The Court found Nevada's actions in conflict with the Constitution, discussing the havoc that would befall the nation if the government could place burdens on the right to leave a state. "The people of these United States constitute one nation. They have a government in which all of them are deeply interested." *Id.* at 43. The Court explained that it is against the principles of our nation to erect barriers to leaving a state, as such a precedent would interfere with the activities of national citizenship. *Id.* at 43–44. "[N]o power can exist in a State to obstruct this right that would not enable it to defeat the purposes for which the government was established." *Id.* at 44.

The fact that Mr. Crandall, like Mr. Edwards, was not a passenger but was instead the person transporting the passenger did not bar judicial relief, nor did the Court consider the one-dollar fee a mere inconvenience. *Id.* at 36. Conversely, here, Defendant is threatening to institute criminal proceedings on a charge where the threatened criminal penalty on Plaintiff's agents can be life without the possibility

---

[22] Defendant cites *Matsuo v. U.S.* to support his argument that "not everything that deters travel burdens the fundamental right to travel. States and the federal government would otherwise find it quite hard to tax airports, hotels, moving companies or anything else involved in interstate movement." 586 F.3d 1180, 1183 (9th Cir 2009) (a challenge to the Federal Employees Pay Comparability Act of 1990's lack of locale enhancements). But to be clear, the dicta of *Matsuo* does not change *Crandall*.

of parole. Even if Plaintiff's agents are not ultimately convicted, the consequences of the charge and the process to combat it are overwhelming; as a result, Plaintiff cannot instruct its agents to take that risk. Defendant's threats have forced Plaintiff to forego its desired travel and to stop facilitating travel for those it serves—people who face significant financial hurdles that can be addressed by the association and support of Plaintiff. Doc. 1 at ¶¶ 40–48. For these people, the impact of Defendant's threats is significant. *Id*. at ¶¶ 52, 54–61.

Defendant relies heavily on "inconvenience cases," arguing that Plaintiff's harm is but a minor inconvenience. Defendant relies on four cases, but in each the purpose of the law was not to prevent travel, but instead only to regulate an aspect of the manner of that travel. *See Cramer v. Skinner*, 931 F.2d 1020, 1031 (5th Cir. 1991) (requiring traveler to travel a mere additional 12 miles to fly from a different airport in order to travel to states not adjacent to Texas); *Doe v. Moore*, 410 F.3d 1337, 1348 (11th Cir. 2005) (requiring people previously convicted of a sex offense to complete in-person notification to Florida law enforcement before moving); *United States v. Simington*, No. EP-10-CR-2275-KC, 2011 WL 145326, at *9 (W.D. Tex. Jan. 14, 2011) (unpublished case requiring traveler to register his previous sex offense conviction in El Paso in the same manner that had been required to register in Montana, where he had previously lived); *Gilmore v. Gonzales*, 435 F.3d 1125,

1137 (9th Cir. 2006) (traveler refused to show identification or submit to a search, so was not allowed to fly to Washington, D.C.).

Here, because of Defendant's threats, Plaintiff is prohibited from traveling for the purpose of helping a pregnant person travel from Alabama to a state where abortion is legal. The minor inconveniences of driving an extra 12 miles (*Cramer*), showing up at a law enforcement station before moving (*Doe*), conforming one's registration in a new state (*Simington*), and following the rules to make air travel safe and available to all (*Gilmore*), *are* insignificant when compared to the consequences of the threatened prosecution here. The inconvenience cases are also distinguishable because in each the government sought to facilitate travel by making it safer to travel or by making travel more available, not less available. Here, the precise opposite is true.[23]

---

[23] The relevant question this Court must consider is whether Defendant's *threats*—as a custom or usage under § 1983—violate the right to travel, not whether the plain text of Alabama Code §13A-4-4 facially impacts travel. Thus, Defendant's focus on the text of the statute is misplaced. The U.S. Supreme Court has held that, even where laws are "just and equal on their face," state actors may violate constitutional rights "by a systematic maladministration of [the laws], or a neglect or refusal to enforce their provisions." *Adickes v. SH Kress & Co.*, 398 U.S. 144, 167 (1970). Indeed, the inclusion of the terms "custom" and "usage" in § 1983 "recognizes that settled practices of state officials may, by imposing sanctions or withholding benefits, transform private predilections into compulsory rules of behavior no less than legislative pronouncements." *Id.* at 168 (holding that a plaintiff properly alleged a claim, under § 1983, that racial segregation in public eating places was a state-enforced custom, even if it was not written into the laws). And custom or usage with the predominant purpose "to impede or prevent the right of interstate travel, or to oppress a person because of [their] exercise of that right," violates the right to travel. *See Guest*, 383 U.S. at 760.

Even if the Court finds Alabama can regulate helping people access lawful, out-of-state abortion care, the threatened application of Alabama Code §13A-4-4 is not permissible because Defendant's threats are being asserted with the predominant purpose of impeding travel or punishing those who engage in that travel.

## C. Defendant Misstates the Standard the Court Should Apply Here.

Defendant argues a "restriction [on the right to travel] that is rationally related to the offense itself is within the State's power." Doc. 28 at 36 (citing *Jones v. Helms*, 452 U.S. 412 (1981)). By doing so, it appears Defendant suggests that restrictions on the right to travel are subjected to only rational basis review and that this Court should find the conspiracy statute reasonably related to the Abortion Ban. That most certainly is not a test recognized by courts for violations of the right to travel. *Jones* created a much more limited exception to the right to travel. It is applicable only when the "restriction . . . is rationally related to the offense itself—either to the procedure for ascertaining guilt or innocence, or to the imposition of a proper punishment or remedy." 452 U.S. at 422. Defendant cuts that standard off in his motion, and implies the Court created a test it did not. To be clear, *Jones* does not create a broad standard by which courts uphold regulations if they are reasonably related to another offense outside these two narrow contexts. *Id.*

Elsewhere, Defendant suggests his travel restrictions are justified because, in his view, Plaintiff's support is criminal. Doc. 28 at 35. Again, Defendant

misconstrues yet another portion of *Jones*. That case involved a parent fleeing Georgia's jurisdiction *after* taking a plea for misdemeanor child abandonment. *Jones*, 452 U.S. at 420. He was then caught and convicted of felony child abandonment—an enhancement permitted by statute if a parent who has been convicted of child abandonment flees the jurisdiction of the court, thereby impacting the state's ability to order remedy for that crime. *Id*. The court held the parent had a right to travel that was qualified by his criminal *conviction*—not by the prosecutor's mere assertion he had violated a law. *Id.* at 420–21. Notably, *Jones* spoke approvingly of *Edwards* and *Crandall*, distinguishing them both. *Id.*

Defendant reaches for an erroneous standard because he knows he will lose under the *actual* standard that applies here. If the primary objective of the threatened prosecutions is to impede travel, Plaintiff's right to travel is "virtually unqualified." *See Haig v. Agee*, 453 U.S. 280, 306 (1981) (distinguishing the right to foreign travel from the significantly broader interstate travel right). If there is a violation of the right to travel, and that violation does not fall into any area previously carved out by the courts, Plaintiff must get relief. Defendant has not identified any applicable carve-out. The best he can do is try to analogize to inconvenience cases, such as *Doe*, as discussed *supra* at 51–52. Doc. 28 at 29 (citing *Doe*, 410 F.3d 1348–49, incorrectly as favoring balancing of state interests, when instead it found no infringement created by mere inconvenience). But, for the reasons discussed, the

inconvenience cases merely reinforce that the harm here is significant and that Plaintiff is entitled to relief.

Even if there was some loose balancing test as Defendant suggests, the foundational importance of the right to travel, and the consequences to the nation that follow when it is degraded, demonstrate that Defendant's threats cannot withstand judicial scrutiny. Defendant argues that even if his threats violate the right to travel, the state's interests overcome the interests of Plaintiff and those it serves. A similar argument was rejected in *Edwards*. 314 U.S. at 173. One need only look to *Edwards* to see a Court that was sympathetic to the "grave and perplexing social and economic dislocation" that led California to seek to use its police power to restrict travel, but nonetheless struck down the travel restriction. *Id.* No matter the significant interest the state had in exercising its police power, the Court found that preserving the free movement of people across state lines was too important. *Id.* The same conclusion must follow here, and Defendant's motion to dismiss should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion.

Dated: September 28, 2023

Respectfully submitted,

_/s/ Jamila Johnson_
Jamila Johnson*
Allison Zimmer*
THE LAWYERING PROJECT
3157 Gentilly Blvd. #2231
New Orleans, LA 70122
(347) 706-4981 (JJ)
(347) 515-6074 (AZ)
jjohnson@lawyeringproject.org
azimmer@lawyeringproject.org

Paige Suelzle*
THE LAWYERING PROJECT
2501 SW Trenton Street #1097
Seattle, WA 98106
(347) 515-6073
psuelzle@lawyeringproject.org

Ashley Light, ASB 1059-F69L
SOUTHERN POVERTY LAW
CENTER
400 Washington Ave
Montgomery, AL 36104
(334) 746-1530
ashley.light@splcenter.org

Krista Dolan*
SOUTHERN POVERTY LAW
CENTER
106 East College Avenue, #M
Tallahassee, FL 32301
(850) 521-3000
Krista.dolan@splcenter.org

*Admitted _pro hac vice_

## <u>CERTIFICATE OF SERVICE</u>

I, Jamila Johnson, do hereby Certify that a true and correct copy of the foregoing has been furnished by ECF electronic service, on this 28th day of September 2023, to all counsel of record.

Date: September 28, 2023                    */s/ Jamila Johnson*
                                                      Jamila Johnson