# IN THE DISTRICT COURT OF THE UNITED STATES FOR THE MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| YELLOWHAMMER FUND, on behalf of itself and its clients. | ) ) ) | CASE NO. 2:23-cv-00450-MHT |
| Plaintiff, | ) ) ) | CIVIL ACTION |
| v. | ) ) | |
| ATTORNEY GENERAL OF ALABAMA STEVE MARSHALL, in his official capacity | ) ) ) ) ) | |
| Defendant. | ) ) | |
| WEST ALABAMA WOMEN'S CENTER, on behalf of themselves and their staff; et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| STEVE MARSHALL, in his official capacity as Alabama Attorney General, | ) ) ) ) | |
| Defendant. | ) ) | |

## PLAINTIFF YELLOWHAMMER FUND'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................. iii

INTRODUCTION .............................................................................1

STATEMENT OF MATERIAL FACTS ..............................................2

    A.    Defendant Threatened to Prosecute Abortion Funds for Helping Pregnant People Travel to Obtain Lawful Abortion Care in Other States. ...................................................................................2

    B.    Plaintiff Is a Reproductive Justice Organization that Communicates a Message of Solidarity and Support to Pregnant Alabamians...............4

    C.    Plaintiff Wants to Resume Engaging in Constitutionally Protected Activities. ...............................................................................5

    D.    Plaintiff's Constitutionally Protected Activities Would Offer Vital Resistance to Alabama's Abortion Ban...................................................7

    E.    Plaintiff Filed this Lawsuit So it Can Resume Helping Pregnant People Travel to Obtain Lawful Abortion Care...................................................9

STANDARD OF REVIEW ..............................................................10

ARGUMENT ...............................................................................11

I.    Plaintiff Has Established Third-Party Standing and the Court Has Subject Matter Jurisdiction............................................................................11

II.    Defendant is Not Entitled to Summary Judgment on Plaintiff's Extraterritoriality Claim. .................................................................16

III.    Defendant is Not Entitled to Summary Judgment on Plaintiff's Right to Travel Claim. .............................................................................19

    A.    This Court Should Find, Once Again, That Defendant Cannot Do Indirectly What It Cannot Do Directly...................................................19

    B.    Defendant's Threats Still Violate the Right to Travel: Nothing In His Motion for Summary Judgment Disrupts This. .....................................20

    C.    Yellowhammer Fund Has a Right to Travel. .........................................26

i

IV.  Defendant Has Failed to Show That He Is Entitled to Judgment as a
      Matter of Law on Plaintiff's First Amendment Claims.................................28

      A.   Plaintiff's Desired Speech Receives First Amendment Protection. ......28

      B.   Plaintiff's Desired Conduct Is Expressive and Receives First
            Amendment Protection. ...........................................................................29

      C.   Plaintiff's Desired Association Receives First Amendment
            Protection. ..............................................................................................32

      D.   Defendant's Threatened Prosecutions Cannot Survive Strict
            Scrutiny ..................................................................................................33

CONCLUSION .........................................................................................................34

## TABLE OF AUTHORITIES

PAGE(S)

CASES

*Am. Iron & Steel Inst. v. OSHA*,
   182 F.3d 1261 (11th Cir. 1999) ............................................................. 12

*Att'y Gen. of N.Y. v. Soto-Lopez*,
   476 U.S. 898 (1986) ......................................................................... 25

*Barrows v. Jackson*,
   346 U.S. 249 (1953) ......................................................................... 14

*Beck v. Prupis*,
   162 F.3d 1090 (11th Cir. 1998) ....................................................... 28, 29

*Bigelow v. Virginia*,
   421 U.S. 809 (1975) ......................................................................... 34

*Bochese v. Town of Ponce Inlet*,
   405 F.3d 964 (11th Cir. 2005) ............................................................. 12

*Bray v. Alexandria Women's Health Clinic*,
   506 U.S. 263 (1993) ......................................................................... 25

*Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*,
   512 F.2d 1017 (5th Cir. 1975) .............................................................11

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
   6 F.4th 1247 (11th Cir. 2021) ............................................................. 31

*Corfield v. Coryell*,
   6 F. Cas. 546 (C.C.E.D. Pa. 1823) ..................................................... 22

*Craig v. Boren*,
   429 U.S. 190 (1976) ......................................................................11, 13

*Crandall v. Nevada*,
   73 U.S. 35 (1867) ............................................................................. 21

*Dobbs v. Jackson Women's Health Org.*,
   141 S. Ct. 2619 (2021) ..................................................................... 15

*Dobbs v. Jackson Women's Health Org.*,
   597 U.S. 215 (2022) .......................................................... 2, 20, 25, 29

*Edwards v. California*,
   314 U.S. 160 (1941) .............................................................. 21, 26, 28

*Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*,
  901 F.3d 1235 (11th Cir. 2018) ............................................................ 30

*Garren v. State*,
  264 S.E.2d 876 (Ga. 1980) .................................................................... 24

*Garvie v. City of Fort Walton Beach*,
  366 F.3d 1186 (11th Cir. 2004) ............................................................ 11

*Giboney v. Empire Storage & Ice Co.*,
  336 U.S. 490 (1949) .............................................................................. 28

*Griswold v. Connecticut*,
  381 U.S. 479 (1965) ......................................................................... 13, 14

*Grosjean v. Am. Press Co.*,
  297 U.S. 233 (1936) .............................................................................. 27

*Haig v. Agee*,
  453 U.S. 280 (1981) .............................................................................. 25

*Heath v. Jones*,
  941 F.2d 1126 (11th Cir. 1991) ............................................................ 24

*Holloman ex rel. Holloman v. Harland*,
  370 F.3d 1252 (11th Cir. 2004) ............................................................ 30

*Jones v. Helms*,
  452 U.S. 412 (1981) .............................................................................. 24

*Kassel v. Consol. Freightways Corp. of Del.*,
  450 U.S. 662 (1981) .............................................................................. 27

*Matsumoto v. Labrador*,
  No. 1:23-cv-00323-DKG, 2023 WL 7386998 (D. Idaho Nov. 8, 2023) ............. 27

*McCutcheon v. Fed. Election Comm'n*,
  572 U.S. 185 (2014) .............................................................................. 31

*Mem'l Hosp. v. Maricopa Cnty.*,
  415 U.S. 250 (1974) .............................................................................. 20

*Minneapolis Star & Trib. Co. v. Minn. Comm'r of Revenue*,
  460 U.S. 575 (1983) .............................................................................. 20

*NAACP v. Ala. ex rel. Patterson*,
  357 U.S. 449 (1958) .............................................................................. 32

*Nat'l Rifle Ass'n of Am. v. Vullo*,
  No. 22-842, 2024 WL 2751216 (U.S. May 30, 2024) ......................... 19

*Paul v. Virginia,*
   75 U.S. 168 (1868) ............................................................................ 21

*Pembina Consol. Silver Mining & Milling Co. v. Pennsylvania,*
   125 U.S. 181 (1888) .......................................................................... 27

*Powers v. Ohio,*
   499 U.S. 400 (1991) .......................................................................... 14

*Roberts v. U.S. Jaycees,*
   468 U.S. 609 (1984) ..................................................................... 20, 33

*Robinson v. Marshall,*
   No. 2:19-cv-365-MHT, 2022 WL 2314402 (M.D. Ala. June 24, 2022) ............... 2

*Roe v. Wade,*
   410 U.S. 113 (1973) .......................................................................... 15

*Schwab v. Crosby,*
   451 F.3d 1308 (11th Cir. 2006) ..................................................... 14, 15

*SisterSong Women of Color Reprod. Just. Collective v. Governor of Georgia,*
   40 F.4th 1320 (11th Cir. 2022) .......................................................... 15

*Speech First, Inc. v. Cartwright,*
   32 F.4th 1110 (11th Cir. 2022) .......................................................... 33

*Spence v. State of Washington,*
   418 U.S. 405 (1974) ..................................................................... 30, 31

*Spokeo, Inc. v. Robins,*
   578 U.S. 330 (2016) .......................................................................... 12

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
   538 U.S. 408 (2003) .......................................................................... 18

*Toomer v. Witsell,*
   334 U.S. 385 (1948) .......................................................................... 22

*U.S. Dep't of Lab. v. Triplett,*
   494 U.S. 715 (1990) .......................................................................... 14

*United States v. Blake,*
   868 F.3d 960 (11th Cir. 2017) ........................................................... 12

*United States v. Guest,*
   383 U.S. 745 (1966) .......................................................................... 25

*United States v. Oakley,*
   744 F.2d 1553 (11th Cir. 1984) ..........................................................11

*United States v. Se. Underwriters Ass'n*,
  322 U.S. 533 (1944) ........................................................................ 22

*Ward v. State*,
  79 U.S. 418 (1870) .......................................................................... 22

*Zobel v. Williams*,
  457 U.S. 55 (1982) .......................................................................... 22

## STATUTES

Ala. Code § 13A-2-23 ................................................................ 10, 17

Ala. Code § 13A-4-3 ......................................................................... 17

Ala. Code § 13A-4-4 ........................................................................... 4

Ala. Code § 13A-5-6(a)(1) ................................................................. 2

Ala. Code § 13A-5-11(a)(1) ............................................................... 2

Ala. Code § 26-23H-4 ............................................................... 2, 7, 17

Ala. Code § 26-23H-6(a) .................................................................... 2

Ala. Code § 26-23H-8 ....................................................................... 17

Ark. Code Ann. § 5-61-304 ................................................................ 7

Fla. Stat. Ann. § 390.0111(1) ............................................................. 8

Ga. Code Ann. § 16-12-140 ................................................................ 7

Ga. Code Ann. § 16-12-141(b) ........................................................... 8

Idaho Code § 18-622 ........................................................................... 7

Ind. Code Ann. § 16-34-2-1 ................................................................ 7

Ky. Rev. Stat. Ann. § 311.772 ............................................................. 7

La. Stat. Ann. § 40:1061 ..................................................................... 7

Miss. Code Ann. § 41-41-45 ............................................................... 7

Miss. Code Ann. § 41-41-45(2) ........................................................... 7

Mo. Rev. Stat. § 188.017 ..................................................................... 7

N.D. Cent. Code Ann. § 12.1-19.1-02 ................................................ 7

Okla. Stat. Ann. tit. 21 § 861 .............................................................. 7

S.D. Codified Laws § 22-17-5.1 .......................................................... 7

Tenn. Code Ann. § 39-15-213 ................................................................. 7

Tenn. Code Ann. § 39-15-213(b) ........................................................... 7

Tex. Health & Safety Code Ann. § 170A.002 ........................................ 7

W. Va. Code § 16-2R-3 .......................................................................... 7

## RULES

Fed. R. Civ. P. 56(a) .............................................................................. 10

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. 1 ........................................................................ *passim*

## OTHER AUTHORITIES

*3 J. Story, Commentaries on the Constitution of the United States,* 3:674–75, §
1800 (1833) ............................................................................................ 21

Ashley Bowerman, *Alabama AG clarifies prosecution rules under abortion law*,
WSFA 12 News (Jan. 11, 2023), https://www.wsfa.com/2023/01/12/alabama-ag-
clarifies-prosecution-rules-under-abortion-law/ .................................. 3

Camille Kidd et al., *State abortion bans threaten nearly 7 million Black women,
exacerbate the existing Black maternal mortality crisis*, Nat'l P'ship for Women
& Families (May 2024), https://nationalpartnership.org/report/state-abortion-
bans-threaten-black-women .................................................................. 7

*Induced Termination of Pregnancy Statistics*, Alabama Center for Health Statistics,
Alabama Department of Public Health, 1 (2022),
https://www.alabamapublichealth.gov/healthstats/assets/itop-2022.pdf .............. 9

Katherine Sacks et al., *Maternal Mortality Among Vulnerable US Communities*,
Milken Institute, 4 (2023), https://milkeninstitute.org/sites/default/files/2023-
07/MaternalMortalityamongVulnerableUSCommunities.pdf ............................. 8

Nathaniel Weixel, *Abortion advocates sue Alabama AG over prosecution threats
for out-of-state travel*, The Hill (July 31, 2023),
https://thehill.com/policy/healthcare/4128993-abortion-advocates-sue-alabama-
ag-over-prosecution-threats-for-out-of-state-travel/ ............................................. 3

Seth F. Kreimer, *Lines in the Sand: The Importance of Borders in American
Federalism*, 150 U. Pa. L. Rev. 973 (2002) ......................................... 30

**INTRODUCTION**

Plaintiff Yellowhammer Fund brought this action because it wishes to help pregnant Alabamians travel outside of Alabama to access lawful abortion care but cannot do so due to Defendant's threats. In providing this help, it not only aims to help the people it serves exercise their bodily autonomy and moral agency, but it also sends a message of solidarity and hope to pregnant Alabamians, their families, and their communities. Defendant's threats of criminal prosecution unconstitutionally prevent Plaintiff from doing either of these things, restricting Plaintiff and the people it serves from exercising their rights to travel, stifling Plaintiff's First Amendment rights to speech, expressive conduct, and association, and infringing on Plaintiff's Due Process right to be free from extraterritorial application of state law.

Defendant's only justification for his threats is his repeated and erroneous claims that Plaintiff would be engaged in criminal conduct if it helped people access lawful abortion care outside Alabama. But this Court has already decided this central issue, squarely rejecting Defendant's arguments.

Repeating a false claim does not make it true. No amount of repetition from Defendant will change the fact that the Alabama Abortion Ban cannot reach beyond the state's borders; it can prohibit abortion care only within Alabama. Plaintiff, therefore, cannot be criminally liable for facilitating abortion care that does not

violate the Alabama Abortion Ban. Because Defendant fails to overcome these realities in his motion for summary judgment, this Court should deny it.

## STATEMENT OF MATERIAL FACTS

**A. Defendant Threatened to Prosecute Abortion Funds for Helping Pregnant People Travel to Obtain Lawful Abortion Care in Other States.**

Alabama's near-total abortion ban—Alabama Code § 26-23H-4 ("Abortion Ban")—took effect on June 24, 2022, the day the United States Supreme Court released its opinion in *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022). *See Robinson v. Marshall*, No. 2:19-cv-365-MHT, 2022 WL 2314402, at *1 (M.D. Ala. June 24, 2022). Violations of the Abortion Ban are punishable by up to life in prison and a fine of up to $60,000. Ala. Code §§ 13A-5-6(a)(1), 13A-5-11(a)(1), 26-23H-6(a).

On August 11, 2022, Defendant appeared on the Jeff Poor Show, a local talk radio program, and threatened to prosecute abortion helpers in Alabama. Among other things, Defendant stated that "if someone was promoting themselves . . . as a funder of abortion out of state . . . that is potentially criminally actionable for us," and that he would "look . . . closely" at anyone who uses funds to "facilitate" out-of-state abortion care.[1] Declaration of Paige Suelzle ISO Mot. Summ. J. ¶¶ 3–7

---

[1] The Suelzle Declaration contains a transcription of Alabama Attorney General Steve Marshall, Jeff Poor Show FM Talk 1065, August 11, 2022, at 4:29:09 p.m., 8:00 min – 10:01, available

("Suelzle Decl."). In his remarks, Defendant specifically mentioned "groups out of Tuscaloosa" that provide support for out-of-state abortion. Suelzle Decl. ¶ 6.

Members of Plaintiff's staff learned about Defendant's statements after his appearance on the Jeff Poor Show. Declaration of Jenice Fountain ISO Mot. Summ. J. ¶ 22 ("Fountain Decl."); Declaration of Kelsea McClain ISO Mot. Summ. J. ¶ 23 ("McLain Decl."). Yellowhammer Fund believed that Defendant's threats specifically targeted them. *See* McLain Decl. ¶ 23; Fountain Decl. ¶¶ 22–23. Following his radio appearance, Defendant has repeatedly touted his desire to prosecute abortion helpers when they assist with lawful, out-of-state abortion care.[2] *See* Fountain Decl. ¶ 29; McLain Decl. ¶ 25; *see also* Def.'s Answer to Yellowhammer Compl. ¶¶ 18, 26–27, 33–34, 53, 65, ECF No. 56; Def.'s Answer to WAWC Compl. ¶ 30, ECF No. 57 ("Admitted that Matt Clark reported statements

---

at https://fmtalk1065.com/podcast/alabama-attorney-general-steve-marshall-jeff-poor-show-thursday-8-11-22 (last visited July 12, 2024).

[2] *See, e.g.*, Ashley Bowerman, *Alabama AG clarifies prosecution rules under abortion law*, WSFA 12 News (Jan. 11, 2023), https://www.wsfa.com/2023/01/12/alabama-ag-clarifies-prosecution-rules-under-abortion-law/; Nathaniel Weixel, *Abortion advocates sue Alabama AG over prosecution threats for out-of-state travel*, The Hill (July 31, 2023), https://thehill.com/policy/healthcare/4128993-abortion-advocates-sue-alabama-ag-over-prosecution-threats-for-out-of-state-travel/ (explaining that the attorney general responded to the filing of this lawsuit by stating that he "will continue to vigorously enforce Alabama laws protecting unborn life which include the Human Life Protection Act. That includes abortion providers conspiring to violate the Act").

made by Defendant that . . . the conspiracy statute 'could apply to attempts to procure an abortion out of state.'"). He has further done so in this litigation.[3]

**B. Plaintiff Is a Reproductive Justice Organization that Communicates a Message of Solidarity and Support to Pregnant Alabamians.**

Yellowhammer Fund is a reproductive justice organization founded in 2017. Fountain Decl. ¶¶ 6–7; McLain Decl. ¶ 17. Reproductive justice organizations are typically Black-led organizations that believe all people have the right to decide whether to have children, when to have children, and how to parent the children they have in safe and healthy environments. Fountain Decl. ¶ 6; McLain Decl. ¶ 17. Yellowhammer Fund believes that every person should be free to make decisions about their bodies, families, and futures without shame or governmental interference. Fountain Decl. ¶¶ 1, 6, 9–13, 16–19; McLain Decl. ¶¶ 17, 32, 34. Plaintiff provides support to pregnant Alabamians and their families to help eliminate barriers to abortion care, with a specific focus on addressing racial inequity in reproductive healthcare. *See, e.g.*, Fountain Decl. ¶¶ 8–16, 19–20; McLain Decl.

---

[3] *See, e.g.*, Def.'s Mot. Dismiss at 16–17, ECF No. 28 ("[I]t is plainly illegal pursuant to Ala. Code § 13A-4-4 for Plaintiffs to conspire with others to procure abortions that would be illegal in Alabama. The criminal conduct is the agreement (the conspiracy) itself, which is conduct that occurs *in Alabama* that Alabama has every right to prosecute."); *id.* at 18 ("Alabama can criminalize Alabama-based conspiracies to commit abortions elsewhere, even if the State lacked jurisdiction to prosecute out-of-state crimes."); *id.* at 23 ("Plaintiffs undeniably would violate the statute as written."); Def.'s Reply ISO Mot. Dismiss at 11, ECF No. 36 ("Alabama seeks to punish an unlawful conspiracy formed in this State—not potentially lawful conduct in another State."); Def.'s Mot. Summ. J. at 26, ECF No. 62 ("Defendant stands by his argument that the facilitation of out-of-state elective abortions is a 'course of conduct' that may be constitutionally criminalized, even if the facilitation is 'in part carried out by means of language.'").

4

¶¶ 6–8, 14–16. As a helper, Plaintiff communicates a message of solidarity and support to people in need. *See* Fountain Decl. ¶¶ 10–13, 18–20; McLain Decl. ¶¶ 11–14, 32.

### C. Plaintiff Wants to Resume Engaging in Constitutionally Protected Activities.

From 2017 to June 24, 2022, Yellowhammer Fund operated an abortion fund that provided financial and logistical support to pregnant people seeking abortion care. Fountain Decl. ¶¶ 7, 14–19; McLain Decl. ¶¶ 6–13. The fund provided support to pregnant Alabamians and residents of other states who needed help accessing abortions within and outside of Alabama. Fountain Decl. ¶ 7; McLain Decl. ¶¶ 3, 6. In addition to paying for the cost of abortion care, the fund helped callers with transportation, childcare, and lodging, and it provided guidance, moral support, and information about reproductive healthcare. Fountain Decl. ¶¶ 7, 18; McLain Decl. ¶¶ 6–13. Members of Plaintiff's staff also drove patients to abortion appointments both within and outside of Alabama. Fountain Decl. ¶ 16.

Plaintiff's abortion fund was a core part of the organization's mission. *See* Fountain Decl. ¶¶ 10, 14–19. The fund met a critical gap for pregnant Alabamians, with a particular focus on helping people of color and people with low incomes. Fountain Decl. ¶¶ 19–20; McLain Decl. ¶¶ 11–16. Well before *Dobbs*, Plaintiff began to plan for a future in which abortion care would be banned in Alabama.

McLain Decl. ¶¶ 18–21. Plaintiff anticipated the abortion fund would play a critical role in helping pregnant Alabamians travel to states where abortion care remained legal and began developing plans to expand the fund to meet community needs. *Id.*

After *Dobbs*, Plaintiff paused the operation of the abortion fund. Fountain Decl. ¶ 21; McLain Decl. ¶ 22. Plaintiff has not resumed providing support to pregnant Alabamians seeking abortion care outside the state because it fears criminal prosecution due to Defendant's threats. Fountain Decl. ¶¶ 24–26, 29–30; McLain Decl. ¶¶ 23–25. Its resources have been diverted to supporting educational initiatives and providing free emergency contraception, pregnancy tests, Plan B, and basic necessities like diapers, food supplies, school supplies, period products, and other items to meet community needs. Fountain Decl. ¶¶ 8–9. Also, because Defendant's threats have caused Yellowhammer Fund to divert resources, it now informs clients that it cannot help them obtain an abortion but that it can provide other support during their pregnancy and after giving birth. McLain Decl. ¶ 29. In addition to no longer associating with pregnant Alabamians seeking abortion care in the way they both would like, Plaintiff also stopped collaborating with abortion funds, advocacy groups, and out-of-state clinics out of fear that its associations will be criminalized. Fountain Decl. ¶¶ 17, 25; McLain Decl. ¶¶ 7, 27.

Since *Dobbs*, pregnant Alabamians continue to contact Yellowhammer Fund seeking support for accessing abortion care in states where abortion is legal.

6

Fountain Decl. ¶ 28; McLain Decl. ¶ 26. Plaintiff's helpline receives between five and ten calls per week from people seeking support from the fund. McLain Decl. ¶ 26. Because Plaintiff no longer operates the fund, it notifies callers that it cannot provide them with help. *Id.* at ¶ 27. Plaintiff would resume providing support to callers and advertising the services of the fund if it could be assured that criminal prosecution would not result from it doing so. Fountain Decl. ¶¶ 28–30; McLain Decl. ¶¶ 32–33. Plaintiff also would resume providing information to callers about out-of-state abortion care. Fountain Decl. ¶¶ 28–30; McLain Decl. at ¶¶ 32–33.

### D. Plaintiff's Constitutionally Protected Activities Would Offer Vital Resistance to Alabama's Abortion Ban.

Today, fourteen states, including Alabama, have near-total abortion bans.[4] Of the four states that border Alabama, Mississippi and Tennessee currently have near-total bans on abortion, Miss. Code Ann. § 41-41-45(2); Tenn. Code Ann. § 39-15-213(b), and Georgia and Florida have 6-week bans, Ga. Code Ann. §§ 16-12-140,

---

[4] Ala. Code § 26-23H-4; Ark. Code Ann. § 5-61-304; Idaho Code § 18-622; Ind. Code Ann. § 16-34-2-1; Ky. Rev. Stat. Ann. § 311.772; La. Stat. Ann. § 40:1061; Miss. Code Ann. § 41-41-45; Mo. Rev. Stat. § 188.017; N.D. Cent. Code Ann. § 12.1-19.1-02; Okla. Stat. Ann. tit. 21, § 861; S.D. Codified Laws § 22-17-5.1; Tenn. Code Ann. § 39-15-213; Tex. Health & Safety Code Ann. § 170A.002; W. Va. Code § 16-2R-3. Notably, 57 percent of Black women of reproductive age live in states where abortion is banned, where there have been significant legislative attempts to ban abortion, where there are pending legal challenges to a ban, or where there are gestational limits between six and twenty weeks. Camille Kidd et al., *State abortion bans threaten nearly 7 million Black women, exacerbate the existing Black maternal mortality crisis*, Nat'l P'ship for Women & Families (May 2024), https://nationalpartnership.org/report/state-abortion-bans-threaten-black-women (considering Alabama, Arizona, Arkansas, Florida, Georgia, Idaho, Indiana, Iowa, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Carolina, North Dakota, Ohio, Oklahoma, South Carolina, South Dakota, Tennessee, Texas, Utah, West Virginia, Wisconsin, and Wyoming).

7

16-12-141(b); Fla. Stat. Ann. § 390.0111(1). Pregnant Alabamians who seek abortion care must travel long distances to access care in states where abortion is legal. *See* Declaration of Kari White ISO Mot. Summ. J. ¶ 21 ("White Decl."); McLain Decl. ¶¶ 28, 31.

People who are unable to obtain abortion care face significant medical, social, and economic consequences. White Decl. ¶¶ 22, 26–27. The United States has a higher rate of maternal mortality than any other developed nation, and that rate has increased in recent years. *Id.* at ¶ 28. Alabama has the third-highest maternal mortality rate in the country. *Id.*[5] Carrying a pregnancy to term is especially dangerous for certain populations. *Id.* at ¶ 29. Pregnancy-related deaths disparately impact communities of color. *Id.* According to a 2021 report, the maternal mortality rate for Black women is 2.6 times higher than the rate for non-Hispanic white women. *Id.* Specifically, the maternal mortality rate for non-Hispanic white women in 2021 was 26.6 deaths per 100,000 live births, while the maternal mortality rate for Black women was 69.9 deaths per 100,000 live births. *Id.*

---

[5] Since the signing of the White Declaration, the location of the Maternal Mortality report has moved to https://www.alabamapublichealth.gov/perinatal/assets/2020_annual_mmr.pdf. Notably, other sources now report Alabama as having the highest rate of mothers dying from pregnancy-related issues. Katherine Sacks et al., *Maternal Mortality Among Vulnerable US Communities*, Milken Institute, 4 (2023), https://milkeninstitute.org/sites/default/files/2023-07/MaternalMortalityamongVulnerableUSCommunities.pdf.

Those who seek abortion care in Alabama are disproportionately people of color and people with low incomes. *Id.* at ¶ 23–24.[6] Along with Kentucky, Alabama is the sixth-poorest state in the country. *Id.* at ¶ 24. Since *Dobbs*, abortion has become increasingly inaccessible for pregnant Alabamians. *Id.* at ¶¶ 16, 26. Without financial and logistical support from abortion funds and practical support organizations, many Alabamians struggle to access abortion care today. *Id.* at ¶¶ 24–26.

### E. Plaintiff Filed this Lawsuit So it Can Resume Helping Pregnant People Travel to Obtain Lawful Abortion Care.

Plaintiff filed this lawsuit on July 31, 2023. Yellowhammer Compl., ECF No. 1. It alleged that Defendant's threats to prosecute Yellowhammer Fund and other helpers for helping pregnant people obtain lawful, out-of-state abortion care violate (1) the federal constitutional right to travel, *id.* at ¶¶ 87–97; (2) the First Amendment right to free speech and expression, *id.* at ¶¶ 70–78; (3) the First Amendment right to association, *id.* at ¶¶ 79–86; and (4) the Due Process Clause and principles of sovereignty and comity within the U.S. Constitution, *id.* at ¶¶ 98–106. On August 21, 2023, this Court consolidated *West Alabama Women's Center et al. v. Marshall*— a case brought by medical providers concerned about how Defendant's threats limit

---

[6] In 2022, Black Alabamians comprised 67 percent of the state's abortion patients while only comprising around 27 percent of the Alabama population. *Induced Termination of Pregnancy Statistics*, Alabama Center for Health Statistics, Alabama Department of Public Health, 1 (2022), https://www.alabamapublichealth.gov/healthstats/assets/itop-2022.pdf.

their ability to support their patients in obtaining out-of-state care—with this case. Order Granting Mot. Consol., ECF No. 22.

On August 28, 2023, Yellowhammer Fund moved for summary judgment. First Mot. Summ. J., ECF No. 27. Defendant filed a motion to dismiss later that day. Def.'s Mot. Dismiss, ECF No. 28. On May 6, 2024, the Court ruled on the motion to dismiss. Order Mot. Dismiss, ECF No. 48. At a status conference, the Court and parties agreed that rather than supplement the motion for summary judgment Yellowhammer Fund filed on August 28, 2023, the Court would deny it without prejudice, so that Yellowhammer Fund could refile by June 17, 2024. Order Den. First Mot. Summ. J., ECF No. 54; Scheduling Order, ECF No. 55.

Yellowhammer Fund's complaint asks this Court to declare unconstitutional and permanently enjoin enforcement of Alabama Code §§ 13A-2-23, 13A-4-3, and 13A-4-4, for speech and actions that assist Alabama residents leaving the state to obtain lawful abortion care.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate if "the pertinent facts are obvious and indisputable from the record" and "the only remaining truly debatable matters are legal questions that a court is competent to

10

address." *Garvie v. City of Fort Walton Beach*, 366 F.3d 1186, 1190 (11th Cir. 2004).

Here, Defendant agrees that there is no genuine dispute as to any material fact; thus,

the only question for the Court is whether he has established that he is entitled to

judgment as a matter of law. *See, e.g.*, *United States v. Oakley*, 744 F.2d 1553, 1555–

56 (11th Cir. 1984) (explaining that summary judgment is only appropriate if "one

of the parties is entitled to judgment as a matter of law on facts that are not genuinely

disputed" (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512

F.2d 1017, 1023 (5th Cir. 1975))). Because all of Defendant's legal arguments fail

as a matter of law, his motion for summary judgment should be denied.

## ARGUMENT

### I.     Plaintiff Has Established Third-Party Standing and the Court Has Subject Matter Jurisdiction.

Defendant incorrectly asserts that the Court lacks subject matter jurisdiction

over Plaintiff's right to travel claim on behalf of its clients. First, it is wrong to

conflate subject matter jurisdiction and third-party standing. Second, Plaintiff has

clearly established third-party standing to assert the rights of its clients seeking to

travel based on a straightforward application of that standard.

Third-party standing is not a question of subject matter jurisdiction. *See Craig

v. Boren*, 429 U.S. 190, 193 (1976) ("[L]imitations on a litigant's assertion of jus

tertii are not constitutionally mandated . . ."). Article III standing, not third-party

11

standing, "implicates [the Court's] subject matter jurisdiction." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005). There is no question that Plaintiff has suffered an injury-in-fact by way of Defendant's threats, that its injury of ceasing work in line with its mission is traceable to those threats, and that an order from this Court declaring those threats unconstitutional would redress that injury. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also* Order Mot. to Dismiss at 21–22, ECF No. 48. There can be no dispute that the Court has subject matter jurisdiction to hear this claim.

Defendant's real qualm is with Plaintiff's third-party standing, a prudential doctrine that does not implicate subject matter jurisdiction. *United States v. Blake*, 868 F.3d 960, 970 (11th Cir. 2017) ("[P]rudential standing is flexible and not jurisdictional in nature . . . ." (quoting *Am. Iron & Steel Inst. v. OSHA*, 182 F.3d 1261, 1274 n.10 (11th Cir. 1999))). This Court determined that Plaintiff has third-party standing to assert the right to travel on behalf of its clients, *see* Order Mot. Dismiss at 25, ECF No. 48, and Plaintiff has submitted additional facts in support of its Motion for Summary Judgment that provide further support for such a finding, *see* Second Mot. Summ. J. at 25–28, ECF No. 61. Those facts cannot be seriously disputed, and Defendant's attempt to relitigate this issue must fail.

Furthermore, this Court already rejected Defendant's argument that *Craig v. Boren* can be distinguished from the instant case, and it should do so again. *Craig*

illustrates that Plaintiff is the "obvious claimant" and "least awkward challenger" to Defendant's threats of prosecution. *Craig*, 429 U.S. at 197. In *Craig*, a beer vendor challenged a statute that prohibited the sale of beer to men under the age of 21 and to women under the age of 18. *Id.* at 192. Although the unconstitutional discrimination was against men ages 18–20, the statute would be enforced against the vendor, leading the Court to conclude that the vendor had third-party standing to assert the rights of the affected men. *Id.* at 194–95. The situation here is analogous. Defendant's threats violate the right to travel of Plaintiff and its clients, and the statutes would be enforced against Plaintiff. Thus, Plaintiff is "entitled to assert those concomitant rights of third parties that would be 'diluted or adversely affected' should [its] constitutional challenge fail and the statutes remain in force." *Id.* at 195 (citing *Griswold v. Connecticut*, 381 U.S. 479, 481 (1965)).[7]

Defendant's insistence that Plaintiff improperly seeks a special third-party standing test because this case involves abortion has no basis in reality. Plaintiff merely asks that the Court treat it the same as any other plaintiff seeking third-party

---

[7] Defendant also states that "undistorted third-party standing jurisprudence casts significant doubt on Plaintiffs' ability to prove that it satisfies the close-relationship and hindrance elements for third-party standing," Def.'s Mot. Summ. J. at 12, ECF No. 62, but offers no additional argument on this assertion. There is no such doubt. Plaintiff has readily established that it has a close relationship with its clients and that there are several hindrances to its clients' asserting their own rights. *See* Second Mot. Summ. J. at 26–28, ECF No. 61. In fact, this Court found that Plaintiff had established that it has a close relationship with the people it serves, Order Mot. Dismiss at 34–38, ECF No. 48, and highlighted some of those hindrances, including the "risks, costs, and inconveniences of litigation," "the time-sensitive nature of pregnancy, as well as the clients' privacy concerns and financial vulnerability," *id.* at 37–38.

standing. This Court did just that when it applied well-established third-party standing principles to find that Plaintiff meets the standard. *See* Order Mot. Dismiss at 27, ECF No. 48 ("*Craig* is just one example of the broader principle that litigants threatened with enforcement are well positioned, if not entitled, to assert the rights of third parties that are intertwined with the conduct the litigants seek to pursue."); s*ee also, e.g.*, *Powers v. Ohio*, 499 U.S. 400, 415 (1991) (holding that a criminal defendant had third-party standing to assert the rights of potential jurors excluded from jury service); *U.S. Dep't of Lab. v. Triplett*, 494 U.S. 715, 720 (1990) (permitting an attorney disciplined for accepting a fee prohibited by the Black Lung Benefits Act of 1972 to invoke claimants' due process rights to challenge the fee restriction that resulted in his punishment); *Griswold*, 381 U.S. at 481 (permitting a physician held criminally liable for prescribing contraception to assert the rights of a married couple); *Barrows v. Jackson*, 346 U.S. 249, 257–59 (1953) (permitting a white tenant sued for conveying property to African-American individuals to raise the rights of prospective African-American purchasers).

Defendant continues to claim that *Dobbs* somehow upended longstanding third-party standing rules. Def.'s Mot. Summ. J. at 11–12, ECF No. 62. As this Court explained, the Supreme Court did not "in eight words, upend[] the law of standing." Order Mot. Dismiss at 39, ECF No. 48. Defendant nevertheless asserts that "there is dicta and then there is dicta, and then there is Supreme Court dicta." Def.'s Mot.

Summ. J. at 11, ECF No. 62 (quoting *Schwab v. Crosby*, 451 F.3d 1308, 1325) (11th Cir. 2006). But the "dicta" relied upon in *Schwab* was "well thought out, thoroughly reasoned, and carefully articulated analysis by the Supreme Court" that "constitute[d] an entire, separately enumerated section" of an opinion, rather than the "devoid-of-analysis, throw-away kind of dicta." *Schwab*, 451 F.3d at 1325. And it was merely persuasive—not binding—for the court in *Schwab*. *Id.* at 1325–26. That is a far cry from what Defendant asks this Court to do with the "eight words" spent on third-party standing in *Dobbs*.[8] Order Mot. Dismiss at 39, ECF No. 48; Def.'s Mot. Summ. J. at 11–12, ECF No. 62. The Supreme Court's third-party standing doctrine retains its precedential value, and this Court should "take the Supreme Court at its word" and hold that Plaintiff has third-party standing here. *See* Def.'s MSJ at 12 (citing *SisterSong Women of Color Reprod. Just. Collective v. Governor of Georgia*, 40 F.4th 1320, 1328 (11th Cir. 2022)).

In sum, this Court has subject matter jurisdiction over Plaintiff's claims, and Plaintiff has third-party standing to assert its clients' rights to travel on their behalf.

---

[8] Again, in overturning *Roe v. Wade*, 410 U.S. 113 (1973), and its progeny, *Dobbs* did not also rule that third-party standing cannot exist in the abortion context. Quite the opposite: the U.S. Supreme Court expressly denied certiorari on the question of third-party standing. *See* Petition for Writ of Certiorari, *Dobbs v. Jackson Women's Health Org.*, 141 S. Ct. 2619 (No. 18-60868); *Dobbs v. Jackson Women's Health Org.*, 141 S. Ct. 2619, 2620 (2021) (granting certiorari only on first question presented).

## II.   Defendant is Not Entitled to Summary Judgment on Plaintiff's Extraterritoriality Claim.

Defendant has failed to show entitlement to judgment as a matter of law on Plaintiff's extraterritoriality claim. Defendant argues that, "for a state law to have extraterritorial application, it must apply to events occurring and injuries suffered primarily outside the state's borders," Def.'s Mot. Summ. J. at 13, ECF No. 62, and that "[t]he parties agree that [Defendant] does not intend to prosecute . . . conduct occurring in another state," *id*. at 14 (quoting Order Mot. Dismiss at 89, ECF No. 48), concluding that this "resolves [Plaintiff's] claim," *id*. But this argument evinces Defendant's misunderstanding of his own threats, basic principles of criminal liability, or both.

First, Defendant fails to read this Court's Order in full context. While the parties agree that Defendant does not intend to directly prosecute conduct occurring outside of Alabama, this Court also said Defendant "has threatened those who facilitate out-of-state conduct," Order Mot. Dismiss at 89, ECF No. 48, a fact Defendant concedes, Def.'s Mot. Summ. J. at 5–6, ECF No. 62.

Second, Defendant's threats do not merely "[c]reat[e] effects in other States by regulating within one's own borders." Def.'s Mot. Summ. J. at 15, ECF No. 62. With his threats and his attempt to fabricate criminal conspiracy and accessory liability based on conduct that is lawful where it occurs, Defendant seeks to export

16

Alabama's Abortion Ban and impose it on Alabamians in other states where abortion is lawful. In essence, Defendant's threats force Alabamians to carry Alabama's Abortion Ban on their backs wherever they go—even when the conduct they seek is lawful where they seek to engage in it.

Defendant's threats of prosecution amount to an extraterritorial application of Alabama's Abortion Ban because both conspiracy and accessory liability—the bases for Defendants' threatened prosecution—require an underlying crime. *See* Ala. Code § 13A-4-3(a) (requiring that person acted "with the intent that conduct constituting an offense be performed"); Ala. Code § 13A-2-23 (requiring that person acted "with the intent to promote or assist the commission of [an] offense"). Defendant alleges that the underlying crime here is "procur[ing] abortions." Def.'s Mot. Summ. J. at 14, ECF No. 62. But Alabama's Abortion Ban prohibits abortion only in Alabama. *See* Ala. Code §§ 26-23H-4(a) ("It shall be unlawful for any person to intentionally perform or attempt to perform an abortion . . ."); 26-23H-8 ("The construction of existing statutes and regulations that regulate or recognize abortion *in Alabama* that are in conflict or antagonistic to this [law] shall be repealed . . .") (emphasis added). Defendant concedes as much. Def.'s Mot. Summ. J. at 14, 20–21, ECF No. 62. And all parties agree that the abortion care that Plaintiff wishes to continue facilitating— abortion care that is lawful and, in some states, constitutionally protected—does not violate Alabama's Abortion Ban.

17

How, then, can Defendant threaten prosecution under conspiracy or accessory liability? Such prosecution is possible only if the out-of-state abortion care Plaintiff wishes to facilitate violates Alabama's Abortion Ban, which Defendant concedes it does not. Def.'s Mot. Summ. J. at 14, 20–21, ECF No. 62. Defendant seeks to prosecute in-state conduct simply because it is in furtherance of out-of-state conduct that he deems to be criminal despite it being lawful where it occurs. But "[a] 'basic principle of federalism is that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders[.]'" Def.'s Mot. Summ. J. at 14–15, ECF No. 62 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003)). The only way to understand Defendant's attempted prosecution of acts that support *lawful* out-of-state abortions is as an extraterritorial application of Alabama law.

Defendant has failed to show he is entitled to judgment as a matter of law on Plaintiff's extraterritoriality claim. And, in fact, his argument shows precisely why the Court should grant Plaintiff's motion for summary judgment on this claim. Because Defendant cannot "outright prohibit [Plaintiff's] clients from traveling to receive lawful out-of-state abortions," Order Mot. Dismiss at 51, ECF No. 48, he cannot criminalize Plaintiff's support of such travel merely by claiming he is only regulating conduct within Alabama. A state cannot be allowed to achieve through conspiracy and accessory liability what it is prohibited from accomplishing through

18

direct criminal laws. *Nat'l Rifle Ass'n of Am. v. Vullo*, No. 22-842, 2024 WL 2751216, at *8 (U.S. May 30, 2024) ("[A] government official cannot do indirectly what she is barred from doing directly.").

## III.    Defendant is Not Entitled to Summary Judgment on Plaintiff's Right to Travel Claim.

Defendant has failed to show he is entitled to judgment as a matter of law on Plaintiff's right to travel claim. This Court's reasoning in its extensive order on the Motion to Dismiss necessitates that conclusion: Defendant is violating the right to travel by threatening to prosecute helpers. Therefore, his motion must be denied.

### A. This Court Should Find, Once Again, That Defendant Cannot Do Indirectly What It Cannot Do Directly.

As discussed at length in Plaintiff's opposition to Defendant's Motion to Dismiss and in Plaintiff's Summary Judgment motion, the State cannot use conspiracy and accessory liability to do that which it is prohibited from doing directly with criminal laws. Defendant does not even attempt to hide that this is precisely his goal; he seeks to apply Alabama's Abortion Ban to Alabamians regardless of the state they travel to and regardless of the laws recognizing abortion care as lawful health care in other states. Defendant's argument crumbles because even he concedes that he cannot constitutionally criminalize citizens for traveling to other states to obtain lawful abortions. Def.'s Mot. Summ. J. at 14, 20–21, ECF No. 62.

19

As this Court has explained, this concession decides the constitutional question. *See* Order Mot. Dismiss at 51, ECF No. 48 ("Of course, if a State cannot outright prohibit the plaintiffs' clients from traveling to receive lawful out-of-state abortions, it cannot accomplish the same end indirectly by prosecuting those who assist them."). Defendant's attempt to use conspiracy and accessory liability to sever pregnant Alabamians from the community support that would help them access lawful out-of-state abortion care violates the right to travel.[9]  This rationale remains sturdy and should be the bedrock for denying Defendant's motion.

## B. Defendant's Threats Still Violate the Right to Travel: Nothing In His Motion for Summary Judgment Disrupts This.

As recognized by this Court, this claim is not a particularly close call. Order Mot. Dismiss at 49, ECF No. 48; *see also Dobbs*, 597 U.S. at 346 (explaining that whether a state may "bar a resident of that State from traveling to another State to obtain an abortion" is "not especially difficult as a constitutional matter" (Kavanaugh, J., concurring)). More than a century of right to travel jurisprudence

---

[9] As described by the United States in its Statement of Interest, "[j]ust as a state cannot enact a criminal law prohibiting individuals from attending a church, a state cannot use conspiracy law to prohibit individuals from agreeing to attend the church or assisting those who wish to attend the church by transporting them." DOJ Statement of Interest at 25, ECF No. 40 (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984)). "Similarly, just as a state cannot directly prohibit publication of a newspaper, a state also cannot rely on conspiracy law to prohibit agreements to provide the newspaper with paper or ink." *Id.* (citing *Minneapolis Star & Trib. Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575 (1983)). And, for example, "lacking the power to exclude nonresidents from its hospital emergency rooms, a state could not accomplish the same result by banning agreements to transport nonresidents to those emergency rooms." *Id.* at 25–26 (citing *Mem'l Hosp. v. Maricopa Cnty.*, 415 U.S. 250, 269 (1974)).

supports the claim that the state cannot impose restrictions on helpers that burden their ability to facilitate travel. *See, e.g.*, *Edwards v. California*, 314 U.S. 160 (1941) (invalidating law that criminalized helpers who transport indigent people into the state of California); *Crandall v. Nevada*, 73 U.S. 35 (1867) (upholding challenge of interstate travel tax brought by stagecoach agent rather than passenger).

Most of Defendant's arguments are identical to those raised in his Motion to Dismiss, although, arguably, he introduces a new rationale for why he can prosecute helpers who support pregnant people in getting lawful, out-of-state abortions. Defendant argues that, because this Court discussed the Privileges and Immunities Clause in great depth in its Motion to Dismiss Order, it should incorporate into its analysis case law about the circumstances under which a privileges and immunities claim can be brought.

Defendant suggests he has not violated Plaintiff's or its clients' rights to travel because Plaintiff and its clients are not being treated differently by other states. Def.'s Mot. Summ. J. at 17–18, ECF No. 62. This argument is easily defeated. First, Plaintiff agrees that the Privileges and Immunities Clause is *one* origin of the right to travel and helps establish that the right includes both the right to move physically between the states and the right to do what is legal in the destination state. *See* Order Mot. Dismiss Order at 45–47, ECF No. 48 (citing 3 J. Story, *Commentaries on the Constitution of the United States*, 3:674–75, § 1800 (1833); *Paul v. Virginia*, 75 U.S.

21

168, 180 (1868), *overruled in part on other grounds by United States v. Se. Underwriters Ass'n*, 322 U.S. 533 (1944); *Corfield v. Coryell*, 6 F. Cas. 546, 552 (C.C.E.D. Pa. 1823) (Washington, J., on circuit); *Ward v. State*, 79 U.S. 418, 430 (1870); *Toomer v. Witsell*, 334 U.S. 385 (1948)).

But courts, including this Court, have repeatedly declined to cabin the origin of the right to travel to one particular constitutional source. *See, e.g.*, *Zobel v. Williams*, 457 U.S. 55, 66–67 (1982) (Brennan, J., concurring). As discussed in great length in Plaintiff's Summary Judgment Motion, and acknowledged by this Court, there are many sources that contribute to the right. Second Mot. Summ. J. at 21–24. ECF No. 61; Order Mot. Dismiss at 42 n.10, ECF No. 48. Regardless of its source, the right to travel is hollow if unaccompanied by the freedom to engage in lawful conduct in the states to which one travels. Seth F. Kreimer, *Lines in the Sand: The Importance of Borders in American Federalism*, 150 U. Pa. L. Rev. 973, 1007 (2002); *see also* Order Mot. Dismiss at 50–51, ECF No. 48.

Defendant has also recast his "minor inconvenience" cases—all cases this Court readily distinguished in its Motion to Dismiss Order. *See* Order Mot. Dismiss at 58, ECF No. 48 ("These cases are quite unlike the one before the court. They generally involved travel regulations for individuals who had previously committed a crime or regulations meant to facilitate travel that were deemed to result in minor

delays or inconveniences."); *see also* Pl.'s Resp. to Def.'s Mot. Dismiss at 50–52 & n.22, ECF No. 33. These should remain equally unpersuasive to the Court.

Lastly, Defendant argues that he should be able to prosecute helpers on conspiracy and accessory liability charges for helping pregnant people travel for lawful abortion care because there are "sufficient direct repercussions within the state." Def.'s Mot. Summ. J. at 20, ECF No. 62 (citing *Heath v. Jones*, 941 F.2d 1126, 1139 (11th Cir. 1991)). Plaintiff would hope its conduct has an impact in Alabama: it acts with the goal of conveying a message within the state of Alabama. The Abortion Ban is just the latest in decades of actions by Alabama lawmakers who seek to deprive pregnant people of bodily autonomy, control over their health, and the ability to decide when and how to start a family. Since Plaintiff's founding, it has acted as a helper to send a message of solidarity to these pregnant people: that their humanity is bound up in that of the helpers', that their dignity is connected, that their rights are one and the same, and that the helper is working toward achieving collective liberation. *See supra* 4–5. To the oppressors, Plaintiff conveys a message of protest and defiance: that the persecutor's attempts to isolate and oppress certain communities will not stand. *See supra* 4–5. Defendant's disagreement with the message and values expressed does not give him authority to prohibit Plaintiff and those it serves from traveling to engage in lawful conduct in other states.

23

But Defendant's assertion that Alabama "may regulate types of travel that will result in . . . detrimental effects," Def.'s Mot. Summ. J. at 20, ECF No. 62 (citing *Jones v. Helms*, 452 U.S. 412, 422–23 (1981)), does not hold water. And Defendant's reliance on *Helms* is misplaced. The petitioner in *Helms* pleaded guilty to misdemeanor child abandonment but then left the state and was subsequently convicted of a felony under the relevant statute's aggravating circumstance provision. *Helms*, 452 U.S. at 414 & n.2. In upholding the conviction, the court noted that "the parental support obligation is more difficult to enforce if the parent charged with child abandonment leaves the state." *Id.* at 423 (quoting *Garren v. State*, 264 S.E.2d 876, 878 (Ga. 1980)). But here, Plaintiff has not been convicted of any crime and merely seeks to engage in lawful activities in other states. Plaintiff's desired assistance is not a sentence enhancing factor for committing another crime in Alabama.

Defendant's reliance on *Heath v. Jones*, 941 F.2d 1126, 1139, *see* Def.'s Mot. Summ. J. at 20, ECF No. 62, is also inapposite. In *Heath*, a perpetrator kidnapped a woman from her home *in Alabama* and murdered her in Georgia on a contract for hire formed in Alabama. 941 F.2d at 1129. The conduct was unlawful in both jurisdictions, and the Eleventh Circuit held that Alabama thus had jurisdiction to punish the perpetrator. *Id.* at 1128–29, 1139. Unlike the criminal defendant in *Heath*, Plaintiff seeks only to support lawful out-of-state activities.

24

"When a State creates barriers to travel itself, 'the constitutional right of interstate travel is virtually unqualified,' and even the slightest burdens on travel are generally not tolerated." Order Mot. Dismiss at 54, ECF No. 48 (quoting *Haig v. Agee*, 453 U.S. 280, 307 (1981)). Defendant cites *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993), suggesting it should convince this Court that Defendant is not erecting "actual barriers." *See* Def.'s Mot. Summ. J. at 17, ECF No. 62. But *Bray* implicated *intrastate*, not *interstate*, travel. *Id*. at 277 (finding "the only actual barriers to movement . . . would have been in the immediate vicinity of the abortion clinics").

Defendant is not entitled to summary judgment because no matter what Defendant argues, the inescapable fact is that the predominant purpose of his threats of prosecution is to "impede or prevent the exercise of the right to interstate travel" and to "oppress a person because of his exercise of that right." *United States v. Guest*, 383 U.S. 745, 760 (1966); *see also* Second Mot. Summ. J. at 20–21, ECF No. 61. And state action implicates the right to travel when impeding travel is its primary objective. *Att'y Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 903 (1986). Defendant claims his primary purpose is to "respect[] and preserve[] 'prenatal life at all stages of development.'" Def.'s Mot. Summ. J. at 25, ECF No. 62 (citing *Dobbs*, 597 U.S. at 301). If Defendant were threatening prosecution under conspiracy or accessory liability for helping pregnant Alabamians seek *unlawful*

25

*abortion care in Alabama*, that might suffice. But where the relevant abortion care would take place outside Alabama, Defendant's real purpose is to restrain the travel necessary to obtain that lawful care. *See* Order Mot. Dismiss at 53, ECF No. 48.

### C. Yellowhammer Fund Has a Right to Travel.

Defendant's next argument, that Plaintiff has no right to travel because it is an organization, also misses the mark. This Court need not decide whether Plaintiff may bring a right to travel claim on its own behalf. As a helper criminalized for seeking to transport people who do not have the funds to travel to another state to obtain necessary and time-sensitive abortion care, there can be no question that Plaintiff can bring such a claim on behalf of the people it serves. *See Edwards*, 314 U.S. at 171, 173 (reversing the criminal conviction of a California resident who was criminalized for helping his indigent brother-in-law travel into California); *Crandall*, 73. U.S. at 35–39, 43–44 (invalidating a Nevada law that levied a one-dollar tax upon any person leaving the state by railroad, stagecoach, or other vehicle for hire, and overturning the conviction of a stagecoach agent).

Nevertheless, Defendant is wrong to assert that Plaintiff enjoys no right to travel. Significantly, the U.S. Supreme Court has never held that the right to travel belongs only to individuals. Moreover, the right to travel has multiple sources within the constitution. *See supra* 22. And corporations have long been able to vindicate their rights under at least some of the sources from which the right to travel

originates. *See Pembina Consol. Silver Mining & Milling Co. v. Pennsylvania*, 125 U.S. 181, 189 (1888) ("[T]here is no doubt that a private corporation is included" under the designation of "person" in the Equal Protection Clause.); *Grosjean v. Am. Press Co.*, 297 U.S. 233, 244 (1936) ("[A] corporation is a 'person' within the meaning of the equal protection and due process of law clauses" of the Fourteenth Amendment.); *Kassel v. Consol. Freightways Corp. of Del.*, 450 U.S. 662, 669 (1981) (entertaining a trucking company's Commerce Clause challenge to a state law that burdened interstate commerce). In fact, a district court in Idaho recently found that an abortion fund and a helper nonprofit working with indigenous communities could bring a right to travel claim. *Matsumoto v. Labrador*, No. 1:23-cv-00323-DKG, 2023 WL 7386998, at *5 (D. Idaho Nov. 8, 2023).

Finally, Defendant alleges that his threats promote various interests: 1) "respect for and preservation of prenatal life"; 2) "maternal health and safety"; and 3) "the integrity of the medical profession." Def.'s Mot. Summ. J. at 22, ECF No. 62 (citing *Dobbs*, 597 U.S. at 301). But, as this Court has found, Defendant "concedes that his primary purpose . . . is to chill and penalize the plaintiffs' clients' assertion of their right to travel." Order Mot. Dismiss at 53, ECF No. 48. That impermissible purpose forecloses Defendant's arguments regardless of any alleged interests. *See Edwards*, 314 U.S. at 173–74 (acknowledging that the statute was intended to address "grave and perplexing social and economic dislocation," but concluding that

those interests, despite being compelling, did not give California authority to interfere with the right to travel).

## IV.   Defendant Has Failed to Show That He Is Entitled to Judgment as a Matter of Law on Plaintiff's First Amendment Claims.

Defendant failed to show that he is entitled to judgment as a matter of law on Plaintiff's First Amendment claims. As with his other arguments, Defendant's preoccupation with the legal standing of abortion care within Alabama—which is both legally and factually irrelevant here—pervades his flawed legal analysis. The unconstitutionality of Defendant's threats hinges on the legality of abortion in the state where it occurs.

### A. Plaintiff's Desired Speech Receives First Amendment Protection.

Defendant's flawed legal analysis is evident in his argument against Plaintiff's pure speech claim: a mere reiteration of the *Giboney*-reliant argument this Court already rejected. *See* Def.'s Mot. Summ. J. at 25–26, ECF No. 62 ("Defendants have adequately presented these arguments in their motion to dismiss and are aware of the Court's determination that the criminal-conduct exception to the First Amendment, articulated in *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949), does not 'extend to speech in furtherance of lawful conduct.'").

Defendant adds that "the purpose of conspiracy charges is to punish *the act of agreement* itself," Def.'s Mot. Summ. J. at 26, ECF No. 62 (quoting *Beck v. Prupis*,

28

162 F.3d 1090, 1099 n.18 (11th Cir. 1998)), that "abortion is generally illegal under Alabama law, and [that] the Legislature has prohibited Alabama-based conspiracies (agreements) to perform them because such agreements are inherently dangerous," *id.* While abortion *in Alabama* is illegal under Alabama law, and the legislature may prohibit Alabama-based conspiracies to provide or procure abortion care *in Alabama*, it cannot prohibit Alabama-based *agreements* to provide or procure *lawful* abortion care beyond its borders. Indeed, they are agreements, and *not* criminal conspiracies, precisely because there is no underlying crime. *See supra* 16–17. If the constitution permitted such a workaround whenever a State disagreed with the lawful speech of its citizens, the First Amendment's protections would be meaningless. Thus, Defendant's threats criminalize pure speech, and the narrow *Giboney* exception does not apply.

## B. Plaintiff's Desired Conduct Is Expressive and Receives First Amendment Protection.

Plaintiff's desired expressive conduct falls outside of the *Giboney* criminal conduct exception for the same reason its desired pure speech does: it is in furtherance of abortion care that is lawful where it occurs. Therefore, Plaintiff's expressive conduct (1) is not expression integral to criminal conduct, and (2) would not incite criminal activity.

And, contrary to Defendant's unsupported assertion, assisting pregnant Alabamians seeking lawful abortion care is expressive conduct and therefore receives First Amendment protection. *See, e.g.*, *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1240–41 (11th Cir. 2018) [hereinafter "*FLFNB*"] (explaining that providing access to a necessary human right is a form of expressive conduct). Expressive conduct is meant to convey a particularized message and is likely to be understood to do so by those who view it. *Spence v. State of Washington*, 418 U.S. 405, 410–11 (1974). "[I]n determining whether conduct is expressive, [courts] ask whether the reasonable person would interpret it as *some* sort of message, not whether an observer would necessarily infer a *specific* message." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1270 (11th Cir. 2004) (emphasis in original).

In *FLFNB*, the Eleventh Circuit held that "the context in which a symbol is used for purposes of expression is important, for the context may give meaning to the symbol." 901 F.3d at 1241 (quoting *Spence*, 418 U.S. at 410). Thus, it found that, by distributing food in a public park, sharing information and literature, and hosting public events, FLFNB intentionally communicated a message "that all persons are equal, regardless of socio-economic status, and that everyone should have access to food as a human right." *Id.* at 1240–41. Within the context that "the treatment of the City's homeless population is an issue of concern in the community," *id.* at 1242, the

court held that a reasonable observer would understand that "FLFNB's food sharing sought to convey some message," and was therefore expressive conduct protected by the First Amendment, *id*. at 1243.

So too here. Plaintiff intends to convey a message of solidarity, love, and support when it helps pregnant Alabamians. And the context and circumstances surrounding abortion care in Alabama demonstrate that Plaintiff's desired activities constitute expressive conduct. *See, e.g.*, *Spence* 418 U.S. at 410 (concluding that displaying an American flag with peace symbols affixed to it was expressive when it was "roughly simultaneous with and concededly triggered by the Cambodian incursion and the Kent State tragedy, also issues of great public moment").

Defendant also fails to provide support for his assertion that for abortion care funding to receive First Amendment protection, "abortion itself would have to be constitutionally protected expression." Def.'s Mot. Summ. J. at 28, ECF No. 62. To the contrary, courts have repeatedly recognized that donating money to a political, charitable, or social cause qualifies as expressive conduct." *See, e.g.*, *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 191 (2014) ("[T]he right to participate in democracy through political contributions is protected by the First Amendment."); *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1254–55 (11th Cir. 2021) ("[W]e have no problem finding that Amazon engages in expressive conduct when it decides which charities to support through the AmazonSmile

31

program."). The fact that Alabama disagrees with the legality of abortion in other states does not alter this reality.

### C. Plaintiff's Desired Association Receives First Amendment Protection.

Defendant hitches his argument against Plaintiff's association claim to his argument against Plaintiff's speech claim. Def.'s Mot. Summ. J. at 29, ECF No. 62 ("Yellowhammer's freedom-of-association claim falls with its freedom-of-speech claim. . . . [T]he right is all about permitting people to choose *with whom* they exercise First Amendment rights, but it does not entitle anyone to engage in *unprotected* activity with others." (internal citations omitted)) (emphasis in original). But because Plaintiff's desired speech and expressive conduct are protected by the First Amendment, *see supra* 28–31, this argument similarly falls flat.

Defendant is preventing Plaintiff from associating with (1) pregnant Alabamians for the purpose of helping them obtain lawful abortion care, and (2) other abortion funds, advocacy groups, out-of-state clinics, and like-minded supporters for the purpose of furthering their shared message. *See NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1958) ("Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association."). As a result, Defendant's threats of prosecution plainly violate the right to expressive association because "[a]n individual's freedom to speak . . . could not be vigorously protected from interference by the State unless a correlative

freedom to engage in group effort toward those ends were not also guaranteed." *Roberts*, 468 U.S. at 622.

### D. Defendant's Threatened Prosecutions Cannot Survive Strict Scrutiny

Because Plaintiff's speech does not fall into the narrow *Giboney* exception, Defendant's threats are subject to strict scrutiny—a standard they cannot survive. Content-based restrictions "target speech based on its communicative content," *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1125 (11th Cir. 2022), and they can be justified only by "compelling state interests, unrelated to the suppression of ideas," *Roberts*, 468 U.S. at 623. Defendant has already conceded, and this Court has found, that his threats are content-based because they target speech only when it supports lawful out-of-state abortion care. *See* Order Mot. Dismiss at 74–75, ECF No. 48; Def.'s Mot. Dismiss at 26, ECF No. 28.[10]

Defendant fails to even argue that these content-based speech restrictions further a compelling state interest or are narrowly tailored to that end. Nor could he: Defendant has no interest—much less a compelling one—in prohibiting speech that supports lawful abortion care in *other* states. Defendant's threatened prosecutions go far beyond enforcing Alabama's laws or expressing disagreement with Plaintiff's

---

[10] As explained in Plaintiff's Motion for Summary Judgment, Plaintiff also maintains that Defendant's threats target speech based on the viewpoint it advances, but the Court need not reach this issue in order to rule in favor of Plaintiff. *See* Second Mot. Summ. J. at 40 n.14, 42 n.15, ECF No. 61.

activities; they attempt to "shield[]" Alabamians "from information about activities outside [Alabama's] borders, activities that [Alabama's] police powers do not reach." *Bigelow v. Virginia*, 421 U.S. 809, 827–28 (1975). For these reasons, Defendant's motion for summary judgment on Plaintiff's First Amendment claim must be denied.

## CONCLUSION

For the reasons set forth above, this Court should deny Defendant's motion for summary judgment in its entirety.

Dated: July 15, 2024                        Respectfully submitted,

*/s/ Juanluis Rodriguez*
Juanluis Rodriguez*
Lawyering Project
41 Schermerhorn St., No. 1056
Brooklyn, NY 11201
(646) 490-1080
prodriguez@lawyeringproject.org

Jamila Johnson*
Allison Zimmer*
LAWYERING PROJECT
3157 Gentilly Blvd. #2231
New Orleans, LA 70122
(347) 706-4981 (JJ)
(347) 515-6074 (AZ)
jjohnson@lawyeringproject.org
azimmer@lawyeringproject.org

Paige Suelzle*
LAWYERING PROJECT
158 SW 148th Street #1198
Burien, WA 98166

34

(347) 515-6073
psuelzle@lawyeringproject.org

Latasha McCrary, ASB-1935-L75M
SOUTHERN POVERTY LAW CENTER
400 Washington Ave.
Montgomery, AL 36104
(334) 604-5018
latasha.mccrary@splcenter.org

Krista Dolan*
SOUTHERN POVERTY LAW CENTER
PO Box 10788
Tallahassee, FL 32302
(850) 521-3000
Krista.dolan@splcenter.org

*Admitted *pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

I, Juanluis Rodriguez, do hereby Certify that a true and correct copy of the foregoing has been furnished by ECF electronic service, on this 15th day of July 2024, to counsel of record for Defendant Steve Marshall.

Date: July 15, 2024                                      */s/ Juanluis Rodriguez*

                                                         Juanluis Rodriguez

36