# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| YELLOWHAMMER FUND, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 2:23-cv-00450-MHT-KFP |
| STEVE MARSHALL, in his official capacity as Attorney General of the State of Alabama, | ) ) ) | |
| | ) | |
| *Defendant*. | ) | |

| | | |
|---|---|---|
| WEST ALABAMA WOMEN'S CENTER, *et al.*, | ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2:23-cv-00451-MHT-KFP |
| | ) | |
| STEVE MARSHALL, in his official capacity as Attorney General of the State of Alabama, | ) ) ) | |
| | ) | |
| *Defendant*. | ) | |

## REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Attorney General Steve Marshall replies in support of his motion for summary judgment (doc. 62) as follows:

## ARGUMENT

### I.   Plaintiffs cannot assert their clients' right to travel.

In making much of third-party standing being a prudential requirement, Plaintiffs ignore the interaction between third-party standing and the Court's subject-matter jurisdiction to address the right-to-travel claims. Because Yellowhammer lacks the right to travel, there would be no remaining party bringing this claim if Plaintiffs are unable to assert their client's rights. *See Davis v. FEC*, 554 U.S. 724, 734 (1996).

Defendant does not assert that the third-party standing requirements can never be satisfied in an abortion case. He merely asserts that decisions like *Singleton v. Wulff*, 482 U.S. 106 (1976), cannot form the basis of Plaintiffs' third-party standing post-*Dobbs*. That *Dobbs* was brief on this point doesn't change the conclusion. As the Court explained, "Members of this Court have repeatedly lamented that no legal rule or doctrine is safe from ad hoc nullification . . . in a case involving state regulation of abortion." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 286 (2022) (cleaned up). Thorough dissenting opinions from Justices in the *Dobbs* majority detailed the missteps of abortion standing analysis, and *Dobbs* pointed to those dissents as the proper articulation of the law going forward. *See id.* at 286–87 n.61. This Court should not "engage in those abortion distortions in light of a

2

Supreme Court decision to cease doing so." *SisterSong Women of Color Reprod. Just. Collective v. Governor of Ga.*, 40 F.4th 1320, 1328 (11th Cir. 2022).

*Kowalski v. Tesmer* demonstrates why Plaintiffs cannot assert their clients' right to travel. 543 U.S. 125 (2004). Plaintiffs' evidence shows only arms-length relationships with hypothetical clients that involve "an incidental congruity of interests," *Warth v. Seldin*, 422 U.S. 490, 510 (1975), and thus does not establish a close relationship indicating that Plaintiffs would be "as effective a proponent" as the women themselves, *Powers v. Ohio*, 499 U.S. 400, 413 (1991) (citation omitted). *See Kowalski*, 543 U.S. at 131. And women seeking abortions are no more hindered than indigent criminal defendants who lack attorneys, which the Supreme Court found insufficient in *Kowalski*. 543 U.S. at 133. Lastly, Plaintiffs' mission-driven incentives (compared to a pregnant woman's direct, tangible incentives) do not make them the "obvious claimant" or the "least awkward challenger," *contra* doc. 65 at 21, to justify extending the limited category of cases where the Supreme Court has relaxed the *Kowalski* elements.

## II.   Yellowhammer's extraterritoriality claim fails as a matter of law.

Yellowhammer's insistence that Defendant misunderstands his own statements[1] does not resolve whether § 13A-4-4 and the other criminal statutes

---

[1] And of course, Defendant's compliance with State law is not at issue. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

"apply to events occurring and injuries suffered primarily outside the state's borders," doc. 62 at 13–16. Defendant posited that application as a prerequisite for this claim and argued that the undisputed facts showed that § 13A-4-4's application would be wholly within Alabama. *Id.* When Yellowhammer states a conspiracy prosecution in Alabama "is possible only if" the predicate act will be illegal where it occurs, doc. 65 at 26, it fails to acknowledge § 13A-4-4 completely. Yellowhammer's nonresponse offers no authority to shed light on the "novel question" of *whether* extraterritoriality is implicated by the threatened prosecutions of intrastate conduct. Doc. 48 at 90.

While Alabamians need not comply with the Human Life Protection Act "wherever they go," Doc. 65 at 25, everyone in Alabama must comply with its criminal law while they're in Alabama. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003) ("[E]ach State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders[.]"). Yellowhammer has yet to explain how punishing "[a] conspiracy formed in this state," ALA. CODE § 13A-4-4, amounts to an unconstitutional extraterritorial application of State law. Defendant is thus entitled to summary judgment on Yellowhammer's extraterritoriality claim.

### III.     Plaintiffs' right-to-travel claims fail as a matter of law.

In the Supreme Court's most recent right-to-travel case, it did not "need" to "identify the source" of the right to cross State borders "in the text of the Constitution" because the challenged law did not "directly impair" that right. *Saenz v. Roe*, 526 U.S. 489, 500-01 (1999); *see also United States v. Guest*, 383 U.S. 745, 759 (1966) ("no need" to get into "differences" about the source of the right because of "agree[ment] that the right exists"). But as the *West Alabama* Plaintiffs admit, the only "component[]" of the right to travel relevant in this case is the right to travel to another State. Doc. 67 at 30 & n.14. Thus, it is crucial to "identify the source." *Saenz*, 526 U.S. at 501. That "essential" step (*Pollack v. Duff*, 793 F.3d 34, 40 (D.C. Cir. 2015)) is especially important here because Plaintiffs ask for an extension of the right to travel far beyond Supreme Court precedent, and the scope could be "dramatically different" depending on its source, *Lutz v. City of York, Pa.*, 899 F.2d 255, 261 (3d Cir. 1990).

Looking to the sources of the right to travel, none of them support the extension that Plaintiffs need. In any event, ALA. CODE § 13A-4-4's application to Plaintiffs is constitutional because it is backed up by Alabama's strong interests in unborn life and maternal health.

**A. The right to travel does not apply.**

The right to travel from one State to another does not include the conduct Plaintiffs wish to engage in. Considering the sources of the right to travel, that becomes clear.

The right to travel deriving from the federal government's ability to demand performance of duties by its citizens and rights of citizens correlating to those duties does not apply. *Crandall v. Nevada*, 73 U.S. 35, 43–44 (1867). The statute in *Crandall* "directly burden[ed]" the government's "functions" and limited the "rights of the citizens growing out of such functions." *United States v. Wheeler*, 254 U.S. 281, 299 (1920). But limitations on abortions and abortion conspiracies do not directly burden traveling to the seat of government, engaging in business with the government, or administering government functions. *Crandall*, 73 U.S. at 44. Although Plaintiffs read *Crandall* to create "a generalized right of free movement," the Supreme Court has "declined" to do that. *Lutz*, 899 F.2d at 265; *see, e.g.*, doc. 67 at 47 n.21.

If the Court wanted to extend *Crandall*, it had the chance when it faced a law making it a crime to assist indigent people traveling to California. *See Edwards v. California*, 314 U.S. 160, 171 (1941). The Court invoked the Commerce Clause instead. *Id.* at 174. Plaintiffs read *Edwards* to create a categorical rule that prohibitions on so-called traveled assistance violate the right to travel, doc. 65 at 29;

doc. 67 at 44–46, but it held only that California's statute placed an "intended and immediate" "burden on interstate commerce" to benefit local interests, "especially finance[s]," and failed "under any known test of the validity of State interference with interstate commerce." *Edwards*, 314 U.S. at 173–74. But Alabama does not regulate abortion to assist its economy, the State has a strong interest in protecting the unborn and maternal health, and Plaintiffs haven't mentioned "any known test," *id.* at 174. The Supreme Court, in any event, has retreated from the Commerce Clause as the source of the right to travel. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 277 n.7 (1993).

Nor does the Privileges and Immunities Clause help because it is not concerned with how a State regulates its own residents within its borders. *See United Bldg. & Const. Trades Council of Camden Cnty. & Vicinity v. Mayor & Council of City of Camden*, 465 U.S. 208, 217 (1984).[2] The *West Alabama* Plaintiffs argue that the Clause does protect residents. But in *Camden*, the Court found a burden on one of the "privileges and immunities" protected by the Clause, *id.* at 218, 222, yet it maintained that residents who were denied those privileges and immunities had "no claim," even though out-of-state residents did, *id.* at 217–18, 222. That is because

---

[2] *See also id.* at 225 (Scalia, J., dissenting) ("Both the text of the Clause and the historical record confirm that the Framers meant to foreclose any one State from denying citizens of other States the same 'privileges and immunities' accorded its own citizens."); *id.* at 230 ("The Court recognizes, as it must, that the Privileges and Immunities Clause does not afford state residents any protection against their own State's laws.").

the Clause is about protecting non-residents. *See id.* at 217 (explaining why residents and non-residents are treated differently).[3] Even if this Clause were the source and it were implicated here, the question would be whether Alabama has a "substantial reason" for its policy, and protecting its unborn and maternal health are at least a strong as the interests behind "requiring [a] non-resident to pay more . . . for a hunting license . . . or to enroll in the state university." *Saenz*, 526 U.S. at 502.

None of the right to travel's sources provide the right Plaintiffs invoke, so the Constitution does not protect it.

**B. The right-to-travel claims fail regardless.**

Even if the right to travel protects the right to obtain out-of-state abortions, the relevant laws are still constitutional because they are reasonable. *See Doe v. Moore*, 410 F.3d 1337, 1348 (11th Cir. 2005). Alabama does not impose a penalty for leaving the State; it does not prevent women from obtaining out-of-state abortions; nor does it necessarily prevent others from assisting them in doing so. It prevents conspiracies formed in the State to obtain an abortion. Alabama recognizes "the sanctity of unborn life," ALA. CONST. art. I, § 36.06, and strives to protect maternal health, ALA. CODE § 26-23A-2(a)(3), so it does not permit certain coordinated efforts within the State to undermine those interests.

---

[3] There is also support for components of the right to travel coming from the Due Process, Equal Protection, and Privileges or Immunities Clauses, but those provisions are similarly unhelpful to Plaintiffs here, *see* doc. 66 at 15–16.

Plaintiffs again argue that Alabama's interests aren't enough, principally because (1) its purpose is to impede travel and (2) Alabama imposes burdens on travel like those in *Crandall* and *Edwards*. The purpose here is not to interfere with travel. *Cf. Bray*, 506 U.S. at 276 (no impermissible purpose under 42 U.S.C. § 1985(3) because "Petitioners oppose abortion, and it is irrelevant to their opposition whether the abortion is performed after interstate travel"). And, as explained, *Crandall* and *Edwards* do not apply.[4]

## IV.   Plaintiffs' First Amendment claims fail as a matter of law.

Defendant's enforcement of Alabama's conspiracy statutes is compatible with the First Amendment's protection of free speech. It would not greenlight criminalizing "speech about any activity it disfavors," doc. 67 at 26, or bringing criminal charges "whenever a State disagreed with the lawful speech of its citizens," doc. 65 at 37. Here, "a valid criminal statute," *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949), makes it a felony "to intentionally perform an abortion," unless "to prevent a serious health risk to the unborn child's mother." ALA. CODE § 26-23H-4(a). *Giboney* acknowledges that Alabama may enforce its conspiracy statutes "without exception to all persons who combine" in Alabama to cause the

---

[4] Yellowhammer briefly defends its own right to travel, doc. 65 at 26–28, but under the sources protecting the right, it is either unprotected because it is a corporation or it has failed to show why it succeeds under the source of the right. *See* doc. 66 at 17–19.

performance of a specific elective abortion. *Giboney*, 336 U.S. at 497; *see* ALA. CODE § 13A-4-4.

As Defendant explained in response to Plaintiffs' motions, it is lawful in Alabama to share information about or advocate for elective abortions. Doc. 66 at 20. So "the mere discussion of options with a patient" regarding her pregnancy is completely permissible. Doc. 36 at 30 n.22. What is criminalized is a combination, formed with specific intent and advanced by an overt act, to cause the performance of a particular elective abortion. Doc. 62 at 25–27.

The linchpin of Plaintiffs' First Amendment theory is that "the legal standing of abortion care within Alabama" is "both legally and factually irrelevant" to their First Amendment claims. Doc. 65 at 36. Yet, Plaintiffs argue that "the context and circumstances surrounding abortion care *in Alabama* demonstrate that Plaintiff's desired activities" in Alabama "constitute expressive conduct." Doc. 65 at 39 (emphasis added). The "context" that supposedly confers First Amendment protection on Plaintiffs' conduct is the illegality of abortion in Alabama, which Plaintiffs consider otherwise irrelevant. *See e.g.*, Doc. 61-4 ¶ 20 ("Today, sixteen states, including Alabama, ban or restrict abortion care at or before six weeks since a pregnant person's last menstrual period.").[5] This line of reasoning is untenable.

---

[5] *See* Doc. 60-4 at 1–2 (*West Alabama* Plaintiffs' Proposed Order) ("[T]he use of provisions of Alabama's criminal code . . . to prosecute individuals for otherwise lawful speech *or conduct*

The apparent contradiction illustrates that the legality of abortion in Alabama is inescapably relevant, and the conspiracy statutes at issue reasonably prevent Plaintiffs from engaging in a criminal "course of conduct." *Giboney*, 336 U.S. at 502. Not at issue is the "abstract advocacy of illegality." *United States v. Williams*, 553 U.S. 285, 299 (2008). Plaintiffs wish to do much more than speak, be heard, or advocate for a political cause. Doc. 62 at 27–29. Instead, the conspiracies are intended "to bring about a specific result" that is illegal in Alabama. *United States v. Hansen*, 599 U.S. 762, 782 (2023).

The relevant conduct is not akin to speech. Driving "pregnant people to their abortion appointments," Doc. 61-1 ¶ 16, no matter the location, is transportation—not a particularized message. Doc. 62 at 28. Such transportation requires explanatory speech to convey a message, and the factors for assessing expressive conduct, given the undisputed facts, underscore that the First Amendment is not implicated. Doc. 66 at 21–23. Put simply, the First Amendment right to convey "a message of protest and defiance," doc. 65 at 31, encompasses *messages*, not the actual transportation of women to abortion clinics.

Without engaging with Defendant's cited authority, Yellowhammer insists that the First Amendment also protects "abortion care funding." Doc. 65 at 39–40

---

that is intended to or may be used to assist Alabamians seeking to cross state lines to obtain abortion care in a state where abortion is legal violates *both the First Amendment* and the constitutionally protected right to travel." (emphasis added)).

(citing *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185 (2014)). But giving money "directly to [abortion] clinics to help cover the cost of" a specific woman's "abortion," doc. 61-2 ¶ 9, is not a political contribution.

"The circulation of an initiative petition" is political communication. *Meyer v. Grant*, 486 U.S. 414, 421 (1988). The same is true of campaigning for public office. *McCutcheon*, 572 U.S. at 191. Thus, barring payments to petition circulators (or candidates running for office) "restricts political expression." *Meyer*, 486 U.S. at 422. But no provision of the United States Constitution, including the First Amendment, protects obtaining an abortion. *See Dobbs*, 597 U.S. 215 at 235. For this reason, "contribut[ing] to a candidate's campaign," *McCutcheon*, 572 U.S. at 191, and funding the circulation of initiative petitions, Doc. 62 at 28, are constitutionally distinguishable from Plaintiffs' desired funding of specific abortions.

Finally, Yellowhammer's freedom-of-association claim turns on whether the First Amendment protects its underlying course of conduct. Doc. 65 at 40. Because there is no First Amendment right to procure elective abortions, there is no "correlative freedom to engage in group effort toward those ends." *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984).

Defendant is thus entitled to judgment as a matter of law on each of Plaintiffs' First Amendment claims.

## CONCLUSION

Defendant's motion for summary judgment should be granted on all counts.


Respectfully submitted,

Steve Marshall
 *Attorney General*

James W. Davis (ASB-4063-I58J)
 *Deputy Attorney General*

Dylan Mauldin (ASB-3281-Z11M)
 *Assistant Solicitor General*

/s/ Benjamin M. Seiss
Benjamin M. Seiss (ASB-2110-O00W)
Charles A. McKay (ASB-7256-K18K)
 *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Jim.Davis@AlabamaAG.gov
Dylan.Mauldin@AlabamaAG.gov
Ben.Seiss@AlabamaAG.gov
Charles.McKay@AlabamaAG.gov

13

## CERTIFICATE OF SERVICE

I certify that I electronically filed this document using the Court's CM/ECF system on July 22, 2024, which will serve all counsel of record.

/s/ Benjamin M. Seiss_____