# IN THE DISTRICT COURT OF THE UNITED STATES FOR THE MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| YELLOWHAMMER FUND, on behalf of itself and its clients. | ) ) ) | CASE NO. 2:23-cv-00450-MHT |
| Plaintiff, | ) ) | CIVIL ACTION |
| v. | ) ) | |
| ATTORNEY GENERAL OF ALABAMA STEVE MARSHALL, in his official capacity | ) ) ) ) | |
| Defendant. | ) ) | |
| WEST ALABAMA WOMEN'S CENTER, on behalf of themselves and their staff; et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| STEVE MARSHALL, in his official capacity as Alabama Attorney General, | ) ) ) ) | |
| Defendant. | ) | |

# PLAINTIFF YELLOWHAMMER FUND'S
# REPLY IN SUPPORT OF SECOND MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ................................................................................. 1

FACTUAL BACKGROUND AND PROCEDURAL POSTURE ............................ 2

ARGUMENT ...................................................................................... 4

   I.   Plaintiff has standing, and Defendant's arguments to the contrary are meritless. ................................................................................. 4

       A.   Plaintiff can assert the right to travel on its own behalf. ......................... 4

       B.   Plaintiff has established third-party standing to assert the right to travel on behalf of its clients. ..................................................... 6

          1.   Defendant engages in the "distortion" that he accuses Plaintiff of committing. ................................................................. 6

          2.   Plaintiff meets the traditional prudential third-party standing factors. ..8

   II.   Plaintiff is still entitled to relief on the right to travel claims....................... 11

   III.  Plaintiff clearly prevails on all three First Amendment claims. .................... 15

       A.   Plaintiff has proven that its desired activities are expressive conduct and expressive association. ................................................... 16

       B.   Defendant's threats cannot survive strict scrutiny. ............................... 19

   IV.  Plaintiff also established it is entitled to relief on its extraterritoriality claim................................................................................... 19

CONCLUSION ................................................................................... 23

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*,
564 U.S. 721 (2011) ............................................................................ 18

*Bigelow v. Virginia*,
421 U.S. 809 (1975) ............................................................................ 21

*City of Dallas v. Stanglin*,
490 U.S. 19 (1989) ............................................................................. 18

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
6 F.4th 1247 (11th Cir. 2021) ........................................................... 18

*Craig v. Boren*,
429 U.S. 190 (1976) ............................................................................. 6

*Crandall v. Nevada*,
73 U.S. 35 (1867) ............................................................................... 13

*Cruthers v. State*,
67 N.E. 930 (Ind. 1903) ..................................................................... 22

*Dobbs v. Jackson Women's Health Org.*,
597 U.S. 215 (2022) .................................................................. 6, 7, 13

*Edelman v. Jordan*,
415 U.S. 651 (1974) ........................................................................... 12

*Edwards v. California*,
314 U.S. 160 (1941) ..................................................................... 13, 14

*Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*,
901 F.3d 1235 (11th Cir. 2019) .............................................. 16, 17, 18

*Giboney v. Empire Storage & Ice Co.*,
336 U.S. 490 (1949) ........................................................................... 15

*Haig v. Agee*,
453 U.S. 280 (1981) ........................................................................... 14

*Heath v. Alabama*,
474 U.S. 82 (1985) ............................................................................. 22

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010) ................................................................................ 17

*June Medical LLC v. Russo*,
   140 S. Ct. 2104 ............................................................................... 7, 8

*Kowalski v. Tesmer*,
   543 U.S. 125 (2004) ...................................................................... 9, 10

*N.Y. Life Ins. Co. v. Head*,
   234 U.S. 149 (1914) .......................................................................... 21

*Nielsen v. Oregon*,
   212 U.S. 315 (1909) .......................................................................... 21

*O'Laughlin v. Palm Beach County*,
   30 F.4th 1045 (11th Cir. 2022) ......................................................... 18

*Pollack v. Duff*,
   793 F.3d 34 (D.C. Cir. 2015) ............................................................ 13

*Powers v. Ohio*,
   499 U.S. 400 (1991) ...................................................................... 7, 10

*Roberts v. U.S. Jaycees*,
   468 U.S. 609 (1984) .......................................................................... 19

*Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*,
   547 U.S. 47 (2006) ............................................................................ 17

*Rush v. Savchuk*,
   444 U.S. 320 (1980) ............................................................................ 5

*Shalala v. Ill. Council on Long Term Care, Inc.*,
   529 U.S. 1 (2000) ................................................................................ 7

*Shapiro v. Thompson*,
   394 U.S. 618 (1969) .......................................................................... 12

*Solymar Invs., Ltd. v. Banco Santander S.A.*,
   672 F.3d 981 (11th Cir. 2012) ............................................................. 7

*Spence v. Washington*,
   418 U.S. 405 (1974) .......................................................................... 16

*State Farm Mut. Auto Ins. Co. v. Campbell*,
   538 U.S. 408 (2003) .......................................................................... 21

*Texas v. Johnson*,
   491 U.S. 397 (1989) ..................................................................... 16, 17

*United States v. Fleury*,
  20 F.4th 1353 (11th Cir. 2021) ............................................................... 15

*United States v. Guest*,
  383 U.S. 745 (1966) ..................................................................... 12, 13

*United States v. Williams*,
  553 U.S. 285 (2008) ........................................................................ 15

*Warth v. Seldin*,
  422 U.S. 490 (1975) ..................................................................... 6, 10

*Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
  485 F. Supp. 3d 1 (D.D.C. 2020) ........................................................ 10

*Whole Woman's Health v. Hellerstedt*,
  579 U.S. 582 (2016) ......................................................................... 7

*Zobel v. Williams*,
  457 U.S. 55 (1982) ......................................................................... 12

STATUTES

Ala. Code § 13A-4-3 ............................................................................ 20

OTHER AUTHORITIES

Seth F. Kreimer, *Lines in the Sand: The Importance of Borders in American
  Federalism*, 150 U. Pa. L. Rev. 973 (2002) ........................................ 12

Eugene Volokh, *The "Speech Integral to Criminal Conduct" Exception*, 101
  Cornell L.Rev. 981 (2016) ................................................................ 15

iv

## INTRODUCTION

This is a case about helpers in Alabama who want to assist pregnant people. Yellowhammer Fund, a helper that ran an Alabama abortion fund for five years, wishes to support pregnant people, even and especially when they exercise their bodily autonomy to access healthcare that is legal in other states but prohibited by Alabama. That support takes several forms—but in all forms, it is expressive and sends the message that the helper's liberation is bound up with the pregnant person's.

This help includes funding out-of-state abortions; helping to arrange childcare and time off work; providing information about where to obtain care; discussing methods of travel; selecting and paying for hotels, plane tickets, and other transportation; and sharing emotional support and a wealth of experience with a pregnant person who may be leaving the state for the first time. What is always true is that Yellowhammer Fund seeks to ensure that pregnant people have everything they need to make their own decisions and not feel alone. In giving this help, Yellowhammer Fund expresses a clear message in the face of state actions that isolate and oppress.

Plaintiff asks this Court to rule in its favor to resume this critical work. This Court has heard Yellowhammer Fund's arguments before. It has agreed with many of them in a past order, and Defendant provides no reason why the Court's decision

should change on those claims. With respect to the arguments that this Court has not yet addressed, Plaintiff has supported its claims sufficiently with both facts and law, entitling it to complete relief. In reply, Yellowhammer Fund urges this Court to credit the law and history on its side, reject the novel and unsupported arguments made by Defendant, and fully grant Plaintiff's motion for summary judgment.

## FACTUAL BACKGROUND AND PROCEDURAL POSTURE

After briefing on a motion to dismiss and cross-motions for summary judgment, the parties agree that there is no genuine dispute as to any material fact in this case.[1] Def.'s Mot. Summ. J. at 5–9, ECF No. 62; Def's Opp. Pls.' Mot. Summ. J. at 2, ECF No. 66. While Defendant may argue about whether all facts submitted are material, he submits no evidence to contradict any of those facts.

---

[1] Specifically, the parties agree the Attorney General cannot prosecute pregnant people for traveling to other states and obtaining lawful abortion care. *See* Def.'s Mot. Summ. J. at 14, 20–21, ECF No. 62; Second Mot. Summ. J. at 1, ECF No. 61. The Attorney General concedes he cannot prosecute a medical provider for performing an abortion on a pregnant person from Alabama. *See* Def.'s Mot. Summ. J. at 14, 20–21, ECF No. 62. The Attorney General seeks to use the Alabama Abortion Ban to establish the crime he says helpers would be committing if they agreed to provide help or otherwise aided a pregnant person travel out of state and/or obtain an abortion. *See, e.g.*, *id.*; Second Mot. Summ. J. at 48–50, ECF No. 61. All parties agree that Plaintiff receives approximately five to ten calls each week from people who need abortion funding, Def.'s Mot. Summ. J. at 8, ECF No. 62, and that funding abortion in other states is central to Plaintiff's mission and core beliefs, Def.'s Opp. Pls.' Mot. Summ. J. at 2, ECF No. 66; Def.'s Mot. Summ. J. at 6–7, ECF No. 62. If not for Attorney General Marshall's threats, Plaintiff would be acting on these beliefs. Def.'s Mot. Summ. J. at 7, ECF No. 62. The parties also agree that Yellowhammer Fund has shown it was developing systems to help respond to an increase in the number of people who would need out-of-state abortion care before Attorney General Marshall's threats. Def.'s Mot. Summ. J. at 7, ECF No. 62.

In its Motion to Dismiss Order, this Court already decided the applicable law for many of the issues now before it. The Court decided that Yellowhammer Fund has standing for this suit without deciding whether Yellowhammer Fund's standing on the right to travel claim was *both* first- and third-party standing. For some of the claims, like the right to travel claim and the First Amendment speech claim, this Court explicitly stated that if Plaintiff presented facts that supported the allegations in the Complaint, Yellowhammer Fund would win as a matter of law. Order Mot. Dismiss at 19–20, ECF No. 48 ("The court concludes that the plaintiffs all have standing and that the plaintiffs' factual contentions, if proven, amount to a violation of their clients' right to travel."); Order Mot. Dismiss at 63–64, ECF No. 48 ("The court concludes . . . that the factual contentions underlying the as-applied challenge, if proven, amount to a violation of the freedom of speech."). Yellowhammer Fund submitted four declarations that, taken together, support each fact in its complaint. *See* Declaration of Jenice Fountain ISO Mot. Summ. J. ("Fountain Decl."); Declaration of Kelsea McLain ISO Mot. Summ. J. ("McLain Decl."); Declaration of Kari White ISO Mot. Summ. J. ("White Decl."); Declaration of Paige Suelzle ISO Mot. Summ. J. ("Suelzle Decl."). Defendant has submitted no evidence. Therefore, Plaintiffs should prevail on these two claims.

The Motion to Dismiss did not present arguments regarding two other claims. Specifically, Attorney General Marshall did not substantively engage with Plaintiff's

3

claims regarding expressive conduct or expressive association in his Motion to Dismiss, so this Court has not yet ruled on the appropriate law for those two claims. Order Mot. Dismiss at 62 n.15, ECF No. 48.

In its summary judgment briefing, including herein, Yellowhammer Fund has sought to elaborate on its extraterritoriality claim for the Court. This claim is necessary only for Yellowhammer Fund to obtain full relief if the Court does not rule in Yellowhammer Fund's favor on the claims discussed above. However, Yellowhammer Fund has supported its claim with law and facts, entitling it to prevail on this claim as well. *See infra* at 19–23.

In short, by applying the well-reasoned law in this Court's Order on Defendant's Motion to Dismiss, as well as the additional facts and argument Plaintiff presents in its summary judgment briefing, Plaintiff has demonstrated that it is entitled to complete relief, and this Court should grant its motion for summary judgment in its entirety.

## ARGUMENT

### I.   Plaintiff has standing, and Defendant's arguments to the contrary are meritless.

#### A. Plaintiff can assert the right to travel on its own behalf.

This Court need not decide whether Plaintiff itself has a right to travel because its standing to assert the right to travel on behalf of its clients is enough to obtain the

4

relief it seeks on this claim. But Plaintiff maintains that it can also assert the right on its own behalf. The U.S. Supreme Court has never expressly limited the right to travel to individuals. Corporations have other constitutional rights, such as freedom of speech, that they cannot physically carry out themselves. Defendant says it is "impossible for a corporation to move between States," Def.'s Opp. Pls.' Mot. Summ. J. at 17, ECF No. 66, but this Court has recognized that the right to travel encompasses more than just the right to move from state to state, Order Mot. Dismiss at 42, ECF No. 48 ("The right to travel has deep historical roots, and it has long encompassed more than the mere movement of persons across borders."); *see also id.* at 50 ("The Attorney General's characterization of the right to travel as merely a right to move physically between the States contravenes history, precedent, and common sense. Travel is valuable precisely because it allows us to pursue opportunities available elsewhere."). Defendant fails to seriously engage with the several "good reason[s]" Plaintiff offered in its Motion for Summary Judgment for why it can bring a right to travel claim.[2] Second Mot. Summ. J. at 29, ECF No. 48.

---

[2] *Rush v. Savchuk* does not involve the right to travel or comment on whether a corporation possesses such a right. *See Rush v. Savchuk*, 444 U.S. 320, 328–29 (1980) (holding that a defendant did not have minimum contacts with the state in which he was sued because he had moved to the state after the car accident at issue, which took place in a different state, and it was not enough that his insurance company did business in the forum state).

### B. Plaintiff has established third-party standing to assert the right to travel on behalf of its clients.

Regardless of whether Plaintiff has its own right to travel, Plaintiff has clearly established it has third-party standing to assert the rights of its clients, who unquestionably have a right to travel, because a party has "standing to litigate the rights of third parties when enforcement of the challenged restriction against the litigant would result indirectly in the violation of third parties' rights." *Warth v. Seldin*, 422 U.S. 490, 510 (1975). Defendant exhaustively repeats his arguments that *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022), overturned decades of third-party standing precedent and that *Craig v. Boren*, 429 U.S. 190 (1976), does not apply. Def.'s Opp. Pls.' Mot. Summ. J. at 4–11, ECF No. 66. Many of these arguments have been addressed by Plaintiff (and dispensed with by this Court), but Plaintiff highlights the following here.

### 1. Defendant engages in the "distortion" that he accuses Plaintiff of committing.

Plaintiff does not ask this Court to apply an "abortion-distorted" third-party standing doctrine. Def.'s Opp. Pls.' Mot. Summ. J. at 7, ECF No. 66. Plaintiff merely asks for a straightforward application of third-party principles. It is *Defendant* who is advocating for such a distortion: he wants third-party standing to never apply when a case involves the subject matter of abortion. In reality, *Dobbs* did not overrule decades of third-party standing precedent. Even if *Dobbs* had such an effect, Plaintiff

nevertheless has established both that it has a close relationship with its clients, and that there is a hindrance to its clients asserting their own rights—the necessary showing under the third-party standing doctrine. *See Powers v. Ohio*, 499 U.S. 400, 411 (1991).

Defendant makes a lot of noise about how, in a single footnote, the majority in *Dobbs* cited dissenting opinions about third-party standing, apparently taking this to mean that those dissenting opinions are now the law of the land. *See Dobbs*, 597 U.S. 215, 287 n.61 (citing *June Medical LLC v. Russo*, 140 S. Ct. 2104, 2167–68 (Alito, J., dissenting); *id.*, 140 S. Ct. at 2173–74 (Gorsuch, J., dissenting); *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 632 n.1 (2016) (Thomas, J., dissenting)). But Defendant's assertion that a passing citation to these dissents, without further explanation, would result in the Court overturning decades of third-party standing precedent, is highly questionable. *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000) ("This Court does not normally overturn, or so dramatically limit, earlier authority *sub silentio*."); *Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 990 n.9 (11th Cir. 2012) ("[W]e will not assume a case has been overturned in the absence of such explicit language."). "[T]he Supreme

Court, in eight words, did not upend the law of standing." Order Mot. Dismiss at 39, ECF No. 48.[3]

### 2. Plaintiff meets the traditional prudential third-party standing factors.

Even if *Dobbs* somehow impacted third-party standing precedent in the way Defendant insists, it would not change the outcome here. Plaintiff still succeeds because it has demonstrated that it has a close relationship with its clients, and there are hindrances to its clients' ability to assert their own rights. Plaintiff and Defendant agree on these longstanding prudential factors. Plaintiff also maintains, and the Court has agreed, that it has established third-party standing via the *Craig* rationale and that these other prudential factors are "alternative ground[s]" to find that Plaintiff has third-party standing here. Order Mot. Dismiss at 30 n.5, ECF No. 48. Plaintiff refers to its previous briefing on *Craig* in its Motion for Summary Judgment and its response to Defendant's Motion for Summary Judgment. Second Mot. Summ. J. at 24–26, ECF No. 61; Pl.'s Opp. Def.'s Mot. Summ. J. at 12–13, ECF No. 65.

---

[3] The dissents that Defendant relies on are largely preoccupied with the potential for a conflict of interest between health care providers and their patients. *See, e.g.*, *June Medical*, 140 S. Ct. at 2167) (Alito, J., dissenting). It is undisputed that no such conflict exists here. Plaintiff's mission is to support abortion care and its clients' interest is in obtaining such care. "The plaintiffs' and their clients' interests are essentially identical, as the plaintiffs wish to provide services that their clients seek." Order Mot. Dismiss at 32, ECF No. 48. And Defendant has alleged no facts to the contrary. *See supra* at 2 & n.1. There is no conflict of interest here; in fact, there is a perfect congruity of interests.

Plaintiff's relationships with its clients also satisfy the close-relationship prong because they are not one-off or hypothetical, and they can be easily distinguished from the relationships at issue in *Kowalski v. Tesmer*, 543 U.S. 125 (2004). Plaintiff is a member of the community it supports. *See* McLain Decl. ¶¶ 3, 6, 7, 11 (referencing "our community" and the roles Plaintiff plays in the community). It has longstanding relationships with those it serves. *See* Fountain Decl. ¶ 7 (discussing Yellowhammer Fund's founding in 2017). It supports its clients before, during, and after pregnancy. *Id.* at ¶ 8 ("Today, we continue to work to meet the needs of our community in Alabama by providing education, mutual aid, policy advocacy, and other support to parenting and pregnant people and their families."); *id.* at ¶ 9 (discussing Yellowhammer Fund's relationship with clients who are not pregnant, which includes providing free emergency contraception, safer-sex kits, pregnancy tests, and comprehensive sex education materials); McLain Decl. ¶ 29 ("We let [our callers] know they can reach out to Yellowhammer Fund for other support in their pregnancy and after giving birth."). If Plaintiff were able to resume its abortion fund services, it would be supporting abortion seekers right away. *See* McLain Decl. ¶ 33 (describing what Yellowhammer Fund would be doing if not for Defendant's threats). There are people it would be helping access abortion out of state right now but for Defendant's threats. *Id.* at ¶ 26 (describing the calls for help that Plaintiff continues to receive requesting abortion funding). This is no "incidental

9

congruity of interest." *Warth*, 422 U.S. at 510. Defendant has not disputed these facts with supporting evidence.

By contrast, the clients in *Kowalski* were hypothetical because the attorneys seeking to represent their interests wanted the *ability* to represent indigent defendants. *See Kowalski*, 543 U.S. at 130–31. It was not clear that there would be people immediately accessing those attorneys' services if they were able to provide them, and there was no guarantee those particular attorneys would be appointed as counsel. In other words, the *Kowalski* attorneys might not have had clients if they prevailed, while Plaintiff will immediately resume abortion fund operations if it prevails here. Lastly, the class of potential third parties in *Kowalski* "could have been literally any person," whereas here, Plaintiff seeks to assist a limited universe of pregnant Alabamians seeking support for abortion care out of state. *See Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp. 3d 1, 36 (D.D.C. 2020) (finding that LGTBQ+ patients seeking health care were not unascertained clients for the purposes of third-party standing in part because such clients were "a far more limited universe of third parties" than the potential clients in *Kowalski*). Plaintiff's clients are neither hypothetical nor unascertained.

Defendant does not seriously contend with the hindrance prong, which requires there only be "some" hindrance to the third party's ability to protect their own interests. *Powers*, 499 U.S. at 411. He spends most of his ink mischaracterizing

Plaintiff's record evidence and argues, without factual support, that there is no basis for the notion that Plaintiff's clients may fear criminalization themselves. Def.'s Opp. Pls.' Mot. Summ. J. at 9, ECF No. 66. Identifying themselves in a lawsuit could lead to Plaintiff's clients being subjected to additional surveillance, *see* McClain Decl. ¶ 24, which in turn could logically lead to an increased risk of criminalization. Plaintiff also has provided evidence that its "callers were fearful of retaliation for accessing abortion care and they came to us for trustworthy and private support." Fountain Decl. ¶ 20. These facts help demonstrate just one among many of the hindrances Plaintiff's clients face. In any event, this Court already provided a detailed analysis of the hindrance prong, Order Mot. Dismiss at 35–38, ECF No. 48, and Plaintiff's undisputed evidence reinforces those findings. The Court should again reject Defendant's third-party standing arguments.

## II.    Plaintiff is still entitled to relief on the right to travel claims.

This Court's right to travel analysis should stand. Nothing raised by Defendant changes the clear and persuasive explanation of the right to travel in this Court's Motion to Dismiss Order. Order Mot. Dismiss. at 40–59, ECF No. 48. Defendant's inability to conceive of a claim that originates from multiple places within the Constitution, Def.'s Opp. Pls.' Mot. Summ. J. at 14–15, ECF No. 66, does not disrupt that. He completely loses the point that, regardless of the source of the right to travel, the Constitution does not tolerate laws or action that "impede or prevent exercise of

the right of interstate travel." *See United States v. Guest*, 383 U.S. 745, 760 (1966). As this Court acknowledged, that right would be "hollow" if a traveler could not do lawful acts in the state where the traveler goes. Order Mot. Dismiss at 50, ECF 48 (quoting Seth F. Kreimer, *Lines in the Sand: The Importance of Borders in American Federalism*, 150 U. Pa. L. Rev. 973, 1007 (2002)).

Defendant implies that because the right originates from multiple sources, Plaintiff must meet a separate test for each and every individual constitutional source to prevail on its right to travel claim and that Yellowhammer Fund must locate claims in particular constitutional provisions. Def.'s Opp. Pls.' Mot. Summ. J. at 15–16, ECF No. 66. The Supreme Court has clarified that there is no such need. *Zobel v. Williams*, 457 U.S. 55, 66 (1982) ("[T]he frequent attempts to assign the right to travel some textual source in the Constitution . . . have proved both inconclusive and unnecessary.") (Brennan, J., concurring); *Shapiro v. Thompson*, 394 U.S. 618, 630 (1969), *overruled on other grounds by Edelman v. Jordan*, 415 U.S. 651 (1974) ("We have no occasion to ascribe the source of this right to travel interstate to a particular constitutional provision."); *Guest*, 383 U.S. at 759 ("Although there have been recurring differences in emphasis within the Court as to the source of the constitutional right of interstate travel, there is no need here to canvass those differences further."); Order Mot. Dismiss at 42–43, ECF No. 48; *id.* at 42 n.10.

Inexplicably, and contrary to all cases cited above, Defendant asserts that a single D.C. Circuit case—*Pollack v. Duff*, 793 F.3d 34, 39–40 (D.C. Cir. 2015)—requires this Court to identify the basis of the right to travel and perform an analysis under each potential source. *See* Def.'s Opp. Pls.' Mot. Summ. J. at 14, ECF No. 66. Assuming arguendo that *Pollack* requires anything close to what Defendant suggests, it is an outlier and contrary to how the U.S. Supreme Court has treated the right to travel. It is the right itself—as it has developed under all its sources—that forbids Defendant's conduct, not any individual source of the right. While the court in *Pollack* did not have comparable case law to interpret the right to travel that was asserted in that case, 793 F.3d at 39–40, here this Court can look to *Edwards v. California*, 314 U.S. 160 (1941), *Crandall v. Nevada*, 73 U.S. 35 (1867), and *Guest,* 383 U.S. 745, to find that it is not "especially difficult" to rule in Yellowhammer Fund's favor. *See Dobbs*, 597 U.S. at 346 (Kavanaugh, J., concurring). There is simply nothing "novel" about Yellowhammer Fund's argument.[4]

Lastly, the right to travel is nearly absolute, and it does not bend to regulation simply because the government can articulate a reason why it seeks to prevent travel.

---

[4] Rather, it is Defendant's actions that are novel. *See* Order Mot. Dismiss at 48, n.12, ECF No. 48 ("[T]his merely reflects the unprecedented nature of the Attorney General's actions in seeking to prevent residents of his own State from engaging in lawful conduct in other states.").

*See Haig v. Agee*, 453 U.S. 280, 307 (1981) ("[T]he constitutional right of interstate travel is virtually unqualified"); *see also Edwards*, 314 U.S. at 173 (acknowledging that the statute was intended to address "grave and perplexing social and economic dislocation," but concluding that those interests, despite being compelling, did not give California authority to impede free ingress and egress). None of Defendant's cited cases support his threats, and each has been distinguished in the Motion to Dismiss order and briefing. *See* Order Mot. Dismiss at 58, ECF No. 48 ("These cases are quite unlike the one before the court. They generally involved travel regulations for individuals who had previously committed a crime or regulations meant to facilitate travel that were deemed to result in minor delays or inconveniences."); *see also* Pl.'s Opp. Def.'s Mot. Dismiss at 50 n.22, 51–52, ECF No. 33.

Defendant's assertion that he can enact "reasonable regulations" is unfounded. As explained before, the test is not one of reasonableness. Pl.'s Opp. Def.'s Mot. Dismiss at 53–54, ECF No. 33. Even if it were, Defendant's admission that he seeks to prevent travel to obtain legal abortion is patently unreasonable, and this constitutionally impermissible goal ends the inquiry and entitles Plaintiff to judgment as a matter of law on the right to travel claim. *See* Suelzle Decl. ¶ 6 (transcript of Attorney General Marshall's threats).

14

## III.    Plaintiff clearly prevails on all three First Amendment claims.

Defendant continues to misconstrue *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949). This Court has already determined that *Giboney* does not apply to Plaintiff's speech and should now do so again. *Giboney* permits the criminalization of speech that is "an integral part of conduct in violation of a valid criminal statute." *Giboney*, 336 U.S. at 498. But this narrow exception only applies if the criminalized speech is integral to an *independent* crime, separate from the challenged statute. *See* Order Mot. Dismiss at 79, ECF No. 48; Eugene Volokh, *The "Speech Integral to Criminal Conduct" Exception*, 101 Cornell L. Rev. 981, 987 (2016) ("[T]he *Giboney* doctrine can't justify treating speech as 'integral to illegal conduct' simply because the speech is illegal under the law that is being challenged."). This distinction is self-evident, because "the whole point of modern First Amendment doctrine is to protect speech against many laws that make such speech illegal." Volokh, 101 Cornell L. Rev. at 987.

Defendant's failure to recognize this fact is fatal to his arguments and shows why his reliance on cases applying the *Giboney* exception is misplaced. *See, e.g.*, *United States v. Fleury*, 20 F.4th 1353, 1364–65 (11th Cir. 2021) (upholding conviction where text messages were true threats under valid criminal statute); *United States v. Williams*, 553 U.S. 285, 297–99 (2008) (upholding conviction under statute prohibiting offers to provide or requests to obtain child pornography).

15

Making referrals and providing support to pregnant Alabamians seeking lawful out-of-state abortion care does not violate Alabama's Abortion Ban. Defendant's rote recitation of the elements of conspiracy does not change this reality, which is "at the heart of this case," Order Mot. Dismiss at 76, ECF No. 48, and the very reason Plaintiff is entitled to relief.[5]

### A. Plaintiff has proven that its desired activities are expressive conduct and expressive association.

Defendant conveniently ignores "the factual context and environment" surrounding abortion access in Alabama when he argues that Plaintiff's desired activities are not expressive. *See Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1245 (11th Cir. 2019) (hereinafter "*FLFNB*") (quoting *Spence v. Washington*, 418 U.S. 405, 409–10 (1974)). Yet context is essential to determining whether conduct is expressive. *See* Second Mot. Summ. J. at 37–39; *FLFNB*, 901 F.3d at 1240; *Texas v. Johnson*, 491 U.S. 397, 404 (1989).[6] Plaintiff

---

[5] For the first time, Defendant now admits that providing information about out-of-state abortion care is "not criminalized under the relevant statutes." Def.'s Opp. Pls.' Mot. Summ. J. at 20, ECF No. 66. Indeed, such information is not unlawful precisely *because* Alabama's Abortion Ban only prohibits abortion within Alabama's borders. *See infra* at 20–21. For the same reason, engaging in other speech related to lawful out-of-state abortions is not—and cannot be—a crime.

[6] It is irrelevant that Plaintiff's activities do not take place in a "public forum" or match the circumstances of *FLFNB* in all respects. *See* Def.'s Opp. Pls.' Mot. Summ. J. at 22, ECF No. 66. Although that was one relevant consideration in *FLFNB*, no court has ever suggested it is a requirement. And, similar to FLFNB's public activities, Plaintiff provides information about its mission and activities to its community by advertising on social media and its website. *See, e.g.*, McLain Decl. ¶ 33.

seeks to fund and support lawful out-of-state abortion care at a time when abortion is increasingly inaccessible. *See* White Decl. ¶¶ 16–21, 25–26. As illustrated once again by this lawsuit, Alabama insists on imposing arbitrary barriers to abortion access that deprive its citizens of their constitutional rights. These barriers are the subject of significant public debate and controversy, which clearly provides background for Plaintiff's activities. *FLFNB*, 901 F.3d at 1242–43 ("We think that the local discussion regarding the City's treatment of the homeless is significant because it provides background for FLFNB's events, particularly in light of the undisputed fact that many of the participants are homeless."). In light of these circumstances—largely attributable to Defendant's own conduct—it is "overwhelmingly apparent" that helping Alabamians access lawful abortion care in the face of substantial burdens communicates a message of defiance against the state and support for those harmed by its actions. *See Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 66 (2006) (citing *Johnson*, 491 U.S. at 406).[7]

---

[7] Defendant argues that even if Plaintiff's conduct is expressive, it can be lawfully penalized under the *O'Brien* test. *See* Def.'s Opp. Pls.' Mot. Summ. J. at 22–23, ECF 66. This is incorrect for two reasons. First, *O'Brien* intermediate scrutiny only applies when a state regulates expressive conduct for reasons *unrelated* to its content. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 28 (2010). Here, Defendant admits that his threats are content-based. *See* Def.'s Mot. Dismiss at 26, ECF No. 28; *see also* Order Mot. Dismiss at 74–75, ECF No. 48. Second, even if *O'Brien* intermediate scrutiny applies, Defendant has no legitimate interest—much less a substantial one— in regulating expressive conduct about abortions that occur in *other* states.

Defendant is equally wrong that Plaintiff's financial contributions are not expressive simply because they are not political donations. While political donations that further political speech are protected by the First Amendment, *see, e.g.*, *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 741 (2011), the First Amendment also protects other types of expressive donations. *See Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1254 (11th Cir. 2021) (holding that Amazon.com's decision to support some nonprofits over others was expressive because it conveyed a message about the company's values). So too here: Plaintiff's funding of lawful out-of-state abortion care is expressive because it communicates its beliefs about abortion accessibility and reproductive healthcare. *See* Fountain Decl. ¶¶ 8–16, 19–20; *FLFNB*, 901 F.3d at 1243.

For the same reason, Defendant's threats violate Plaintiff's right to expressive association. Unlike the coincidental associations in the cases cited by Defendant, Plaintiff wishes to associate with others to express its values and advance a shared mission. *See City of Dallas v. Stanglin*, 490 U.S. 19, 24–25 (1989) (holding that patrons of a dance club are not engaged in expressive association because they "are strangers to one another" and "[t]here is no suggestion that [they] 'take positions on public questions'"); *O'Laughlin v. Palm Beach County*, 30 F.4th 1045, 1054 (11th Cir. 2022) (rejecting free association claim where there was no allegation that the plaintiffs were punished for "hanging around with people who share their beliefs").

18

Defendant seeks to turn these associations into criminal conspiracies, preventing Yellowhammer Fund from working with others outside and within Alabama to facilitate information, logistics, and financial and practical support for pregnant Alabamians to access lawful abortion care. His threats violate the First Amendment because they prevent Plaintiff from "engag[ing] in group effort" to achieve its goals. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984).

### B. Defendant's threats cannot survive strict scrutiny.

Defendant makes no argument that his threats survive strict scrutiny—nor could he. Defendant's threats discriminate based on content and viewpoint, and there is no legitimate state interest—let alone a compelling one—that would allow him to prohibit speech and expression simply because it supports lawful abortion care in *other* states. For these reasons, Plaintiff is entitled to judgment on its free speech, expressive conduct, and expressive association claims as a matter of law.

### IV.    Plaintiff also established it is entitled to relief on its extraterritoriality claim.

While this Court need not reach Plaintiff's extraterritoriality claim if it resolves the other claims in Plaintiff's favor, Plaintiff nevertheless is entitled to summary judgment on this claim as well. The question before this Court is whether Defendant, by exporting Alabama's Abortion Ban to establish a basis for conspiracy or accessory liability, violates the Constitution. The answer is, resoundingly, yes. By

insisting that Plaintiff address every instance where the "extraterritorial application of state law [is] implicated when a state seeks to use its criminal law to deter or prevent specific out-of-state conduct," Def.'s Opp. Pls.' Mot. Summ. J. at 12, ECF No. 66 (citing Order Mot. Dismiss. at 89–90, ECF No. 48), Defendant gets lost in the abstract. This Court need not consider such a sweeping question, and Plaintiff need not answer it.

Defendant's rationale for a conspiracy prosecution justified by *Giboney* illustrates his folly. According to Defendant, "[a]n agreement between specific people in Alabama formed with the specific intent to cause the performance of *a specific elective abortion*, followed by an overt act by one of those persons to effect an objective of the agreement, constitutes a single and integrated course of conduct in violation of" Alabama's Abortion Ban. Def.'s Opp. Pls.' Mot. Summ. J. at 19, ECF No. 66 (internal citations omitted) (emphasis added). But Alabama's conspiracy statute applies only if someone acts "with the intent that conduct *constituting an offense* be performed." Ala. Code § 13A-4-3(a) (emphasis added); *see also* Jury Instructions, Ala. Code § 13A-4-3 ("To convict, the State must prove beyond a reasonable doubt each of the following elements: (1) the defendant agreed with [Insert name of co-conspirator] to engage or cause to be performed *conduct constituting the offense of [Insert name of crime]* . . .") (emphasis added). And, as

Defendant concedes, abortion care provided outside Alabama's borders does not violate Alabama's Abortion Ban. Def.'s Mot. Summ. J. at 14, 20–21, ECF No. 62.

Thus, Defendant's threatened prosecutions could proceed only if out-of-state abortion care were deemed to violate Alabama's Abortion Ban. But Alabama's Abortion Ban prohibits "abortion care in Alabama," not "abortion care for Alabamians, regardless of where they obtain it." To prosecute Plaintiff—or any other helper—the way he has threatened, Defendant would have to substitute Alabama's Abortion Ban for the laws of the state where the abortion care occurs: an extraterritorial application of Alabama law that cannot pass constitutional muster. *See State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003) ("A State cannot punish a defendant for conduct that may have been lawful where it occurred."); *Bigelow v. Virginia*, 421 U.S. 809, 824 (1975) ("A State does not acquire power or supervision over the internal affairs of another State merely because the welfare and health of its own citizens may be affected when they travel to that State.") *N.Y. Life Ins. Co. v. Head*, 234 U.S. 149, 161 (1914) ("[I]t would be impossible to permit the statutes of [a State] to operate beyond the jurisdiction of that State . . . without throwing down the constitutional barriers by which all the States are restricted . . . and upon the preservation of which the Government under the Constitution depends."); *Nielsen v. Oregon*, 212 U.S. 315, 321 (1909) ("[F]or an act done within the territorial limits of [one State], under authority and license form

21

that state, one cannot be prosecuted and punished by [another State]."[8]; *Cruthers v. State*, 67 N.E. 930, 932 (Ind. 1903) (Indiana's prohibition on bunko steering "has no extraterritorial force or operation, and the offense thereby defined cannot be committed partly within the state of Indiana and partly without.").

Nor does Plaintiff "invoke the laws of another state to justify obtaining an exemption from an Alabama law, applied to Alabama citizens, punishing conduct that occurs exclusively in Alabama." Def.'s Opp. Pls.' Mot. Summ. J. at 13, ECF No. 66. Indeed, Plaintiff's desired speech and conduct does not violate any Alabama law because the basis for Defendant's threatened prosecution, Alabama's Abortion Ban, prohibits only abortion care within Alabama—precisely the conduct Plaintiff aims to avoid by helping pregnant Alabamians access lawful out-of-state abortion care.

For the same reason, this Court's conclusion that "[t]he parties agree that the Attorney General does not intend to prosecute . . . conduct occurring in another State," Def.'s Opp. Pls.' Mot. Summ. J. at 12, ECF No. 66 (quoting Order Mot. Dismiss at 89, ECF No. 48), is immaterial here. Plaintiff does not argue that

---

[8] Defendant erroneously argues that *Nielsen*'s holding was called into question by the U.S. Supreme Court's decision in *Heath v. Alabama*, 474 U.S. 82, 91 (1985). To the contrary, the Court in *Health* limited the dicta in *Nielsen* pertaining to *concurrent jurisdiction* but did not question the holding in *Nielsen* about the prohibition on extraterritorial application of state law. *Id.* ("[*Nielsen*] has no bearing on the issue of the applicability of the dual sovereignty doctrine presented in this case.").

Defendant threatens to directly criminalize conduct taking place beyond Alabama. Instead, Plaintiff asserts that Defendant cannot execute his threatened prosecutions without replacing other state's laws with Alabama's Abortion Ban as a means to establish conspiracy or accessory liability. *See supra* 20–22. Because that would be a violation of the right to be free from extraterritorial application of law, Plaintiff should prevail on this claim.

## CONCLUSION

Yellowhammer Fund has argued that Attorney General Marshall is indirectly seeking to do what he admits he cannot do directly. *Edwards* and *Crandall* make clear that his threatened prosecutions violate the rights to travel of both pregnant people and helpers. *Guest* and a handful of other cases make clear how vital the right to travel is. Defendant violates Yellowhammer Fund's constitutional right to travel, as well as the right of its clients, by threatening to criminalize the help Yellowhammer Fund wants to provide. Further, by attempting to criminalize local community members' agreements to help pregnant people travel to engage in lawful acts in other states, Attorney General Marshall violates the First Amendment— isolating pregnant people and separating them from those who wish to share messages of political, cultural, medical, and social support through speech and expressive conduct. He also violates the First Amendment by seeking to criminalize the associations that allow Plaintiff to provide lawful support to those it serves.

23

Lastly, by arguing lawful, out-of-state abortions violate Alabama's Abortion Ban, Attorney General Marshall intends to prosecute helpers without an underlying crime. The only way there could be an underlying crime is if Alabama exports its abortion ban to states that have made different policy decisions—some of which have found the right to reproductive care so fundamental that they protect it with their constitutions. That exporting is a violation of Due Process and defies the concepts of sovereignty central to the national structure. This Court should grant Plaintiff Yellowhammer Fund's motion for Summary Judgment in full.

Dated: July 22, 2024                         Respectfully submitted,

                                             _/s/ Jamila Johnson_____
                                             Jamila Johnson*
                                             Allison Zimmer*
                                             LAWYERING PROJECT
                                             3157 Gentilly Blvd. #2231
                                             New Orleans, LA 70122
                                             (347) 706-4981 (JJ)
                                             (347) 515-6074 (AZ)
                                             jjohnson@lawyeringproject.org
                                             azimmer@lawyeringproject.org

                                             Paige Suelzle*
                                             LAWYERING PROJECT
                                             158 SW 148th Street #1198
                                             Burien, WA 98166
                                             (347) 515-6073
                                             psuelzle@lawyeringproject.org

                                             Juanluis Rodriguez*
                                             Lawyering Project
                                             41 Schermerhorn St., No. 1056

Brooklyn, NY 11201
(646) 490-1080
prodriguez@lawyeringproject.org

Latasha McCrary, ASB-1935-L75M
SOUTHERN POVERTY LAW CENTER
400 Washington Ave.
Montgomery, AL 36104
(334) 604-5018
latasha.mccrary@splcenter.org

Krista Dolan*
SOUTHERN POVERTY LAW CENTER
PO Box 10788
Tallahassee, FL 32302
(850) 521-3000
Krista.dolan@splcenter.org

*Admitted *pro hac vice*

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I, Jamila Johnson, do hereby Certify that a true and correct copy of the foregoing has been furnished by ECF electronic service, on this 22nd day of July 2024, to counsel of record for Defendant Steve Marshall.

Date: July 22, 2024                                   */s/ Jamila Johnson*
                                                      Jamila Johnson

26