## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| YELLOWHAMMER FUND,<br><br>       Plaintiff,<br><br>v.<br><br>STEVE MARSHALL, in his Official Capacity as Attorney General of Alabama,<br><br>       Defendant. | No. 2:23-cv-00450-MHT |
| WEST ALABAMA WOMEN'S CENTER, *et al.,*<br><br>       Plaintiffs,<br><br>v.<br><br>STEVE MARSHALL, in his Official Capacity as Attorney General of Alabama,<br><br>       Defendant. | No. 2:23-cv-00451-MHT |

### SUPPLEMENTAL STATEMENT OF INTEREST OF THE UNITED STATES IN SUPPORT OF PLAINTIFFS' RIGHT TO TRAVEL CLAIM

Case 2:23-cv-00450-MHT-KFP   Document 72   Filed 08/19/24   Page 2 of 16

**Table of Contents**

INTRODUCTION ..................................................................................................................................1

DISCUSSION ........................................................................................................................................1

I.     The Alabama AG's Threatened Prosecutions Continue To Violate The Right To Travel. ...................................................................................................................................2

II.     The Alabama AG's Particular Arguments At Summary Judgment Do Not Change The Analysis. .................................................................................................................................4

        A.     Yellowhammer Fund Can Invoke The Right To Travel. ....................................4

        B.     The Right To Travel Is Broader Than the Specific Doctrines The Alabama AG Identifies. ..................................................................................................................6

CONCLUSION ....................................................................................................................................12

**INTRODUCTION**

At the motion to dismiss phase in this case, the United States submitted a Statement of Interest[1] in support of Plaintiffs' right-to-travel claims. *See* Dkt. No. 40. Now, the parties have filed cross-motions for summary judgment, *see* Dkt. Nos. 60-62, 65-70, and the United States accordingly submits the following Supplement to its prior Statement of Interest, explaining why Plaintiffs' right-to-travel claims should continue to succeed.[2] As discussed below and in the United States' initial filing, Alabama's threats to use criminal conspiracy law and other state inchoate liability statutes to interfere with Plaintiffs' efforts to assist patients and clients with traveling to other states to obtain lawful abortions violates the right to travel. The largely undisputed summary judgment record further demonstrates that Plaintiffs should prevail on this claim.

**DISCUSSION**

As previously noted, the issues in this case implicate multiple sovereign interests of the United States, including preserving the proper functioning of the federal system and ensuring that one State does not improperly intrude into the affairs of other States. *See* Dkt. No. 40 at 3-4. Here, the Alabama Attorney General's (Alabama AG's) threatened criminal prosecutions undermine those interests by seeking to penalize individuals who assist others in traveling to other states and engaging in lawful conduct in those states. The United States hereby incorporates its prior Statement of Interest, and files this Supplement to explain why none of the arguments the Alabama AG has presented at summary judgment changes the analysis.

---

[1] Under 28 U.S.C. § 517, "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

[2] This Statement of Interest takes no position on any other issues or claims in these cases.

I.  **The Alabama AG's Threatened Prosecutions Continue To Violate The Right To Travel.**

As the United States explained in its initial Statement of Interest, the Alabama AG's threatened criminal prosecutions violate a bedrock principle of American constitutional law: states cannot punish their residents for traveling to another state to engage in conduct that is lawful in that state. *See Nielsen v. Oregon*, 212 U.S. 315, 321 (1909) (noting that Oregon could not "punish a man for doing within the territorial limits of Washington an act which that state had specially authorized him to do[.]"); *State Farm Mut. Auto. Ins. v. Campbell*, 538 U.S. 408, 421 (2003) ("A State cannot punish a defendant for conduct that may have been lawful where it occurred."). Binding precedent confirms that this principle applies to individuals' ability to seek lawful medical care in other states, including abortion and reproductive healthcare. *See, e.g.*, *Doe v. Bolton*, 410 U.S. 179, 200 (1973) (holding that the Privileges and Immunities Clause "protect[s] persons who enter Georgia seeking the medical services that are available there," including abortion); *Bigelow v. Virginia*, 421 U.S. 809, 824 (1975) (cautioning that Virginia could not "prevent its residents from traveling to New York to obtain" abortion services legally available in that state, nor could Virginia "prosecute [its residents] for going there"); *see also Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 346 (2022) (Kavanaugh, J., concurring) (concluding that the question whether a State may "bar a resident of that State from traveling to another State to obtain an abortion" is "not especially difficult as a constitutional matter" because "the constitutional right to interstate travel" would prohibit such state action).

Additionally, just as a state cannot bar individuals from traveling to other states to engage in lawful conduct, a state equally cannot prohibit third-party assistance for such travel. For example, in *Edwards v. California*, 314 U.S. 160 (1941), the Supreme Court struck down a California law penalizing anyone who "brings or assists in bringing into the State any indigent person who is not a resident of the State." *Id.* at 171. Likewise, as the Supreme Court explained in *Crandall*, because a tax on the operator of a mode of transport is effectively "a tax upon the passenger," it is therefore an

unconstitutional restriction on the right to travel, *Crandall v. Nevada*, 73 U.S. (6 Wall.) 35, 40, 43-49 (1867). Based on these principles, the relevant rule is clear: states cannot criminalize interstate travel to engage in lawful conduct, nor can they criminalize assistance for such travel.

This Court already (and correctly) embraced these principles in its Memorandum Opinion denying Alabama's Motion to Dismiss. Specifically, the Court concluded that "the right to travel includes the right both to move physically between States *and to do what is lawful in those States*." Dkt. No. 48 at 40 (emphasis added); *see also id.* at 50 ("[T]he Constitution protects the right to cross state lines and engage in lawful conduct in other States, including receiving an abortion. The Attorney General's characterization of the right to travel as merely a right to move physically between the States contravenes history, precedent, and common sense."). The Court likewise held that "if a State cannot outright prohibit the plaintiffs' clients from traveling to receive lawful out-of-state abortions, it cannot accomplish the same end indirectly by prosecuting those who assist them." *Id.* at 51; *see also id.* at 52 ("States may not outlaw assistance for otherwise lawful travel.").

These same principles continue to apply and foreclose the Alabama AG's threatened prosecutions here. The Alabama AG does not meaningfully dispute that the principles set forth above flow from precedent and history surrounding the right to travel, its status as a right of national citizenship, and principles of horizontal federalism embedded in the Constitution's original design—all as previously explained in the United States' prior Statement of Interest and this Court's Memorandum Opinion. *See* Dkt. No. 40 at 11-21; Dkt. No. 48 at 40-58. Instead, the Alabama AG claims authority to "prohibit[] elective abortions and conspiracies to procure them" even when those abortions lawfully occur in "out-of-state destinations," Dkt. No. 62 at 22, a theory directly contrary to black-letter law and this Court's prior holdings. *See also* Dkt. No. 48 at 56 ("There is no end-run around the right to travel that would allow States to burden travel selectively and in a patchwork fashion based on whether they approve or disapprove of lawful conduct that their residents wish to engage in outside

their borders.").

Thus, the same fundamental principles that this Court previously embraced are sufficient to demonstrate that Plaintiffs should succeed on their right-to-travel claim at this procedural stage. That is particularly true given the undisputed factual record here, including the Alabama AG's admissions that he has threatened criminal prosecution for those who facilitate lawful out-of-state abortions. *See, e.g.*, Answer to Yellowhammer Compl., Dkt. No. 56, ¶¶ 18, 21, 27, 29, 33. And all of the Alabama AG's legal arguments presented at summary judgment are either contrary to this Court's prior analysis and the United States' prior Statement of Interest, or are meritless as discussed further below.

**II.     The Alabama AG's Particular Arguments At Summary Judgment Do Not Change The Analysis.**

At the Summary Judgment phase, the Alabama AG largely rehashes arguments that the Court correctly rejected in its ruling on the Motion to Dismiss, points that are summarized *supra* Section I. The Alabama AG expounds on several arguments, however, including contending that Yellowhammer itself cannot invoke the right to travel and that Plaintiffs can assert only a narrow right to travel as reflected in specific constitutional doctrines. None of these arguments is persuasive, and Plaintiffs are entitled to summary judgment on their right to travel claim.

**A.     Yellowhammer Fund Can Invoke The Right To Travel.**

The Alabama AG again contends that Yellowhammer Fund, as a non-natural person, lacks its own right to travel. *See* Dkt. No. 62 at 20. Consistent with the United States' prior position, *see* Dkt. No. 40 at 7-8 n. 4, the United States sees no impediment to the Court addressing Yellowhammer's right-to-travel claim.

Here, the undisputed factual record shows that the Alabama AG has specifically threatened Yellowhammer with criminal liability for helping pregnant individuals obtain lawful out-of-state abortions. *See, e.g.*, Fountain Decl., Dkt. No. 61-1, ¶ 23 ("I understood the attorney general's threats to be specifically directed at Yellowhammer Fund."); McLain Decl., Dkt. No. 61-2, ¶ 23 (same). Thus,

the Alabama AG does not dispute Yellowhammer's Article III standing, and instead argues that Yellowhammer cannot raise a right to travel claim because "Yellowhammer—a corporation—does not possess a right to travel as 'a flesh and blood, physical citizen' would." Dkt. No. 62 at 20. But it is irrelevant whether a corporation itself can physically travel, because as discussed above, the right to travel protects not only physical movement but also assisting others with their travel. *See* Part I, *supra*; Dkt. No. 40 at 17-21. A corporation can certainly assist others with travel, as the Alabama AG concedes. *See* Dkt. No. 62 at 6-7, ¶¶ 2-8 (conceding that Yellowhammer itself provides assistance for others' interstate travel).

The Supreme Court has already held that the target of criminal liability can invoke the right to travel as a defense, without any consideration of whether the target personally engaged in any travel. In *Crandall*, the petitioner was the agent of a stage coach company, *see* 73 U.S. at 36, who was arrested for failing to file a report—*i.e.*, for "[h]aving refused" to submit to the sheriff a "statement of the number of passengers conveyed out of the state by th[e] company in the month of April." *Ex parte Crandall*, 1 Nev. 294, 300 (1865). Notwithstanding that there was no indication that the agent engaged in any travel, and notwithstanding that the agent's connection to any travel was only by virtue of a corporation (the stage coach company), the Supreme Court held that the right to travel precluded the agent's criminal prosecution. *See Crandall*, 73 U.S. at 48-49. Equally here, then, Yellowhammer may also defend against its threatened criminal prosecution by invoking the right to travel, regardless of whether Yellowhammer itself engages in any physical travel.

Moreover, it is also factually undisputed that Yellowhammer's staff, acting in the scope of their employment, have physically traveled with pregnant individuals seeking lawful out-of-state abortions, and would continue to do so if not for the Alabama AG's threats. *See* Fountain Decl. ¶ 16 ("Before *Dobbs*, I personally drove pregnant people to their abortion appointments in order to ensure that they were able to access care, and, on occasion, I personally drove pregnant people across state lines for

abortion care."); *id.* ¶ 26 ("Before the threats, we planned to hire new staff to help with transportation to states where abortion care is legal."); *see also* McLain Decl. ¶¶ 7, 13, 18-19, 21, 24, 33; Dkt. No. 62 at 6-7, ¶¶ 3, 7 (conceding that Yellowhammer seeks to support individuals' travel by directly providing transportation).

These staff members are plainly protected from prosecution based on the right to travel. *See Edwards*, 314 U.S. at 173 (individual could not be prosecuted for assisting his brother-in-law's interstate travel). And here, given that Yellowhammer itself is the target of the Alabama AG's threatened prosecutions, based in part on those same staff members' official activities undertaken on behalf of Yellowhammer, there is no apparent reason (and the Alabama AG offers no argument) why Yellowhammer cannot also invoke the right to travel to defend against its threatened prosecution. *Cf.* Dkt. No. 48 at 28 ("[E]nforcement against the plaintiffs' staff is the functional equivalent of enforcement against the organizations themselves[.]"); *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) ("[U]nder basic agency principles, the acts of a corporation's agents are considered to be those of a single legal actor."). Thus, the United States sees no impediment to this Court addressing Yellowhammer's right-to-travel claim.

> **B.  The Right To Travel Is Broader Than the Specific Doctrines The Alabama AG Identifies.**

The key legal issue in this case is largely controlled by existing precedent, including the holdings of *Edwards*, *Crandall*, and *Bolton*. Collectively, these cases establish that a state cannot penalize those who assist others in traveling across state lines to engage in lawful conduct, regardless of whether the state erects an impossible barrier to travel or merely interferes with that right. In such cases, the ostensible interests of the state interfering with such travel are irrelevant to the constitutional analysis. The Alabama AG seeks to isolate and distinguish each of these individual cases, but the AG's arguments are unpersuasive. Similarly, the Alabama AG's attempts to cabin the right to travel to specific constitutional doctrines is contrary to the Supreme Court's repeated decision not to do so.

**1.** Alabama first argues that *Edwards* is "inapposite," in part because Plaintiffs here "can avail themselves of Alabama's democratic processes." Dkt. 62 at 23. But the holding of *Edwards* was not contingent on whether a person could avail themselves of the relevant state democratic processes. Although it is true that the Court observed that "indigent non-residents" would not be able to avail themselves of California's political process, the petitioner in *Edwards* was, in fact, a "resident of California," able to avail himself of the state democratic process. *Edwards v. California*, 314 U.S. 160, 170 (1941). That fact posed no obstacle to the Supreme Court holding that California could not prosecute him for assisting in his brother-in-law's interstate travel.

Nor is Alabama correct that *Edwards* can be so narrowly construed as to be limited to laws designed to prevent the flow of migration into a state. Dkt. 62 at 23. That decision has subsequently been described as "vindicat[ing]" the "right to go from one place to another, including the right to cross state borders while en route," *Saenz v. Roe*, 526 U.S. 489, 500 (1999), a right that is plainly at issue here as the Alabama AG seeks to penalize those who assist individuals in "go[ing] from one place to another" for the purpose of engaging in lawful conduct. *See also, e.g.*, *United States v. Guest*, 383 U.S. 745, 758 (1966) (describing *Edwards* as "invalidating a California law which impeded the free interstate passage of the indigent"). As Justice Douglas's concurring opinion in *Edwards* correctly noted, "if a state tax on that movement, as in the *Crandall* case, is invalid, a fortiori a state statute which obstructs or in substance prevents that movement must fall." *Edwards*, 314 U.S. at 181 (Douglas, J., concurring). So too here. Just as California could not prosecute someone for assisting his indigent brother-in-law travel from Texas to California, neither can the Alabama AG criminally prosecute those who assist women in Alabama who wish to travel to another state to obtain a legal abortion.

The Alabama AG similarly attempts to narrow *Crandall* as being limited to state action that interferes with "the federal government's ability to demand performance of duties by its citizens." Dkt. 62 at 23. And because "limitations on abortions and abortion conspiracies do not directly burden

traveling to the seat of government, engaging in business with the government, or administering government functions," the Alabama AG contends that his threats do not burden the right to travel. Dkt. 68 at 6.  But as discussed above, *Crandall* did not involve anyone seeking to engage in such government-related travel, and that portion of the opinion was not intended to limit the case's ultimate holding.  Justice Douglas's concurring opinion in *Edwards* addressed this point directly:

> To be sure, [the opinion in *Crandall*] emphasized that the Nevada statute would obstruct the right of a citizen to travel to the seat of his national government or its offices throughout the country. *See United States v. Wheeler*, 254 U.S. 281, 299. But there is not a shred of evidence in the record of the Crandall case that the persons there involved were en route on any such mission any more than it appears in this case that Duncan entered California to interview some federal agency. The point which Mr. Justice Miller made was merely in illustration of the damage and havoc which would ensue if the States had the power to prevent the free movement of citizens from one State to another.

*Edwards*, 314 U.S. at 178 (1941) (Douglas, J, concurring). And like with *Edwards*, subsequent decisions have embraced the freedom to engage in interstate travel regardless of whether the traveler intends to engage with the Federal Government in some capacity.

The Alabama AG's proffered distinction of *Doe v. Bolton* fares no better.  The Alabama AG contends that *Doe v. Bolton* "simply held that Georgia had insufficient reasons to withhold medical care from out of state residents, not that no interest would be sufficient or that the home States cannot limit the ability to travel for that purpose." Dkt. 62 at 18.  But the Alabama AG wholly ignores the core holding of the decision: "Just as the Privileges and Immunities Clause, Const. Art. IV, § 2, protects persons who enter other States to ply their trade," "so must it protect persons who enter Georgia seeking the medical services that are available there." *Bolton*, 410 U.S. at 200.  And certainly nothing in the Supreme Court's discussion of Georgia's potential interests in preserving state resources (which Georgia was not advancing in that case), *see id.*, suggests that a state could not only deny medical care but also *penalize the assistance of interstate travel* for the purpose of seeking that care—which is what the Alabama AG is attempting to do here, contrary to *Doe* and *Bigelow* and other precedents previously

discussed.

**2.** Apart from the Alabama AG's attempt to distinguish individual Supreme Court precedents based on immaterial differences, the Alabama AG also tries to cabin the right to travel to specific constitutional provisions, which he then interprets narrowly. Specifically, the Alabama AG argues that Plaintiffs' right to travel claims fails as a matter of law because "Plaintiffs cannot identify their asserted right" in any specific constitutional provision, Dkt. 66 at 14, asserting that "it is crucial to 'identify the source'" of the constitutional right to travel. Dkt. 68 at 5 (quoting *Saenz*, 526 U.S. at 501).

The Alabama AG's argument is flatly contrary to the Supreme Court's repeated decision *not* to limit the right to travel only to specific doctrines or constitutional provisions. Indeed, the Alabama AG omits the critical words from what the Supreme Court actually said in *Saenz*—that it "*need not* identify the source" of the right to travel. *Saenz*, 526 U.S. at 501 (emphasis added to the words Alabama removed); *see also, e.g.*, *Shapiro v. Thompson*, 394 U.S. 618, 630 (1969) ("We have no occasion to ascribe the source of this right to travel interstate to a particular constitutional provision."); *United States v. Guest*, 383 U.S. 745, 759 (1966) ("Although there have been recurring differences in emphasis within the Court as to the source of the constitutional right of interstate travel, there is no need here to canvass those differences further. All have agreed that the right exists."). Indeed, as *Saenz* itself makes clear, the right to travel "embraces *at least* three different components,"[3] 426 U.S. at 500 (emphasis added), which emphasizes that this Court need not limit its analysis to discrete constitutional doctrines given the "unprecedented nature of the Attorney General's actions in seeking to prevent residents of his own State from engaging in lawful conduct in other States." Dkt. No. 48 at 48 n.12.

The Alabama AG also relies on the D.C. Circuit's opinion in *Pollack v. Duff* to contend that it is "essential" to identify the particular constitutional doctrine that is the source of the right to travel.

---

[3] The three examples cited by *Saenz* were the right "to enter and to leave" a state, "the right to be treated as a welcome visitor" in the destination state, and the right of new permanent residents "to be treated like other citizens" of the destination state. *Saenz*, 526 U.S. at 500.

-9-

Dkt. 68 at 5 (citing *Pollack v. Duff*, 793 F.3d 34, 40 (D.C. Cir. 2015)). But the D.C. Circuit in *Pollack* thought it essential because in that case the plaintiff "challenge[d] the action of an agency of the federal government, not that of a state," and "[n]either the Supreme Court nor this court has previously considered whether the right to travel is implicated when a federal agency" acts. 793 F.3d at 41. Thus, the D.C. Circuit extensively analyzed the historical basis for each source of the right to travel invoked by the plaintiff to determine whether it supported a right to travel claim against the federal government. *See id.* at 40-48. That consideration is obviously irrelevant here, however, because this case involves burdens imposed by a state, and the Alabama AG does not dispute that the full scope of the constitutional right to travel (whatever its origin in the Constitution) is enforceable against his threatened prosecutions. The type of doctrinal analysis that was "essential" in *Pollack* is therefore unnecessary here, particularly when, as explained *supra* at 2-4, the Alabama AG's threatened prosecutions fall squarely within the sort of activity governed by binding Supreme Court precedent regarding the right to travel.

In any event, even if locating the right to travel within a particular constitutional provision were necessary, the Alabama AG's threatened prosecutions would still fail. As noted above, the Alabama AG's attempts to distinguish binding Supreme Court cases are unpersuasive. Moreover, with respect to the Privileges and Immunities Clause, the Alabama AG's only argument is that the Clause is "concerned with how States treat non-residents," and does not restrict the extent to which Alabama may disadvantage its own residents. Dkt. 62 at 17-18. The United States previously explained why that argument is incorrect, Dkt. 40 at 12-15, and this Court rightly rejected that argument and should do so again, Dkt. 48 at 48 n.12.

The only new argument offered by the Alabama AG is to contend that the Supreme Court held that the Clause is limited to preventing discrimination against out-of-state citizens in its decision in *United Bldg. & Const. Trades Council of Camden Cnty. & Vicinity v. Mayor & Council of City of Camden*,

465 U.S. 208, 210 (1984).  *See* Dkt. 62 at 18; Dkt. 66 at 15; Dkt. 68 at 7.  But *Camden* does not undermine the United States' prior arguments on this issue, or this Court's prior analysis that the right to travel is implicated "when any State prohibits residents of one State from enjoying the benefits lawfully available in another State."  Dkt. 48 at 48 n.12.  Specifically, *Camden* involved a challenge to an ordinance passed by the city of Camden, New Jersey, which required "40% of employees …working on city construction projects be Camden residents."  465 U.S. at 210.  The lower court held that the ordinance "did not violate the privileges and immunities clause because it was not aimed primarily at out-of-state residents," but rather intended to favor a particular city's residents.  *Id.*  But the Supreme Court disagreed, concluding that the municipal ordinance "was not immune from constitutional review at the behest of out-of-state residents merely because some in-state residents are similarly disadvantaged."  *Camden*, 465 U.S. at 218.  Even though "the disadvantaged New Jersey residents have no claim under the Privileges and Immunities Clause," *id.* at 217, the ordinance's discrimination against out-of-state residents was subject to scrutiny because it implicated the fundamental purpose of the Clause—*i.e.*, to "insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy." *Id.* at 216 (quoting *Toomer v. Witsell*, 334 U.S. 385, 395 (1948)).  Thus, *Camden* stands for the proposition that intra-state discrimination, among different classes of in-state residents, is not subject to scrutiny under the Privileges and Immunities Clause.  But *Camden* does not support the Alabama AG's threatened prosecutions here, which are concededly for the purpose of making it more difficult for Alabama residents to engage in lawful conduct *in other states*.  Those prosecutions therefore implicate the fundamental purpose of the Privileges and Immunities Clause—by interfering with the ability of citizens of State A (Alabama) to venture into State B (a state where abortion is legal) and enjoy "the same privileges which the citizens of State B enjoy." *Id.* at 216.

Because the purpose of the Clause is to "place the citizens of each State upon the same footing with citizens of other States," when individuals travel into another state they lose both "the peculiar

-11-

privileges conferred by their [home state's] laws" as well as "the disabilities of alienage" while they are in the other state. *Paul v. Virginia*, 75 U.S. 168, 180-81 (1868), *overruled in part on other grounds by United States v. S.-E. Underwriters Ass'n*, 322 U.S. 533 (1944). Regardless of the benefits or burdens that a home state places on its residents, therefore, when an individual travels to a new state, they are placed "upon the same footing" and enjoy "the same freedom[s]" as the residents of that state." *Paul*, 75 U.S. at 180-81. That includes "the right of a citizen of one State to pass into any other State of the Union for the purpose of engaging in lawful commerce, trade, or business without molestation." *Ward v. State*, 79 U.S. 418, 430 (1870); *see also Slaughter-House Cases*, 83 U.S. 36, 75 (1872). And here, the Alabama AG's threatened prosecutions improperly interfere with those rights by seeking to criminalize third-party assistance provided to individuals traveling to other states to engage in lawful conduct. Thus, summary judgment in Plaintiffs' favor on their right-to-travel claim is warranted.

## CONCLUSION

For the reasons identified in the United States in its initial Statement of Interest and above, the Alabama AG cannot threaten Plaintiffs with criminal prosecution for assisting residents with interstate travel to access reproductive healthcare in states where abortion is legal.

Dated: August 19, 2024             Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIAN D. NETTER
Deputy Assistant Attorney General

DANIEL SCHWEI
Special Counsel

JULIE STRAUS HARRIS
Assistant Branch Director

*/s/ Alexander N. Ely*
ALEXANDER N. ELY (DC Bar # 230008)
ANNA DEFFEBACH
LISA NEWMAN

        Trial Attorneys
        U.S. Department of Justice
        Civil Division, Federal Programs Branch
        1100 L Street, N.W.
        Washington, D.C. 20005
        Tel: (202) 993-5177
        alexander.n.ely@usdoj.gov
        anna.l.deffebach@usdoj.gov
        lisa.n.newman@usdoj.gov

        *Counsel for the United States*

## CERTIFICATE OF SERVICE

      I certify that I electronically filed this document using the Court's CM/ECF system on August 19, 2024, which will serve all counsel of record.

<div align="right">

*/s/ Alexander N. Ely*
ALEXANDER N. ELY

*Counsel for the United States*

</div>